UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NEXON KOREA CORPORATION,<br><br>                     Plaintiff,<br><br>         v.<br><br>IRONMACE CO. LTD, *et al.*,<br><br>                     Defendants. | Case No. C23-576-MLP<br><br>ORDER |

## I.  INTRODUCTION

This matter is before the Court on Plaintiff Nexon Korea Corporation's ("Nexon") *Ex Parte* Motion for Alternative Service of Process pursuant to Federal Rule of Civil Procedure 4(f)(3) ("Plaintiff's Motion"). (Pl.'s Mot. (dkt. # 15).) Plaintiff seeks authorization to serve Defendants Ironmace Co., Ltd. ("Ironmace") and its employees Ju-Hyun Choi and Terence Seungha Park (collectively, "Defendants") via email, direct message to their social media accounts, and email to Ironmace's counsel located in the United States. (*Id.* at 4, 8.) Having considered Plaintiff's submissions, the governing law, and the balance of the record, the Court GRANTS Plaintiff's Motion (dkt. # 15).

ORDER - 1

## II.   BACKGROUND

Nexon alleges Defendants misappropriated its trade secrets and violated its copyright in developing the video game "Dark and Darker." (Compl. (dkt. # 1).) Nexon contends alternative service is warranted because Defendants are "located in the Republic of Korea" and plan to release Dark and Darker before Nexon could complete service by means of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents. (Pl.'s Mot. at 1.)

Ironmace's website lists a business address in Korea. (Blackburn Decl. (dkt. # 16), ¶ 2.) Nexon alleges in its Complaint that Mr. Park is "the co-founder and the CEO of Ironmace" and Mr. Choi is the managing director. (Compl. at ¶¶ 10-11.) Mr. Park and Mr. Choi are former employees of Nexon and, according to Nexon's human resources records, their home addresses are in Korea.[1] (Blackburn Decl., ¶ 2.)

An October 2022 social media post, by a user whom Nexon has identified as Mr. Park on behalf of Ironmace, states, "[W]e are hoping to go early access in April 2023[.]" (Blackburn Decl., ¶¶ 13-15, Ex. J-1 (dkt. # 16-1) at 255.) Other social media posts, identified as made by Mr. Choi and Ironmace, indicate a "goal" for a complete game release of Dark and Darker "in the fourth quarter of 2023." (*Id.*, ¶¶ 17, Ex. J-2, J-3 at 256-57.)

In March and April 2023, Nexon's counsel, James S. Blackburn, issued takedown requests pursuant to the Digital Millennium Copyright Act ("DMCA") to several platforms, which subsequently removed Dark and Darker. (Blackburn Decl., ¶¶ 3, 11.) In March 2023, Mr. Blackburn sent cease and desist letters to Ironmace, Mr. Park, and Mr. Choi via email and certified postal mail. (*Id.*, ¶¶ 4-5.)

---

[1] Nexon alleges in its Complaint that Mr. Park is a United States citizen with a residence in California as well as a residence in Korea. (Compl. at ¶ 10.) Nexon has not indicated whether it attempted service in California. For purposes of this motion, the Court accepts Nexon's representation that Mr. Park is currently located in Korea.

ORDER - 2

1    On April 12, 2023, Ironmace's Korean counsel responded to the cease-and-desist letter in
2 an email to Mr. Blackburn. (Blackburn Decl., ¶ 6, Ex. D at 147.) Nexon filed the instant suit on
3 April 14, 2023. (*See* Compl.) On April 17, 2023, Nexon sent an email to Ironmace's Korean
4 counsel's email address, attaching a copy of the Complaint in this case and requesting
5 acceptance of service. (*Id.*, ¶ 8, Ex. E at 225-26.) Nexon did not receive a response. (*Id.*, ¶ 8.)
6    On April 20, 2023, Ironmace's U.S. counsel, Aaron J. Moss, responded to Nexon's
7 cease-and-desist letter by email to Mr. Blackburn. (Blackburn Decl., ¶ 9, Ex. F at 228.) The
8 email stated that "Ironmace consents to the jurisdiction of the Western District of Washington
9 and will accept service of process from the person who submitted the takedown notification
10 under [DMCA], or their agent[,]" and provided Ironmace's business address in Korea. (*Id.*, Ex. F
11 at 233-34.)
12    Korea is a signatory to the Hague Convention. (Blackburn Decl., ¶ 21, Ex. G at 245.)
13 Nexon is currently "in the process of serving Defendants pursuant to the Hague Convention."
14 (*Id.*, ¶ 24.) According to information Nexon received from the Korean authority for Hague
15 service requests as well as a firm that handles service of process in Korea, the process will take a
16 minimum of four months. (*Id.*, ¶¶ 22-23.)

