The Honorable Michelle L. Peterson

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

NEXON KOREA CORPORATION, a Korean Corporation,

    Plaintiff,

    v.

IRONMACE CO., LTD., a Korean Corporation; JU-HYUN CHOI, individually; and TERENCE SEUNGHA PARK, individually,

    Defendants.

Case No. 2:23-cv-00576-MLP

**DEFENDANTS' MOTION TO DISMISS ON GROUNDS OF *FORUM NON CONVENIENS***

[Declarations of Ju-Hyun Choi, Terence Seungha Park, Eung Jun Jeon and Aaron J. Moss in Support and [Proposed] Order Filed Concurrently]

NOTE ON MOTION CALENDAR: JULY 14, 2023

ORAL ARGUMENT REQUESTED

DEFENDANTS' MOTION TO DISMISS
ON *FORUM NON CONVENIENS*
No. 2:23-CV-00576-MLP

**GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER  LLP**
2049 Century Park East, Suite 2600
Los Angeles, California  90067
(310) 553-3610

43223-00002/4846046.10

**TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................................... 1

II.    STATEMENT OF FACTS ................................................................................. 2

       A.    The Parties ............................................................................................ 2

       B.    Nexon and the "P3 Project" ................................................................. 3

       C.    Ironmace Develops *Dark and Darker* ................................................ 4

       D.    The Parties Are Actively Litigating In Korea ..................................... 5

III.   ARGUMENT ..................................................................................................... 6

       A.    Applicable *Forum Non Conveniens* Standards ................................... 6

       B.    Korea Provides an Available and Adequate Alternative Forum for the
             Parties' Dispute ................................................................................... 7

       C.    The Parties' Dispute Is Subject to a Korean Forum-Selection Clause ............. 10

       D.    The Private Interest Factors Nevertheless Weigh Heavily in Favor of
             Dismissal ............................................................................................ 13

       E.    The Public Interest Factors Also Weigh Heavily in Favor of Dismissal .......... 17

IV.    CONCLUSION ................................................................................................ 18

**GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP**
2049 Century Park East, Suite 2600
Los Angeles, California  90067
(310) 553-3610

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE**

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
   571 U.S. 49 (2013) ................................................................ 6, 7, 10, 13

*Contact Lumber Co. v. P.T. Moges Shipping Co.*,
   918 F.2d 1446 (9th Cir. 1990) ........................................................... 18

*Creative Technology, Ltd. v. Aztech Sys. PTE, Ltd.*,
   61 F.3d 696 (9th Cir. 1995) .......................................... 8, 9, 15, 16, 17

*Doe 1 v. AOL LLC*,
   552 F.3d 1077 (9th Cir. 2009) ............................................................. 6

*ECC Int'l, LLC v. KEB Hana Bank*,
   Case No. CV 16-06487 PA, 2016 WL 10968141 (C.D. Cal. Dec. 9, 2016) ................... 9

*Graham Tech Solutions, Inc. v. Thinking Pictures, Inc.*,
   949 F. Supp. 1427 (N.D. Cal. 1997) .................................................... 12

*Gulf Oil Corp. v. Gilbert*,
   330 U.S. 501 (1947) .................................................................... 17

*Hyewoong Yoon v. Seyeon Lee*,
   433 F. Supp. 3d 18 (D. Mass. 2019) ...................................................... 9

*IntelliCAD Technology Consortium v. Suzhou Gstarsoft Co. Ltd.*,
   465 F. Supp. 3d 1130 (D. Or. 2020) .................................................... 12

*Key Equip. Fin. v. Barrett Bus. Servs.*, Inc.,
   Case No. 3:19-cv-05122-RBL, 2019 WL 2491893 (W.D. Wash. June 14, 2019) ............. 7

*Lockman Found. v. Evangelical Alliance Mission*,
   930 F.2d 764 (9th Cir. 1991) ............................................................ 7

*Lueck v. Sundstrand Corp.*,
   236 F.3d 1137 (9th Cir. 2001) ................................................. 6, 7, 14, 17

*M/S Bremen v. Zapata Off-Shore Co.*,
   407 U.S. 1 (1972) ....................................................................... 6

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
   858 F.2d 509 (9th Cir. 1988) ........................................................ 12, 13

DEFENDANTS' MOTION TO DISMISS
ON *FORUM NON CONVENIENS* - ii
No. 2:23-CV-00576-MLP

**GREENBERG GLUSKER FIELDS**
**CLAMAN & MACHTINGER LLP**
2049 Century Park East, Suite 2600
Los Angeles, California  90067
(310) 553-3610

43223-00002/4846046.10

*MBI Grp., Inc. v. Credit Foncier du Cameroun*,
  558 F. Supp. 2d 21 (D.D.C. 2008) ................................................................... 15

*Perry v. AT&T Mobility LLC*,
  Case No. C 11-01488 SI, 2011 WL 4080625 (N.D. Cal. Sept. 12, 2011) ........................... 11

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981) .................................................................................... 6, 8

*Primacy Eng'g, Inc. v. SAN Eng'g*,
  Case No. 1:18-CV-129-RP, 2019 WL 3412914 (W.D. Tex. July 29, 2019) ......................... 9

*Sun v. Advanced China Healthcare, Inc.*,
  901 F.3d 1081 (9th Cir. 2018) ........................................................................ 11

*Sun v. Kao*,
  170 F. Supp. 3d 1321 (W.D. Wash. 2016) ......................................................... 6, 11

*Tuazon v. R.J. Reynolds Tobacco Co.*,
  433 F.3d 1163 (9th Cir. 2006) ......................................................................... 7

*U.S.O. Corp. v. Mizuho Holding Co.*,
  547 F.3d 749 (7th Cir. 2008) ......................................................................... 15

*Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc.*,
  108 F. Supp. 3d 816 (N.D. Cal. 2015) ............................................................... 12

*Van Schijndel v. Boeing Co.*,
  434 F. Supp. 2d 766 (C.D. Cal. 2006) ............................................................... 17

*W. Boxed Meats Distributors, Inc. v. Parker*,
  Case No. C17-5156 BHS, 2017 WL 3034517 (W.D. Wash. July 18, 2017) ................. 12, 13