17                               **III.   DISCUSSION**

18    **A.    Service Outside the United States**

19    Federal Rule of Civil Procedure 4(f) permits service of process on individuals in foreign
20 countries by: (1) internationally agreed methods such as those authorized by the Hague
21 Convention; (2) if there is no internationally agreed means, in accordance with the foreign
22 country's law; or (3) by "other means not prohibited by international agreement, as the court
23 orders." Fed. R. Civ. P. 4(f)(3). Rule 4(h) permits serving a corporation outside the U.S. in the

ORDER - 3

1   "manner prescribed by Rule 4(f)[.]" Fed. R. Civ. P. 4(h)(2). Accordingly, the Court may order
2   alternative service on Defendants who are located in Korea by any means that is not prohibited
3   by international agreement.

4   Service within the U.S. on Ironmace's counsel is not prohibited by international
5   agreement. *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 708 (1988)
6   ("Hague Service Convention does not apply" to "service on a domestic agent" of a foreign
7   entity); *see also Brown v. China Integrated Energy, Inc.*, 285 F.R.D. 560, 564 (C.D. Cal. 2012)
8   ("If valid service occurs in the United States, therefore, the Convention is not implicated
9   regardless of the location of the party.").

10  Like many signatories to the Hague Convention, Korea prohibits service via postal mail
11  by objecting to Article 10, which provides for "the freedom to send judicial documents, by postal
12  channels, directly to persons abroad[.]" (Blackburn Decl., Ex. G at 247.) The Hague Convention
13  does not expressly address email. This Court and others have determined, however, that service
14  by email is not prohibited, even where signatories have objected to Article 10. *See, e.g.*, *Rubie's*
15  *Costume Co., Inc. v. Yiwu Hua Hao Toys Co.*, 2019 WL 6310564, at *3 (W.D. Wash. Nov. 25,
16  2019) ("[N]umerous courts have held that [objection to] Article X does not prohibit service by
17  electronic communication."). This is because when sending service of process by email, "[t]here
18  is no service by postal channels." *In re LDK Solar Sec. Litig.*, 2008 WL 2415186, at *3 (N.D.
19  Cal. June 12, 2008). Accordingly, the Court concludes that service by email to parties located in
20  Korea is not prohibited by international agreement.

21  The same reasoning applies to direct messages on social media. Article 10 addresses
22  postal mail service, not electronic means of service. A signatory country's objection to postal
23

ORDER - 4

mail service does not prohibit service via electronic messaging systems. The Court concludes that service by social media direct message is not prohibited by international agreement.

B.   **Circumstances Requiring Court Intervention**

In addition to satisfying the express conditions of Rule 4(f)(3), to obtain a court order a plaintiff must "demonstrate that the facts and circumstances of the present case necessitated the district court's intervention." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002). In *Rio*, the court's intervention was necessary due to plaintiff's "inability to serve an elusive international defendant, striving to evade service of process[.]" 284 F.3d at 1016. In that case, the Ninth Circuit also noted that the Rule 4(f)(3) "advisory notes suggest that in cases of 'urgency,' Rule 4(f)(3) may allow the district court to order a 'special method of service,' even if other methods of service remain incomplete or unattempted." *Id.* at 1015 (quoting Fed. R. Civ. P. 4, Advisory Committee Notes).

Here, Nexon contends this Court's intervention is necessary because Hague service may not be completed before Defendants plan to make the allegedly infringing video game widely available. Nexon contends the situation is urgent because it will be prejudiced if the game is widely released. (Pl.'s Mot. at 6.)