*Wamai v. Indus. Bank of Korea*,
  Case No. 21cv325, 2021 WL 3038402 (S.D.N.Y. July 14, 2021) ............................... 9

*Wamai v. Indus. Bank of Korea*,
  Case No. 21-1956-cv, 2023 WL 2395675 (2d Cir. Mar. 8, 2023) ............................... 15

**STATUTES**

28 U.S.C. § 1404(a) ..................................................................................... 6

DEFENDANTS' MOTION TO DISMISS
ON *FORUM NON CONVENIENS* - iii
No. 2:23-CV-00576-MLP

**GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP**
2049 Century Park East, Suite 2600
Los Angeles, California  90067
(310) 553-3610

# I.      INTRODUCTION

This is a lawsuit brought by a Korean videogame publisher against two Korean nationals and their Korean startup.  Plaintiff Nexon Korea Corporation ("Nexon") claims that two former employees, Ju-Hyun Choi and Terence Seungha Park, left Nexon to form a competing company, Ironmace Co., Ltd. ("Ironmace"), which then unlawfully used Nexon's trade secrets and infringed its copyrights to create Ironmace's flagship game *Dark and Darker*. Nexon has no evidence to support these allegations, which is no surprise given that they are a complete fiction.  The truth is that Ironmace and its developers used their tremendous skill and creativity to develop *Dark and Darker* entirely on their own, without using any of Nexon's proprietary material to accomplish that feat.

But this motion is not about proving that Nexon's claims are meritless.  Ironmace, Choi, and Park (collectively, "Defendants") are already doing that in litigation that is ongoing in Korea.  Indeed, Nexon has *already filed* a motion for preliminary injunction against each of the Defendants—in Korea—raising the *same* claims and seeking the *same* relief as it does from this Court.  The parties have already engaged in multiple evidentiary hearings in Korean district court, presenting thousands of pages of documents and witness testimony (all of which is in Korean, naturally).  There, a Korean panel of judges will evaluate the evidence, including Ironmace's internal notes and source code showing exactly how *Dark and Darker* was created, and will undoubtedly see Nexon's claims for the anticompetitive smokescreen that they are.  And *that* court is where this dispute should be resolved—not here in Washington.

Under the doctrine of *forum non conveniens*, this Court has broad authority to decline to exercise jurisdiction in favor of litigation in a more convenient foreign forum.  The facts here overwhelmingly support allowing the parties' dispute to play out in Korea.  First, and dispositively, the parties are subject to contractual forum-selection clauses providing for exclusive jurisdiction in Korean district court.  Second, there is no question that Korea is an adequate alternative forum to hear this dispute; as mentioned, there is active litigation in Korea right now between these same parties over these exact claims.  Third, both the private and

public interest factors overwhelmingly point to Korea as the only sensible place to hear this dispute.  The parties are all Korean.  All of the evidence is located in Korea and written in Korean, and the relevant witnesses all reside in Korea and speak Korean.  All of the conduct giving rise to Nexon's claims happened in Korea and has no connection to Washington.

There is no need to burden this Court with a complex extraterritorial dispute, particularly when a parallel action is already proceeding in the parties' home forum.  It is clear that Nexon is pushing forward with litigation in two countries simply because it has the resources to do so and believes it can grind Defendants down by multiplying their legal fees.  Nexon should not be allowed to misuse the United States judicial system in this manner.  The Court should exercise its authority to dismiss this lawsuit, allowing the parties' dispute to proceed in Korea where it belongs.

## II.    STATEMENT OF FACTS

### A.    The Parties

Ironmace is a small videogame developer incorporated and headquartered in Seongnam-si, Gyeonggi-do, Republic of Korea.  Declaration of Ju-Hyun Choi ("Choi Decl."), ¶ 16; Declaration of Terence Seungha Park ("Park Decl."), ¶ 12.  It was founded in October 2021.  Choi Decl., ¶ 13.  One of its founders is Choi, who is a Korean citizen born in Korea.  Choi Decl., ¶¶ 2, 13.  Ironmace's Chief Executive Officer is Park, a permanent resident of Korea who has exclusively lived in Korea since 2005.  Park Decl., ¶¶ 1, 2.  Both Choi and Park live near Ironmace headquarters near Seoul, Korea.  Choi Decl., ¶ 5; Park Decl., ¶ 7.  Contrary to Nexon's allegations in its Complaint, Park does not have a residence in Irvine, California, and in fact has never owned real property in the United States.  Park Decl., ¶ 3.  Neither Choi nor Park has ever visited the State of Washington.  Choi Decl., ¶ 3; Park Decl., ¶ 3.

Nexon is a major global developer of videogames.  Complaint, Dkt. No. 1 ("Compl."), ¶ 8.  Nexon is incorporated and headquartered in Seongnam-si, Gyeonggi-do, Republic of Korea.  Compl., ¶ 8.  Both Choi and Park worked for Nexon before founding Ironmace.  Choi

Decl., ¶¶ 4–5; Park Decl., ¶¶ 5–7.  Choi and Park worked for Nexon out of its headquarters in Seongnam-si, in Korea.  *Id.*

**B.**  **Nexon and the "P3 Project"**

Choi and Park both worked for Nexon in game development, and did so exclusively out of Nexon's headquarters in Korea.  Choi Decl., ¶ 5, Park Decl., ¶ 7.  Choi and Park both signed written employment agreements with Nexon.  Compl., ¶¶ 27, 28; Choi Decl., ¶ 6, Ex. A; Park Decl., ¶ 8; Declaration of Eung Jun Jeon ("Jeon Decl."), ¶ 24, Ex. 4.  These employment agreements, which are in Korean, were drafted by Nexon and presented to Choi and Park for signature "as is."  *Id.*  Each contained a forum selection clause providing that for any dispute relating to the agreement, "the competent court of jurisdiction shall be the Seoul Central District Court."  Choi Decl., ¶ 6, Ex. A; Jeon Decl. ¶ 24, Ex. 4.  Choi and Park also signed documents called "Acknowledgment about Company IP" or "Confirmation of Rights Regarding Work-Related Intellectual Property."  Compl., ¶¶ 19, 27, 28; Choi Decl., ¶ 7, Ex. B; Park Decl., ¶ 9, Ex. A; Jeon Decl., ¶ 24, Exs. 5 and 6.  These documents were drafted by Nexon and presented to Choi and Park for signature "as is."  *Id.*  Each of these documents, which are also in Korean, contains a forum selection clause providing "in the event of a dispute relating to the agreement" that "Seoul Central District Court shall have exclusive jurisdiction of competence for the first instance."  *Id.*