In an April 29, 2023 email, a firm that Nexon solicited to serve by means of the Hague Convention stated that they "anticipate that we'll receive proof of service 4 or 5 months after submission of the requests." (Blackburn Decl., Ex. H at 249.) The longer end of that range would be approximately late September 2023. The Korean Central Authority indicated it would take "four to six months at the earliest," which could be October 2023, or even later. (*Id.*, ¶ 22.) Given that Ironmace appears to be planning a wide release of Dark and Darker sometime between October and December 2023, and there is a substantial likelihood that Hague service will not be

ORDER - 5

completed before the release, the Court concludes that Nexon has demonstrated an urgency that necessitates the Court's intervention.

C.     **Due Process**

In addition to the requirements of Rule 4(f), "a method of service of process must also comport with constitutional notions of due process." *Rio*, 284 F.3d at 1016. "To meet this requirement, the method of service crafted by the district court must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* at 1016-17 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Here, Nexon seeks to serve Ironmace by email to its U.S. counsel, Mr. Moss, at the same email address from which Mr. Moss recently sent email to Nexon. (Pl.'s Mot.; Prop. Order (dkt. # 15-1).) The dispute in this case is a current, ongoing legal matter, the substance of which Ironmace's Korean and U.S. counsel have already communicated by email with Nexon regarding. Under the circumstances, the Court concludes that email to Ironmace's U.S. counsel is reasonably calculated to apprise Ironmace of the pendency of this action.

When Ironmace receives notice of the suit through counsel, its highest-level employees such as Mr. Park, as CEO, and Mr. Choi, as managing director, are highly likely to also be apprised of the suit. *See Brown*, 285 F.R.D. at 566 ("[F]oreign individual defendants are current officers of China Integrated, and thus . . . , their close connection to China Integrated makes it all but certain that when . . . served through the company's counsel or its agent, they will receive notice of the suit."). The Court concludes that service on Ironmace's U.S. counsel comports with due process for all Defendants.

  Nexon also seeks to serve all Defendants by email to contact@ironmace.com, the business email address provided on Ironmace's website. (Pl.'s Mot. at 7; Blackburn Decl., ¶ 4 n.2.) Nexon argues that such email is likely to apprise Ironmace as well as Mr. Park, as CEO, and Mr. Choi, as managing director, of the suit. (Pl.'s Mot. at 7.)

  Nexon also contends that sending email to Mr. Park and Mr. Choi at the email addresses listed on their business cards will "provide additional assurances" that they receive notice of the suit. (Pl.'s Mot. at 7.) On March 23, 2023, Nexon sent a cease-and-desist letter to Mr. Choi's email address and received no bounceback notice. (Blackburn Decl., ¶ 5.) Mr. Choi's business email address has additional indicia of reliability, as Nexon's counsel states in a declaration that, "[a]ccording to Nexon, [Mr.] Choi used his business email address to send an email to Nexon's CEO on April 26-27, 2023." (Blackburn Decl., ¶ 12.)

  Nexon similarly argues that because "Defendants maintain active social media accounts that they use to promote Dark and Darker, communicate with their followers, and comment on Nexon's allegations against them[,] . . . service by direct message to Defendants' accounts is likely to result in actual notice of this Lawsuit." (Pl.'s Mot. at 8.)

  Nexon has provided sufficient evidence that the three business email addresses are functional. Nexon has also shown that Defendants' social media accounts are active. The Court concludes that email to Defendants' business addresses and direct message to their social media accounts is likely to apprise Defendants of the pendency of this action, and thus comports with due process.

  Accordingly, the Court grants Nexon's motion to serve Defendants by email to Ironmace's U.S. counsel, by email to their business addresses, and by direct message to their social media accounts.

ORDER - 7

## IV.     CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion (dkt. # 15). Nexon has leave under Federal Rule of Civil Procedure 4(f)(3) to serve process by providing copies of the Complaint, the Summons, and this Order:

(1) To all Defendants by email to Ironmace's counsel at AMoss@ggfirm.com and by email to contact@ironmace.com;

(2) To Ironmace by direct message to @IronmaceGames on Twitter;

(3) To Mr. Choi by email to sdf@ironmace.com and by direct message to sdf on Discord and @sdf_ on Twitter;

(4) To Mr. Park by email to terence@ironmace.com and by direct message to Terence and krapst78 on Discord and @krapst78 on Twitter.

Dated this 23rd day of May, 2023.

MICHELLE L. PETERSON
United States Magistrate Judge