While at Nexon, both Choi and Park worked on a development project referred to as the "P3 Project."  Choi Decl., ¶ 8, Park Decl., ¶ 10.  The P3 Project was intended to be a first-person "battle royale" game—in the same vein as popular videogames made by other studios, like *PUBG: Battlegrounds* and *Fortnite*—but with a medieval, fantasy setting.  Choi Decl., ¶ 9.  The P3 Project was under development at Nexon for less than one year.  Choi Decl., ¶ 8, Park Decl., ¶ 10.  The project was primarily staffed with only 10 people, and development went slowly as a result of lack of support from Nexon management.  *Id.*  Choi and Park left Nexon in the summer of 2021.  Choi Decl., ¶ 10; Park Decl., ¶ 6.  At the time they left, the P3 Project had not crystallized into an actual playable game—it was nowhere near being released.  Choi Decl.,

DEFENDANTS' MOTION TO DISMISS
ON *FORUM NON CONVENIENS* - 3
No. 2:23-CV-00576-MLP

GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California  90067
(310) 553-3610

1  ¶ 10.

2       Nexon has accused Choi of taking Nexon trade secrets or other confidential

3  information, including source code and game assets, with him when he left Nexon and using it

4  at Ironmace.  That is categorically false.  Choi did not retain any such information.  Choi Decl.,

5  ¶ 11.

6  **C.    Ironmace Develops _Dark and Darker._**

7       Ironmace has spent the better part of two years developing its flagship game, which it

8  calls _Dark and Darker._  Choi Decl., ¶ 13.  _Dark and Darker_ is a first-person extraction game

9  and dungeon crawler with a fantasy setting.  _Id._  One of the core features of _Dark and Darker_ is

10  its "escape" (or "extraction") mechanic—something shared with other games in the genre, but

11  _not_ with the contemplated P3 Project or any other game Nexon has developed.  Choi Decl., ¶ 9.

12  Ironmace has devoted significant time and resources to building the game, hiring 20 skilled

13  veteran game designers, artists, and programmers from the very start.  Choi Decl., ¶ 13; Park

14  Decl. ¶ 11.  Ironmace designed _Dark and Darker_ from scratch; it has not used _any_ of Nexon's

15  intellectual property or other confidential material to develop it.  Choi Decl., ¶ 14, Park Decl.,

16  ¶ 14.

17       As discussed in greater detail below, Nexon has accused Ironmace, as well as Choi and

18  Park personally, of infringing and misappropriating Nexon's intellectual property in creating

19  _Dark and Darker._  Ironmace has clear and overwhelming evidence to show that that is false,

20  and that _Dark and Darker_ was developed independently and in a manner that infringes _none_ of

21  Nexon's rights.  Choi Decl., ¶ 24; Park Decl., ¶ 21.  Because of how and where _Dark and_

22  _Darker_ was developed, this evidence is all located in Korea.  Choi Decl., ¶¶ 20–21; Park Decl.,

23  ¶¶ 16–17.

24       In particular, throughout the development of _Dark and Darker_, internal communications

25  among Ironmace employees occurred almost exclusively in Korean.  Choi Decl., ¶ 17; Park

26  Decl., ¶ 13.  Emails within the team are similarly in Korean, as are notes and records

27  concerning internal team strategy meetings and the progress in developing the game.  Choi

DEFENDANTS' MOTION TO DISMISS
ON _FORUM NON CONVENIENS_ - 4
No. 2:23-CV-00576-MLP

**GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER  LLP**
2049 Century Park East, Suite 2600
Los Angeles, California  90067
(310) 553-3610

Decl., ¶¶ 17–18; Park Decl., ¶¶ 13–14.  That is because Ironmace's full-time employees (a little more than 30) all live in Korea.  Nearly all of the Ironmace team has limited familiarity with English.  Choi Decl., ¶ 16.  Park Decl., ¶ 13.

The same is true for the source code and programming notes that show how *Dark and Darker* was built; those are all in Korean.  Choi Decl., ¶ 19; Park Decl., ¶ 15.  The computer systems used to develop the game are physically located in Ironmace's Korean office, and its servers were located in Korea throughout development, until early 2023 when they were moved to a cloud hosting solution.  Choi Decl., ¶ 21; Park Decl., ¶ 17.

**D.**     **The Parties Are Actively Litigating In Korea.**

All of the parties to this lawsuit—Nexon, Ironmace, Choi, and Park—are already litigating an identical dispute in the Korean court system.  Jeon Decl., ¶¶ 13–20.  Most notably, on April 14, 2023, Nexon filed a lawsuit against Ironmace, Choi, and Park in the Suwon District Court in Korea, which asserts claims of trade secret misappropriation and copyright infringement against each of these defendants.  Jeon Decl., ¶ 15.  In that Korean proceeding, Nexon seeks a preliminary injunction restraining Ironmace, Choi and Park from (among other things) publishing or distributing *Dark and Darker*.  *Id.*  In addition, Ironmace has filed its own lawsuit against Nexon in the same Korean court seeking a judicial declaration that *Dark and Darker* does *not* infringe any copyright that Nexon may have in its so-called "P3 Game."  Jeon Decl., ¶ 14.  In connection with that proceeding, Ironmace has filed an application for preliminary injunction against business obstruction, asking that Nexon be ordered to withdraw the takedown notice it sent to Valve Corporation under the United States Digital Millennium Copyright Act.[1]  *Id.*

All of the parties have been served and have appeared in the foregoing Korean proceedings, which are currently in active litigation in Korea.  Jeon Decl., ¶ 19.  The parties have had multiple evidentiary proceedings before the Korean court and have already filed

---

[1] On March 22, 2023, Nexon sent a takedown notice to Valve Corporation asking Valve to remove *Dark and Darker* from the Steam online game store.  Park Decl., ¶ 20, Ex. B.  Valve complied with this takedown notice and removed Dark and Darker from Steam on March 24, 2023, and the game has not been on Steam since it was taken down.  *Id.*

DEFENDANTS' MOTION TO DISMISS
ON *FORUM NON CONVENIENS* - 5
No. 2:23-CV-00576-MLP

**GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER  LLP**
2049 Century Park East, Suite 2600
Los Angeles, California  90067
(310) 553-3610

thousands of pages of briefing and evidence in connection with their disputes—all of which is in Korean.  Jeon Decl., ¶ 20.  In particular, Nexon has submitted copies of Nexon's employment agreements with Choi and Park, copies of Nexon's "Acknowledgment about Company IP" (the same agreements Nexon relies upon in this case), computer logs and internal data from Nexon, emails, written witness statements, text messages, and transcripts of oral conversations.  All of this material is in Korean.  Jeon Decl., ¶¶ 21–25.

## III.    ARGUMENT

### A.    Applicable *Forum Non Conveniens* Standards

Under the doctrine of *forum non conveniens*, a district court may decline to exercise jurisdiction in favor of litigation in a more convenient foreign forum.  *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001).  The traditional *forum non conveniens* analysis examines (1) whether an adequate alternative forum exists, and (2) whether the balance of private and public interest factors favors dismissal.  *Id.*  In a typical case, the court will decide whether, on balance, a transfer would serve "the convenience of parties and witnesses" and otherwise promote "the interest of justice."  28 U.S.C. § 1404(a); *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62–63 (2013).  However where, as here, the parties are subject to a forum-selection clause—one which was drafted by the plaintiff—Nexon's choice of forum "merits no weight"[2] and the plaintiff "bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted."  *Sun v. Kao*, 170 F. Supp. 3d 1321, 1325 (W.D. Wash. 2016) (citing *Atl. Marine Co.*, 571 U.S. at 62 ("only under 'extraordinary circumstances' should a court decline to enforce a valid[3] forum-selection

---

[2] Any presumption that might otherwise be given to Nexon's choice of forum already "applies with less force" given that Nexon is a Korean plaintiff and Washington is not its home forum.  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981) ("Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.").

[3] Forum selection clauses are "presumptively valid."  *Doe I v. AOL LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009).  The party challenging the clause bears a "heavy burden of proof" and must "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching."  *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 17 (1972).  Here, Nexon cannot rebut the presumptive validity of Korean forum-selection clauses that Nexon itself drafted and presented to its employees to sign "as is."  Choi Decl., ¶¶ 6–7; Park Decl., ¶¶ 8–9.

DEFENDANTS' MOTION TO DISMISS
ON *FORUM NON CONVENIENS* - 6
No. 2:23-CV-00576-MLP

GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER  LLP
2049 Century Park East, Suite 2600
Los Angeles, California  90067
(310) 553-3610

clause")).

In *Atlantic Marine*, the Supreme Court clarified the standard for dismissing an action on *forum non conveniens* grounds when a valid forum-selection clause is implicated.  In particular, a forum-selection clause should be "given controlling weight in all but the most exceptional cases."  *Atl. Marine*, 571 U.S. at 63.  The existence of a valid forum-selection clause also does away with the private interest factors of the *forum non conveniens* inquiry, leaving only the public interest factors as an additional consideration.  *Id.*, 571 U.S. at 64.  "The 'practical result' is that forum-selection clauses will almost always control."  *Key Equip. Fin. v. Barrett Bus. Servs.*, Inc., Case No. 3:19-cv-05122-RBL, 2019 WL 2491893, at *3 (W.D. Wash. June 14, 2019) (citations omitted).

As discussed below, both the traditional and *Atlantic Marine* tests for *forum non conveniens* are easily satisfied in this case: (1) Korea is an adequate alternative forum; (2) the balance of private factors is deemed established in favor of litigation in Korea by virtue of the forum-selection clause (and otherwise demonstrates that Korea is the more convenient forum); and (3) this is not an "extraordinary" case in which the public interest factors "clearly disfavor" dismissal—to the contrary, they weigh strongly in favor of dismissal.  Therefore, this case should be dismissed in favor of Korean proceedings that are *already* ongoing between the parties involving the very same dispute.

## B.     Korea Provides an Available and Adequate Alternative Forum for the Parties' Dispute.

An alternative forum is "available" where the defendant is amenable to service of process and "adequate" when it provides the plaintiff with "some remedy for his wrong." *Lueck*, 236 F.3d at 1143.  As the Ninth Circuit has recognized, this test is "easy to pass." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1178 (9th Cir. 2006).  It is only in "rare circumstances" that the available and adequate forum requirement is not met.  *Lueck*, 236 F.3d at 1143 (citing *Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 768 (9th Cir. 1991)).  The fact that substantive law in the alternate forum may be less favorable is irrelevant

DEFENDANTS' MOTION TO DISMISS
ON *FORUM NON CONVENIENS* - 7
No. 2:23-CV-00576-MLP

GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER  LLP
2049 Century Park East, Suite 2600
Los Angeles, California  90067
(310) 553-3610

unless the remedy provided is "so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper Aircraft*, 454 U.S. at 254.

Here, this low bar is easily satisfied, as there can be no dispute that Korea is an adequate alternative forum. Ironmace is a Korean corporation with its principal place of business in Korea, and Choi and Park are both permanent Korean residents. Compl., ¶¶ 9–11; Choi Decl., ¶¶ 2–3, 5; Park Decl., ¶¶ 2, 7. Not only are Ironmace, Choi and Park therefore all amenable to service of process in Korea, but the parties are *already* litigating this dispute in that country. Indeed, Nexon has filed a pending application for preliminary injunction in Korea against each of these defendants which asserts the *same* copyright infringement and misappropriation of trade secret claims and seeks the *same* type of relief as it does in this action—namely that Ironmace refrain from making its video game *Dark and Darker* available to the public. Jeon Decl., ¶ 15. All of the defendants have appeared and are actively contesting Nexon's claims in the Korean action, which has already been the subject of several court hearings. Jeon Decl., ¶¶ 19–20.

Korea has a sophisticated copyright regime, which provides copyright owners with a range of remedies including preliminary injunctive relief, permanent injunctive relief, monetary damages, and declaratory relief. Monetary damages may be recovered based on the copyright owner's lost profits, the infringer's profits gained from the infringement, a reasonable royalty rate that the copyright owner could have received if the infringing conduct had been properly licensed, or any other reasonable calculation of damages in the discretion of the Court. The Korean Copyright Act also provides for "statutory damages" where a work was registered prior to the infringement, which may be up to KRW 10 million or up to KRW 50 million in the case of intentional infringement. As with other civil litigation in Korea, the prevailing party may recover its attorney's fees and costs. Jeon Decl., ¶ 9.

Korea is a member of the Berne Convention for the Protection of Literary and Artistic Works, and Korean courts may apply the copyright laws of other countries where applicable to the allegedly infringing conduct. Jeon Decl., ¶ 7. As the Ninth Circuit recognized in *Creative*

DEFENDANTS' MOTION TO DISMISS
ON *FORUM NON CONVENIENS* - 8
No. 2:23-CV-00576-MLP

GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067
(310) 553-3610

1   *Technology, Ltd. v. Aztech Sys. PTE, Ltd.*, any territorial limitations on the scope of United

2   States copyright law do not preclude application of the *forum non conveniens* doctrine merely

3   because a foreign owner alleges copyright violations occurring within the United States.  61

4   F.3d 696, 702 (9th Cir. 1995) ("we are unable to conceive of a more effective means of

5   protecting [plaintiff's] United States copyright interests than by shutting off the pipeline of

6   infringing goods at the source.").

7         In Korea, trade secrets are governed by the Unfair Competition Prevention and Trade

8   Secret Protection Act ("UCPA").  As with Korean copyright law, a plaintiff under the UCPA

9   may obtain a range of remedies, including injunctive relief and compensatory damages, which

10  may be calculated based on the plaintiff's lost profits, the infringer's profits, a reasonable

11  royalty rate for use of the trade secret, or any other reasonable amount determined by the Court.

12  Jeon Decl., ¶¶ 10–12.

13        Korea also affords Nexon procedural safeguards comparable to those available in the

14  United States, including the right to an independent, impartial and fair decision in accordance

15  with the law, the right for all parties to be heard, and the right to a fair trial.  Jeon Decl., ¶¶ 3–5.

16        In finding Korea to be an adequate alternative forum under these circumstances, this

17  Court would be joining many other courts holding the same.  *See Primacy Eng'g, Inc. v. SAN*

18  *Eng'g*, Case No. 1:18-CV-129-RP, 2019 WL 3412914, at *3 (W.D. Tex. July 29, 2019) (Korea

19  held to be an adequate alternative forum in case involving alleged misappropriation of trade

20  secrets where plaintiff had already sued defendants in that country "asserting the same kinds of

21  claims and seeking the same kind of relief as it does in this action."); *Hyewoong Yoon v.*

22  *Seyeon Lee*, 433 F. Supp. 3d 18, 26 (D. Mass. 2019) ("The South Korean Action is proof that

23  there is an alternative forum for [plaintiff's] claims."); *ECC Int'l, LLC v. KEB Hana Bank*,

24  Case No. CV 16-06487 PA, 2016 WL 10968141, at *3 (C.D. Cal. Dec. 9, 2016) ("Because

25  Defendant is amenable to service in Korea, and because Korea provides a remedy for Plaintiff's

26  claims, the Court finds Korea to be an adequate alternative forum."); *Wamai v. Indus. Bank of*

27  *Korea*, Case No. 21cv325, 2021 WL 3038402, at *8 (S.D.N.Y. July 14, 2021) (same).  As there

DEFENDANTS' MOTION TO DISMISS
ON *FORUM NON CONVENIENS* - 9
No. 2:23-CV-00576-MLP

**GREENBERG GLUSKER FIELDS**
**CLAMAN & MACHTINGER  LLP**
2049 Century Park East, Suite 2600
Los Angeles, California  90067
(310) 553-3610

1  is no legal obstacle to Nexon bringing its claims against Defendants in Korea, the first

2  threshold factor for dismissal is easily satisfied.

3  **C.      The Parties' Dispute Is Subject to a Korean Forum-Selection Clause.**

4          In *Atlantic Marine*, the Supreme Court held that the existence of a forum-selection

5  clause means that the balance of private interest factors is deemed to weigh in favor of

6  dismissal as a matter of law.  *See* 571 U.S. at 64 ("A court . . . must deem the private-interest

7  factors to weigh entirely in favor of the preselected forum" where there is a forum-selection

8  clause.).  Specifically, "[w]hen parties agree to a forum-selection clause, they waive the right to

9  challenge the preselected forum as inconvenient or less convenient for themselves or their

10 witnesses, or for their pursuit of the litigation." *Id.*

11         Here, Nexon's Complaint specifically relies on the fact that Nexon "requires its

12 employees to sign an acknowledgement about work-related intellectual property

13 ('Acknowledgment about Company IP')."  Compl., ¶ 19.  Nexon alleges: "Pursuant to the

14 Acknowledgement about Company IP, any intellectual property rights in the company work

15 product, created by Nexon's employees during the course of their employment, originate from

16 and are vested in Nexon.  Moreover, Nexon employees are prohibited from using or recreating

17 any content that is similar or the same as the work-related inventions made at Nexon, even after

18 the employees leave Nexon and join another employer." *Id.*  Nexon alleges that defendants

19 Choi and Park both signed and are bound by this agreement.  Compl., ¶¶ 19, 27, 28.  Nexon

20 also alleges that it "enters into an employment salary agreement ('Employment Agreement')

21 that prohibits its employees, without Nexon's authorization, from disclosing to a third-party the

22 company's trade secrets or any information acquired during the course of their employment."

23 Compl., ¶ 22.  Nexon further alleges that both Choi and Park signed the Employment

24 Agreement.  Compl., ¶¶ 27, 28.  As discussed above, both the Acknowledgement about

25 Company IP and the Employment Agreement contain broad and mandatory forum selection

26 clauses that provide for disputes relating to the agreements to be heard exclusively in Korea.

27 Choi Decl., ¶¶ 6–7, Exs. A, B; Park Decl., ¶¶ 8–9, Ex. A; Jeon Decl., ¶¶ 23–24, Exs. 4, 5, and

DEFENDANTS' MOTION TO DISMISS
ON *FORUM NON CONVENIENS* - 10
No. 2:23-CV-00576-MLP

6.

Nexon's Complaint alleges that Choi and Park are former employees of Nexon who, in "breach of their obligations to Nexon," "stole source code, audiovisual and other materials" to develop a substantially similar video game called "Dark and Darker" that they "seek to distribute through their newly-formed company Ironmace." Compl., ¶ 1. While they are completely false, these allegations, and the claims on which they are based, relate directly to the subject of the Acknowledgment about Company IP and Employment Agreement containing the forum-selection clause at issue, namely the alleged use of "content that is similar or the same as the work-related inventions made at Nexon" and the alleged disclosure of "the company's trade secrets or any information acquired during the course of [Defendants'] employment." Compl., ¶¶ 1, 3, 17, 18, 19, 22, 27, 28.

Because the forum-selection clauses broadly encompass disputes "relating to" the agreements at issue—as opposed to those simply "arising out of" such agreements—the provisions squarely apply to this dispute. *See, e.g.*, *Sun*, 170 F. Supp. 3d at 1324 ("Clauses that only refer to disputes 'arising out of' a contract apply only to disputes and controversies relating to the interpretation of the contract" while "forum selection clauses that include 'related' disputes do not require that the contract at issue be interpreted to apply"); *Perry v. AT&T Mobility LLC*, Case No. C 11-01488 SI, 2011 WL 4080625, at *4 (N.D. Cal. Sept. 12, 2011) (holding that a forum selection clause that included "any action . . . relating to" a contract did not require the interpretation of the contract in order to apply). As the Ninth Circuit has explained, a dispute can "relate" to an agreement so long as the dispute references the agreement or has some "logical or causal connection" to the agreement. *Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018) ("The dispute need not grow out of the contract or require interpretation of the contract in order to relate to the contract.").

District courts within the Ninth Circuit have regularly found claims for copyright infringement and trade secret misappropriation to be sufficiently related to the parties' contractual relationship for a forum selection clause to apply to those claims. For example, in

DEFENDANTS' MOTION TO DISMISS
ON *FORUM NON CONVENIENS* - 11
No. 2:23-CV-00576-MLP

GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067
(310) 553-3610

*IntelliCAD Technology Consortium v. Suzhou Gstarsoft Co. Ltd*., the court held that a dispute between the owner of computer source code and a software designer alleging copyright infringement and trade secret misappropriation "related to" the parties' agreement by which the designer was granted access to the copyright owner's source code, such that the forum selection clause applied to the owner's claims.  465 F. Supp. 3d 1130 (D. Or. 2020).  Like Nexon's Complaint here, the plaintiff's complaint in *IntelliCAD* contained "numerous references" to the agreement containing the forum-selection clause and, as here, but for the parties' agreement, the defendant never would have had access to the source code at issue in the lawsuit.  *Id*. at 1140.  *See also Graham Tech Solutions, Inc. v. Thinking Pictures, Inc.*, 949 F. Supp. 1427, 1434 (N.D. Cal. 1997) (applying forum-selection clause in professional services agreement to copyright infringement claims); *Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc*., 108 F. Supp. 3d 816, 823 (N.D. Cal. 2015) (applying forum-selection clause in sales agency agreement to claims for trade secret misappropriation and copyright infringement).

Finally, even though Ironmace was not a party to the forum-selection clauses between Nexon, Choi and Park, its alleged conduct "is so closely related to the contractual relationship between the parties that the forum selection clause applies to all defendants."  *Manetti-Farrow, Inc. v. Gucci Am., Inc*., 858 F.2d 509, 514 n.5 (9th Cir. 1988) ("a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses") (citations omitted).  In this regard, this case is indistinguishable from that of *W. Boxed Meats Distributors, Inc. v. Parker*, Case No. C17-5156 BHS, 2017 WL 3034517 (W.D. Wash. July 18, 2017).  In that case, the plaintiff, WBX, alleged that the individual defendants, William and Brian Parker, had unfairly competed with WBX by forming their own company, Double B, using WBX's confidential, proprietary and trade secret information.  2017 WL 3034517, at *1. As a condition of their employment, the Parkers had entered into various agreements with WBX which prohibited them from using confidential information outside of the scope of their employment with WBX or from disclosing such information to other individuals or companies after their employment with WBX had ended.  *Id*.  WBX alleged that the Parkers left WBX to

DEFENDANTS' MOTION TO DISMISS
ON *FORUM NON CONVENIENS* - 12
No. 2:23-CV-00576-MLP

**GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP**
2049 Century Park East, Suite 2600
Los Angeles, California  90067
(310) 553-3610

start a competing business, Double B, allegedly taking confidential information and deleting files belonging to WBX in the process. *Id.*, at *2. WBX thereafter filed a lawsuit against the Parkers and Double B in the Western District of Washington. *Id.*, at *2.

Relying on an Oregon forum-selection clause in the parties' employment agreements, the district court dismissed the case under the doctrine of *forum non conveniens*, not only as to the Parkers (who were parties to the agreements containing the forum selection clauses) but also as to Double B (which was not). Relying on *Manetti*, *supra*, the court held:

> Double B's alleged conduct is closely related to the Parkers' Employment Agreement. The Parkers allegedly formed Double B with the purpose of competing with WBX, in direct defiance of the "Payment and Obligations After Termination" and "Competitive Activities" provisions of the Employment Agreement . . . Further, WBX alleges that the Parkers, through Double B, are continuing to misuse WBXs confidential information and trade secrets, in direct defiance of the "Proprietary Information Obligations" provision of the Parkers' Employment Agreement . . . In this way Double B is closely related to the Parkers' Employment Agreement because the Parkers are allegedly using the corporation to violate the terms therein. Pursuant to *Manetti*, the forum selection clause binds Double B. Therefore, any claims against Double B within the scope of the forum selection clause must be dismissed in favor of the contractually [*sic*] forum.

*W. Boxed Meats Distributors, Inc.,* Case No. C17-5156 BHS, 2017 WL 3034517, at *5. Here too, the parties' forum selection clause is valid and both Ironmace and the individual defendants are entitled to enforce it with respect to all of the claims asserted against them in this action. The Court's sole remaining consideration is whether the public interest factors so clearly favor litigation in Washington that they constitute "extraordinary circumstances." *Atl. Marine*, 571 U.S. at 62.

**D.    The Private Interest Factors Nevertheless Weigh Heavily in Favor of Dismissal.**

Even if the Court were to reach the private interest factors, which it need not do under *Atlantic Marine*, the balance of private interests overwhelmingly weighs in favor of litigation in Korea as opposed to Washington.

The private interest factors the court may consider include: (1) the residence of the

DEFENDANTS' MOTION TO DISMISS
ON *FORUM NON CONVENIENS* - 13
No. 2:23-CV-00576-MLP

**GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP**
2049 Century Park East, Suite 2600
Los Angeles, California  90067
(310) 553-3610

parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Lueck*, 236 F.3d at 1145.

Plaintiff Nexon is a Korean corporation, with its principal place of business in Gyeonggi-do, Korea. Compl., ¶ 8. Ironmace is also a Korean corporation, with its principal place of business in Seongnam, Gyeonggi-do, Korea. Choi Decl., ¶ 16; Park Decl., ¶ 12. Choi is a citizen and resident of Korea. Choi Decl., ¶¶ 2, 5. Park has been living and working exclusively in Korea since 2005. Park Decl., ¶¶ 2, 7. Insofar as these individual defendants "personally participated in, directed, managed, and/or oversaw all of the activities of Ironmace with respect to the development and distribution of 'Dark and Darker,'" as Nexon alleges (Compl., ¶¶ 10, 11), they did so exclusively from Korea. Choi Decl., ¶¶ 4–5; Park Decl., ¶¶ 5–7. Neither Choi nor Park has ever been to the State of Washington. Choi Decl., ¶ 3; Park Decl., ¶ 3.

All of the conduct giving rise to Nexon's claims took place in Korea. Nexon alleges that Choi misappropriated trade secrets by exporting P3 source code outside of Nexon's office in Korea to private servers located in Seosan and Seongnam, both in Korea. Compl., ¶¶ 42–54. As alleged in the Complaint, after Choi and Park left Nexon's employment, nine Nexon employees left Nexon to work for Ironmace. Compl., ¶ 67. Each of these employees resides in Korea, as do all of the relevant Nexon employees. Choi Decl., ¶ 16, Park Decl., ¶ 12. All of the physical evidence relating to these allegations is located in Korea. Choi Decl., ¶¶ 20–21; Park Decl., ¶¶ 16–17.

The foregoing conduct was allegedly in violation of at least seven different Nexon "Company Policies and Guidelines." Compl., ¶ 17. Any acts or omissions giving rise to these alleged contractual violations would have occurred in Korea where the individual defendants work and reside. In addition, each of the documents at issue is in the Korean language. In

DEFENDANTS' MOTION TO DISMISS
ON *FORUM NON CONVENIENS* - 14
No. 2:23-CV-00576-MLP

GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California  90067
(310) 553-3610

connection with its Korean application for preliminary injunction, Nexon submitted numerous supporting exhibits, all in Korean.  Between Nexon and Ironmace, the parties have already submitted thousands of pages of briefing and evidence to the court in Korea, all of which is in Korean.[4]  Jeon Decl., ¶ 20.

Because the events at issue in the Complaint took place in Korea, the vast majority of discovery in this action will necessarily come from, and take place in, Korea.  This is where both parties are located, as well as the location of the relevant documents and witnesses.  To the extent these witnesses' testimony could be obtained in connection with a U.S. civil case, pretrial depositions of virtually every witness would have to occur in Korea through Korean-English interpreters.  In order to use any of the relevant documents in a Washington proceeding, they would need to be translated into English, and the translations certified as accurate.  Given that the parties in the Korean proceedings have already produced thousands of pages of exhibits, the cost of translating all of the documents in this case could easily exceed hundreds of thousands of dollars, if not much more.  If the cases proceed in Washington, "discovery and trial would likely involve an arduous process of securing the appearance of witnesses without the benefit of this Court's subpoena power and transporting witnesses and evidence to the United States."  *Wamai v. Indus. Bank of Korea*, Case No. 21-1956-cv, 2023 WL 2395675, at *2 (2d Cir. Mar. 8, 2023) (affirming district court's finding that Korea was a more convenient forum than the chosen U.S. forum).  A Korean court, on the other hand, would face no such difficulty in compelling evidence from unwilling third parties residing in Korea.  Jeon Decl., ¶ 29.

In light of these considerations, there can be no dispute that Korea will provide better access to sources of proof and the relevant witnesses and is a much more expeditious and inexpensive forum for the resolution of the parties' proceedings.  *See Creative Technology,*

---

[4] Other courts faced with this issue have held that the time, effort, and expense required for the translation of evidence weighs in favor of dismissal where it would be largely unnecessary in the alternative forum overseas. *See, e.g.*, *U.S.O. Corp. v. Mizuho Holding Co.*, 547 F.3d 749, 751 (7th Cir. 2008); *MBI Grp., Inc. v. Credit Foncier du Cameroun*, 558 F. Supp. 2d 21, 33–36 (D.D.C. 2008), *aff'd*, 616 F.3d 568 (D.C. Cir. 2010).  Here too, this private factor favors dismissal of Nexon's claims.

DEFENDANTS' MOTION TO DISMISS
ON *FORUM NON CONVENIENS* - 15
No. 2:23-CV-00576-MLP

GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California  90067
(310) 553-3610

*Ltd.*, 61 F.3d at 703 (dismissal upheld in copyright action where design and manufacture of parties' computer software took place in Singapore such that most of the witnesses and documents were located there).  Moreover, Nexon has already demonstrated that Korea is not an inconvenient forum based on its ongoing participation in proceedings there, including its filing of a motion for preliminary injunction.

Conversely, the *only* connection Washington has to this case is incredibly attenuated: Nexon alleges that Defendants made *Dark and Darker* available for four "playtests" on the Steam online videogame platform between August 2022 and February 2023.  Compl., ¶ 171. Steam is owned by Valve Corporation, which is headquartered in Bellevue, Washington.  *Id.* What Nexon's Complaint does not disclose, however, is that pursuant to a "take down notice" sent by Nexon under the Digital Millennium Copyright Act ("DMCA"), Valve removed *Dark and Darker* from the Steam platform nearly two months before Nexon ever filed this lawsuit. Park Decl., ¶ 20.  Valve's location is largely irrelevant to the claims asserted against Defendants.  Defendants are accused of misappropriating trade secrets in Korea and distributing an alleging infringing game worldwide.  Indeed, the *only* reason Nexon filed its lawsuit in Washington was because Ironmace was required to submit to this Court's jurisdiction as a condition of serving a DMCA "counter-notification" in which Ironmace vigorously disputed Nexon's copyright infringement claims.  Declaration of Aaron J. Moss ("Moss Decl."), ¶ 3, Ex. A.  But the fact that Ironmace may be subject to personal jurisdiction in this court does not mean that Washington is a convenient or even appropriate forum to hear the parties' dispute, particularly given that the alleged conduct giving rise to Nexon's claims occurred exclusively in Korea.

Simply stated, there is nothing "easy, expeditious and inexpensive" about having a Korean plaintiff and Korean defendants engage in litigation in Washington that is duplicative of proceedings that are already well underway in Korea.  Therefore, even if this Court were to consider the private interest factors notwithstanding the parties' valid forum selection clause, they weigh heavily in favor of dismissal.

DEFENDANTS' MOTION TO DISMISS
ON *FORUM NON CONVENIENS* - 16
No. 2:23-CV-00576-MLP

**GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER  LLP**
2049 Century Park East, Suite 2600
Los Angeles, California  90067
(310) 553-3610

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**E.     The Public Interest Factors Also *Weigh* Heavily in Favor of Dismissal**

Public interest factors include the local interest of the lawsuit, the court's familiarity with governing law, the burden on local courts and juries, congestion in the court and the costs of resolving a dispute unrelated to this forum. *Lueck*, 236 F.3d at 1147.

As discussed above, because the relevant conduct allegedly giving rise to liability occurred in Korea, there is no local interest in having this matter resolved in Washington. In confronting a nearly identical set of facts, the Court of Appeals in *Creative Technology* concluded that the public interests weighed in favor of dismissal:

> This is essentially a dispute between two Singapore corporations as to which of them was the original developer of the disputed [intellectual property]. *This is not a case involving the piracy of American made products or substantively involving American companies.* As such, the United States' interest in resolving this controversy and the relation of the jury community to this controversy are extremely attenuated and do not sway the balance against dismissal.

*Creative Technology, Ltd.*, 61 F.3d at 704 (emphasis added).

Retaining this action would impose considerable and unwarranted burdens on Washington and its citizens, whose tax dollars would have to support the expense of trying this case and whose time could be taken up by sitting as jurors. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947) ("Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."). The Court will likely have to deal with foreign discovery issues, which will be time-consuming and potentially impose significant delays. If the case proceeds to trial, there will also be the need to assure that translation and testimony from foreign witnesses is accurate, which could impose significant costs on the Court. The complexity of this case ensures that trial will consume a significant amount of court and litigant time and resources and "impede the ability of local litigants to try their cases in this district." *Van Schijndel v. Boeing Co.*, 434 F. Supp. 2d 766, 782 (C.D. Cal. 2006).

Given the lack of nexus between the conduct underlying this dispute and Washington, the crowded federal dockets, difficulties presented by Korean-speaking witnesses and Korean documents and the risk of inconsistent judgments, it would be an inefficient use of judicial

resources for this case to proceed in Washington.  Instead, it should be dismissed in favor of the litigation proceedings that are already occurring between the parties in Korea.  When there is a related action pending in an alternative forum, dismissal is favored to avoid duplicative litigation and inconsistent outcomes.  *Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446, 1452 (9th Cir. 1990) ("There are significant advantages in having all the parties . . . assert their claims in one forum, not only to avoid inconsistent factual findings, but also to spare the litigants the additional costs of duplicate lawsuits.").  There is no need to litigate this matter separately in both forums, burdening a Washington court and jury with an action based on events that took place almost entirely outside of the United States.

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss Nexon's claims with prejudice based on the doctrine of *forum non conveniens*.

DATED June 22, 2023.                                 Respectfully submitted,

By:   _s/ Aaron J. Moss_          
        Aaron J. Moss

By:   _s/ Michael E. Chait_          
        Michael E. Chait

**GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP**

Aaron J. Moss (*pro hac vice*)
Joshua M. Geller (*pro hac vice*)
Emily G. Avazian (*pro hac vice*)
2049 Century Park East, Suite 2600
Los Angeles, California  90067
Telephone: 310.553.3610
Facsimile:  310.553.0687
Email:  amoss@ggfirm.com
Email:  jgeller@ggfirm.com
Email:  eavazian@ggfirm.com

**SAVITT BRUCE & WILLEY LLP**

Michael E Chait, WSBA #48842
Chris J. Lindemeier, WSBA #55515
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
Telephone: 206.749.0500
Facsimile:  206.749.0600
Email:  mchait@sbwLLP.com
Email:  clindemeier@sbwLLP.com

*Attorneys for Defendants*

*I certify that this memorandum contains 6,638 words, in compliance with the Local Civil Rules.*

DEFENDANTS' MOTION TO DISMISS
ON *FORUM NON CONVENIENS* - 18
No. 2:23-CV-00576-MLP

**GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER  LLP**
2049 Century Park East, Suite 2600
Los Angeles, California  90067
(310) 553-3610

## **CERTIFICATE OF SERVICE**

I hereby declare under penalty of perjury under the laws of the United States of America that on this date, the foregoing document was filed electronically with the Court and thus served simultaneously upon all counsel of record.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on June 22, 2023.

_____
Rondi A. Greer

CERTIFICATE OF SERVICE
No. 2:23-CV-00576-MLP

43223-00002/4846046.10