HONORABLE TANA LIN

1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

NEXON KOREA CORPORATION, a Korean
Corporation,

9
                         Plaintiff,

10        v.

11   IRONMACE CO., LTD., a Korean
Corporation; JU-HYUN CHOI, individually;

12   and TERENCE SEUNGHA PARK,
individually,

13
                         Defendants.

Case No.:  2:23-cv-00576-TL

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS ON
GROUNDS OF *FORUM NON
CONVENIENS*

NOTE ON MOTION CALENDAR:
FRIDAY, JULY 14, 2023

ORAL ARGUMENT REQUESTED

14

15

16

17

18

19

20

21

22

23

24

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS ON GROUNDS OF FORUM
NON CONVENIENS
Case No. 2:23-cv-00576-TL

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................... 1

II.   BACKGROUND ............................................................................................. 5

III.  ARGUMENT ................................................................................................. 8

      A.    The DMCA Bars Consideration Of *Forum Non Conveniens* In
            This Case ............................................................................................... 8

      B.    Defendants Cannot Establish *Forum Non Conveniens*. ..................... 12

            1.    This Forum Is Presumptively Valid Under *Atlantic Marine*. ........... 12

            2.    The Forum Selection Clauses Defendants Rely On Are
                  Inapplicable. ....................................................................................... 14

            3.    Defendants Cannot Establish Traditional *Forum
                  Non Conveniens*. ................................................................................ 16

                  a.    Korea Is Not An Available Adequate Forum. .......................... 17

                  b.    The Balance Of Interests Are Not Strongly In Favor
                        of Dismissal ............................................................................ 19

                        (i)    The Private Interest Factors Favor This Forum. ............... 20

                        (ii)   The Public Interest Factors Favor This Forum. ............... 24

IV.   CONCLUSION ............................................................................................. 27

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS ON GROUNDS OF FORUM
NON CONVENIENS - i
Case No. 2:23-cv-00576-TL

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AMA Multimedia, LLC v. Sagan Ltd.*,
807 F.App'x 677 (9th Cir. 2020) ............................................................15

*AMA Multimedia LLC v. Sagan Ltd.*,
No. CV-16-01269-PHX-DGC, 2020 WL 4284364 (D. Ariz. July 27, 2020).....................3, 15

*Antonick v. Elec. Arts, Inc.*,
841 F.3d 1062 (9th Cir. 2016) ............................................................18, 22

*Atlantic Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
571 U.S. 49 (2013)............................................................12, 13, 14

*Baltimore & Ohio R. Co. v. Kepner*,
314 U.S. 44 (1941)............................................................8, 9, 12

*Beana v. Woori Bank*,
No. 05 CIV. 7018(PKC), 2006 WL 2935752 (S.D.N.Y. Oct. 11, 2006)................................18

*Beijing iQIYI Sci. & Tech. Co. v. iTalk Glob. Commc'ns, Inc.*,
No. 6-19-CV-00272-ADA, 2019 WL 6876493 (W.D. Tex. Dec. 17, 2019).....................2, 18

*Bos. Telecomm. Grp., Inc. v. Wood*,
588 F.3d 1201 (9th Cir. 2009) ............................................................ *passim*

*Cabell v. Zorro Prods. Inc.*,
No. 5:15-CV-00771-EJD, 2017 WL 2335597 (N.D. Cal. May 30, 2017)..............................26

*Carijano v. Occidental Petroleum Corp.*,
643 F.3d 1216 (9th Cir. 2011) ............................................................17

*Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*,
61 F.3d 696 (9th Cir. 1995) ............................................................10, 23, 25

*de Borja v. Razon*,
No. 3:18-CV-01131-YY, 2019 WL 4724317 (D. Or. Aug. 16, 2019) .................................27

*Deirmenjian v. Deutsche Bank, A.G.*,
No. CV-06-00774-MMM-CWX, 2006 WL 4749756 (C.D. Cal. Sept. 25, 2006)............................................................21

*DFSB Kollective Co. v. CJ E & M Am., Inc.*,
No. 2:15-CV-01650-SVW-FFM, 2015 WL 12781211 (C.D. Cal. June 4, 2015)............................................................22

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947)..................................................................................26

*Halo Creative & Design Ltd. v. Comptoir Des Indes Inc.*,
    816 F.3d 1366 (Fed. Cir. 2016)...............................................................18

*High-Bassalik v. Al Jazeera Am.*,
    No. 2:15-CV-04427-CAS-FFMX, 2015 WL 9695227 (C.D. Cal. Nov. 2,
    2015) ........................................................................................................12

*Hollywood Innovations Grp., LLC v. Netflix, Inc.*,
    No. CV-21-09423-TJH-JCX, 2022 WL 18584763 (C.D. Cal. Aug. 12, 2022)......................24

*Irish Nat. Ins. Co. v. Aer Lingus Teoranta*,
    739 F.2d 90 (2d Cir. 1984).......................................................................19

*Karl W. Schmidt & Assocs., Inc. v. Action Env't Sols., LLC*,
    No. 14-CV-00907-RBJ, 2014 WL 6617095 (D. Colo. Nov. 21, 2014)........................13

*Kempe v. Ocean Drilling & Expl. Co.*,
    876 F.2d 1138 (5th Cir. 1989) ...................................................................9

*Kennewick Irr. Dist. v. United States*,
    880 F.2d 1018 (9th Cir. 1989) .................................................................15

*Lang Van, Inc. v. VNG Corp.*,
    40 F.4th 1034 (9th Cir. 2022) ...................................................... *passim*

*Lax v. Toyota Motor Corp.*,
    65 F.Supp.3d 772 (N.D. Cal. 2014) ..........................................................23

*Lenz v. Universal Music Corp.*,
    815 F.3d 1145 (9th Cir. 2016) .................................................................10

*Lueck v. Sundstrand Corp.*,
    236 F.3d 1137 (9th Cir. 2001) .............................................................8, 17

*Mintel Learning Tech., Inc. v. Beijing Kaidi Educ. & Tech. Dev. Co.*,
    No. C-06-7541- PJH, 2007 WL 2403395 (N.D. Cal. Aug. 20, 2007) ....................23

*Nat'l Shopmen Pension Fund, v. Stamford Iron & Steel Works, Inc.*,
    999 F.Supp.2d 229 (D.D.C. 2013) ......................................................22, 23

*O'Reilly v. Valley Ent., Inc.*,
    No. C-09-03580-CW (DMR), 2011 WL 13258234 (N.D. Cal. Jan. 4, 2011) ...........11

*Prevision Integral de Servicios Funerarios, S.A. v. Kraft*,
    94 F.Supp.2d 771 (W.D. Tex. 2000)..........................................................22

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS ON GROUNDS OF FORUM
NON CONVENIENS - iii
Case No. 2:23-cv-00576-TL

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

*Queen City Farms, Inc. v. Cent. Nat. Ins. Co. of Omaha*,
   126 Wash. 2d 50 (1994)..................................................................................15

*Ravelo Monegro v. Rosa*,
   211 F.3d 509 (9th Cir. 2000) ....................................................................2, 20

*Ridgway v. Phillips*,
   383 F.Supp.3d 938 (N.D. Cal. 2019) ..............................................................23

*Schroeder v. United States*,
   569 F.3d 956 (9th Cir. 2009) .........................................................................15

*Talavera Hair Prod., Inc. v. Taizhou Yunsung Elec. Appliance Co.*,
   No. 18-CV-823-JLS-(JLB), 2021 WL 3493094 (S.D. Cal. Aug. 6, 2021)...........................25

*Tuazon v. R.J. Reynolds Tobacco Co.*,
   433 F.3d 1163 (9th Cir. 2006) .......................................................................17

*U.S. Cellular Inv. Co. v. GTE Mobilnet, Inc.*,
   281 F.3d 929 (9th Cir. 2002) .........................................................................16

*Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc.*,
   108 F.Supp.3d 816 (N.D. Cal. 2015) ..............................................................13

*United Am. Healthcare Corp. v. Backs*,
   997 F.Supp.2d 741 (E.D. Mich. 2014)........................................................13, 20

*United States v. Nat'l City Lines*,
   334 U.S. 573 (1948)..................................................................................9, 11

*United States v. Paulson*,
   68 F.4th 528 (9th Cir. 2023) .........................................................................16

*Van Schijndel v. Boeing Co.*,
   434 F.Supp.2d 766 (C.D. Cal. 2006) ..............................................................26

*Weiner v. Shearson, Hammill & Co.*,
   521 F.2d 817 (9th Cir. 1975) .........................................................................26

*Zipfel v. Halliburton Co.*,
   832 F.2d 1477 (9th Cir.1987) *amended on other grounds by* 861 F.2d 565 (9th
   Cir. 1988) ......................................................................................4, 8, 9, 11

**Statutes**

17 U.S.C. § 512(c)(3)....................................................................................10

17 U.S.C. § 512(g)(2)(B)................................................................................13

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS ON GROUNDS OF FORUM
NON CONVENIENS - iv
Case No. 2:23-cv-00576-TL

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

17 U.S.C. § 512(g)(3) ................................................................................10, 11, 13

17 U.S.C. § 512(g)(3)(D) ...............................................................................4, 10, 26

28 U.S.C. § 1338(a) ................................................................................................10

28 U.S.C. § 1404(a) ..................................................................................................9

**Other Authorities**

Conclusions and Recommendations Adopted By the Special Commission on the
    Practical Operation of the Hague Apostille, Evidence and Service
    Conventions (Oct. 28-Nov. 4, 2023).................................................................21, 23

Declaration of Republic of Korea to Evidence Convention ........................................21

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS ON GROUNDS OF FORUM
NON CONVENIENS - v
Case No. 2:23-cv-00576-TL

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

# I.  INTRODUCTION

Beginning in August 2022, Defendants Ironmace Co. Ltd. ("Ironmace"), Ju-Hyun Choi, and Terence Seungha Park (collectively, "Defendants") conducted a series of playtests in the United States of an English-language videogame entitled "Dark and Darker." Defendants placed the game on Steam, an online platform operated by Washington-based Valve Corporation ("Valve"), relied on the servers of Amazon Web Services ("Amazon") to host online gameplay, and intentionally targeted the United States market, including by heavily promoting the game in English on the United States-based internet platforms Discord, Twitter, and YouTube. Defendants' targeting of the United States was successful, with a substantial percentage of Dark and Darker's players being located in the United States. Korean gamers, on the other hand, could not play the game during Defendants' fifth and last playtest of Dark and Darker because Defendants geo-blocked them.

Defendants' activities violate Nexon's United States copyright and trade secret rights in a videogame project entitled P3. Dkt.#1. Defendants do not contest that Nexon states federal claims against them that fall squarely within this Court's jurisdiction, having failed to seek dismissal for failure to state a claim or for lack of subject matter or personal jurisdiction.

Defendants nevertheless contend that the Court should dismiss this action on *forum non conveniens* grounds and require Nexon to bring its federal copyright and trade secret claims in Korea. Defendants are incorrect. As the Ninth Circuit recently held, "[c]opyright cases concerning alleged unlawful activities purposely directed toward the United States are more amenable to suit in the United States" than in the defendants' home territory. *Lang Van, Inc. v. VNG Corp.*, 40 F.4th 1034, 1043 (9th Cir. 2022). Having targeted the United States with their unlawful activities, Defendants must now defend their actions in a United States court.

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

A *forum non conveniens* dismissal as sought by Defendants is "an exceptional tool to be employed sparingly," in which a defendant must make "a clear showing of facts which ... establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience, which may be shown to be slight or nonexistent." *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000). While the standard should not be "misunderstood" as one that "compels plaintiffs to choose the optimal forum for their claim," the United States is the optimal forum for Nexon's United States claims, not an oppressive or vexatious one. *Id.*

Indeed, Korea is not an adequate forum. Where a plaintiff's right to obtain relief in a forum is a "mirage" in light of the foreign court's procedural rules, the foreign court is inadequate. *Beijing iQIYI Sci. & Tech. Co. v. iTalk Glob. Commc'ns, Inc.*, No. 6-19-CV-00272-ADA, 2019 WL 6876493, at *5 (W.D. Tex. Dec. 17, 2019). Defendants' central defense is that they independently created, rather than copied, Dark and Darker. But Korean courts are powerless to compel production of the source code that runs Dark and Darker, and Defendants have refused to produce it in Korea, leaving Nexon with only a mirage of a remedy on important parts of its claims in Korea.

Nor have Defendants submitted any evidence that the forum identified in the forum selection clauses upon which they rely—Seoul Central District Court—is available. Rather, Defendants have represented to this Court only that they are amenable to service of process in Suwon, not Seoul; and, in the Korean litigation, Defendants have stated that the Seoul court lacks jurisdiction over the merits.

Furthermore, the private and public interest factors favor the United States over Korea. With respect to the private interest factors, this Court has the full power of the Federal Rules to permit Nexon and Defendants to gain access to proof from the other's files and witnesses, while

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS ON GROUNDS OF FORUM
NON CONVENIENS - 2
Case No. 2:23-cv-00576-TL

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

Korea has no pre-trial discovery process. Moreover, the third-parties with information relevant to this case are located in the United States, making this Court a superior forum to a Korean court. While Defendants claim inconvenience in that some evidence is in Korean, this factor is, at best, neutral, because the parties' videogames as presented to players and their underlying coding is in English. No matter where this dispute is litigated, the court will need to assess evidence in a foreign language.

With respect to the public interest factors, the Ninth Circuit has instructed that a defendant's targeting of the United States favors resolution of a plaintiff's claims in the United States. *Lang Van*, 40 F.4th at 1037. Because Defendants geo-blocked Korean users and targeted the United States as their primary market, the public interest strongly favors resolving Nexon's claims of infringement and misappropriation in the United States in a United States court, rather than one in Korea.

With the presumption and weight of the *forum non conveniens* factors overwhelmingly against them, Defendants rely heavily on forum selection clauses in Choi's and Park's employment-related agreements with Nexon calling for certain disputes to be litigated in Seoul. But as explained by Professor Suk, these clauses do not encompass disputes based on post-employment tortious conduct. Suk Decl. ¶¶ 27-30. Moreover, the type of forum selection clauses at issue has been authoritatively construed by the Korean Supreme Court as not reflecting an agreement to limit the filing of a lawsuit in a court outside Korea. Suk Decl. ¶¶ 18-19. Additionally, Ironmace cannot rely on these agreements because it is a non-signatory whose unlawful conduct had nothing to do with their performance. *AMA Multimedia LLC v. Sagan Ltd.*, No. CV-16-01269-PHX-DGC, 2020 WL 4284364, at *3 (D. Ariz. July 27, 2020).

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS ON GROUNDS OF FORUM NON CONVENIENS - 3
Case No. 2:23-cv-00576-TL

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

1   Notably, Defendants themselves do not believe the forum selection clauses govern this

2   dispute. When Ironmace sued Nexon in Korea, it sued in Suwon District Court, not Seoul, and

3   Defendants repeatedly argued Seoul Central District Court lacked jurisdiction. Principles of

4   contract interpretation and judicial estoppel do not permit this Court to reward Defendants for

5   telling this Court that Seoul is the exclusive jurisdiction to hear the dispute, while they

6   simultaneously tell the court in Suwon that the Seoul court lacks jurisdiction.

7   While there is no agreement requiring Nexon to bring this suit in Seoul, Ironmace has

8   agreed to litigate this dispute in the Western District of Washington. In exchange for the privilege

9   of invoking the Digital Millennium Copyright Act's ("DMCA") counter-notification procedure to

10   pressure Valve to put back Dark and Darker on its platform, Ironmace stated that "Ironmace

11   consents to the jurisdiction of the Western District of Washington." Blackburn Decl. ¶ 14, Ex. H.

12   Congress required Ironmace to make that statement to take advantage of the DMCA counter-

13   notification process. 17 U.S.C. § 512(g)(3)(D). Congress' determination that this jurisdiction is an

14   appropriate venue to sue a foreign defendant that avails itself of the DMCA's protections renders

15   the judicial doctrine of *forum non conveniens* "unavailable" as a basis for dismissal. *Zipfel v.*

16   *Halliburton Co.,* 832 F.2d 1477, 1487 (9th Cir.1987) *amended on other grounds by* 861 F.2d 565

17   (9th Cir. 1988).

18   Defendants purposefully targeted the United States and this district to violate United States

19   copyright and trade secret law, and this district is the only forum that Ironmace has agreed is the

20   appropriate one for resolving the parties' dispute. For these reasons, the Court should deny

21   Defendants' motion.

22

23

24

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS ON GROUNDS OF FORUM
NON CONVENIENS - 4
Case No. 2:23-cv-00576-TL

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

## II.  BACKGROUND

Nexon is a videogame developer whose subsidiaries and related companies employ hundreds of people in the United States and conduct significant business here. Hwang Decl. ¶¶ 7-12. Nexon formerly employed Defendants Park, a United States citizen, and Choi to develop a videogame under the project title "P3" that commenced in July 2020. *Id.* ¶¶ 13, 17. Consistent with industry practice and inherent limitations of standard computer programming languages, the P3 project source code is in English. *Id.* ¶ 57. During their employment, Choi and Park entered into agreements with Nexon calling for disputes with respect to the agreements to be litigated in Seoul Central District Court. Dkt.#29, at 3; Dkt.#31 ¶ 25.

Without authorization, Choi transferred source code and other confidential P3 project materials to his personal servers between December 2020 and June 2021. Hwang Decl. ¶¶ 38-43. During this time, Choi told Nexon employees he had secured funding for a new company, and he solicited employees to leave Nexon to develop a game similar to P3. *Id.* ¶¶ 44, 59.

After Nexon learned of Choi's solicitation, it audited Choi and discovered his unauthorized transfers. *Id.* ¶ 44. While Choi initially agreed to provide his servers to permit Nexon to conduct a forensic audit, Choi reneged on his agreement and told Nexon he deleted all the data. *Id.* ¶ 45. Nexon terminated Choi on July 21, 2021. *Id.* ¶ 46. After approximately half of the P3 team left Nexon, including Park, Nexon temporarily suspended P3 on August 18, 2021. *Id.* Nexon has recently learned that, in addition to Choi, two of the departed employees who now work for Ironmace illicitly took P3 materials shortly before resigning from Nexon. *Id.* ¶¶ 47-49.

Choi and Park co-founded Ironmace in October 2021. *Id.* ¶ 50. While Defendants portray this dispute as between a large corporation and a group of independent game developers,

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS ON GROUNDS OF FORUM
NON CONVENIENS - 5
Case No. 2:23-cv-00576-TL

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

1    Defendants have not presented any financial information or other evidence establishing that they

2    are unable to afford the costs of litigating in the United States. Dkt.##29-33.

3            Less than a year after its founding, Ironmace released a demo of a game entitled "Dark and

4    Darker" on Steam, an online platform operated by Valve, headquartered in Bellevue, Washington,

5    while also relying on servers provided by Amazon to host online gameplay. Blackburn Decl. ¶¶ 3-

6    6. Players could play the game during four alpha playtests on Steam from August 19-21, 2022;

7    October 28-November 2, 2022, December 16-26, 2022; and February 6-16, 2023; and one quality

8    assurance ("QA") playtest from September 23-28, 2022. *Id.* ¶¶ 2-3.

9            The textual elements of Dark and Darker are in English. Hwang Decl. ¶ 58. Furthermore,

10   because standard programming languages are built on the English alphabet, Dark and Darker's

11   source code is also most likely in English. *Id.* ¶ 57. While Defendants' brief claims their source

12   code is in Korean, Dkt.#29, at 5, their declarations do not. Hwang Decl. ¶¶ 54-56.

13           Defendants heavily marketed Dark and Darker in the United States, promoting the game

14   in English to a large number of followers on Twitter and Discord. Blackburn Decl. ¶ 16, Exs. J, K.

15   Park also went on a media tour on the channels of English-speaking YouTubers to promote the

16   game to the United States audience. *Id.* ¶ 17. One public relations stunt even directed players to

17   search for a physical QR code located under a bench in New York's Central Park. *Id.* ¶ 19, Ex. L.

18   Defendants admitted that at least one playtest was "meant to test basic online gameplay for North

19   America region," and in a QA test, instructed players in the United States to use servers nominally

20   designated for the European Union. *Id.* ¶¶ 8-9. As a result, players in the United States represented

21   Defendants' largest market, accounting for up to 66.34% of players, depending on the playtest.

22   *See* Hwang Decl. ¶ 52.

23

24

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS ON GROUNDS OF FORUM
NON CONVENIENS - 6
Case No. 2:23-cv-00576-TL

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

Because Dark and Darker violates Nexon's rights, Nexon sent a DMCA notice to Valve on March 22, 2023, requesting that Valve take down Dark and Darker, and Valve complied on March 25, 2023. *See* Blackburn Decl. ¶ 10.

In response, on April 10, 2023, Ironmace filed a preliminary injunction request against Nexon in Suwon District Court seeking, *inter alia*, an order enjoining takedown requests to Valve. M.Park Decl. ¶ 14. Suwon District Court is a separate judicial district from Seoul District Court, located in a different administrative division of Korea, and supervised by a different appellate court. *Id.* ¶ 15.

On April 14, 2023, Nexon responded to Ironmace's filing by applying for a preliminary injunction in Suwon District Court, seeking an order under Korean copyright and trade secret law barring the distribution of Dark and Darker. *Id.* ¶ 19. Defendants did not sue in Seoul, the jurisdiction identified in the forum selection clauses Defendants rely on in the present motion. Indeed, in the Suwon litigation, Defendants repeatedly took the position that Seoul Central District Court lacks jurisdiction on the merits of Nexon's claims. *Id.* ¶¶ 22-25.

Nexon filed this action on April 14, 2023, alleging in its Complaint that Defendants' acts of copyright infringement and misappropriation targeting the United States violate the United States Copyright Act and Defend Trade Secrets Act. Dkt.#1. On April 20, 2023, Ironmace sent a DMCA-counter-notification to Valve, requesting that Valve put back Dark and Darker on Steam in which it stated "Ironmace consents to the jurisdiction of the Western District of Washington." Blackburn Decl. ¶ 14, Ex. H. After Valve notified Nexon it would put back Dark and Darker on Steam unless Nexon filed suit within ten business days, Nexon notified Valve of the pendency of this action. *Id.* ¶ 14.

Defendants ran a fifth alpha playtest of Dark and Darker from April 14 to April 19, 2023. *Id.* ¶ 2. While Defendants continued to rely on Amazon servers to host the game, they relied on BitTorrent, rather than Steam, to distribute it. Hwang Decl. ¶ 53. Because Dark and Darker does not comply with Korean videogame regulations, Defendants geo-blocked Korean players from playing Dark and Darker. *Id.* ¶¶ 52-53.

In the Suwon litigation, Defendants took the position that they created Dark and Darker "independently with a blank slate," rather than copying and misappropriating from the P3 project. Dkt.#31, Ex. 2 at 36. However, Defendants refused to produce their source code, and the Suwon court cannot and did not compel them to do so. M.Park Decl. ¶¶ 26-32, 36. The Suwon court conducted three hearings and may receive additional briefing on July 19, 2023, before the court's decision. *Id.* ¶¶ 28-31, 34.

Defendants continue to express plans to move forward with release of Dark and Darker in the United States. Blackburn Decl. ¶ 21.

### III.  ARGUMENT

**A.  The DMCA Bars Consideration Of *Forum Non Conveniens* In This Case.**

"[B]efore dismissing a case for forum non conveniens, a district court must first make a choice of law determination." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1148 (9th Cir. 2001) (quoting *Zipfel,* 832 F.2d at 1482). This "choice of law analysis is only determinative when the case involves a United States statute requiring venue in the United States, such as the Jones Act or the Federal Employers' Liability Act." *Lueck*, 236 F.3d at 1148.

In *Zipfel*, for example, the Ninth Circuit held a court may not dismiss a Jones Act claim on *forum non conveniens* grounds. *Zipfel*, 832 F.2d at 1482. The Ninth Circuit relied on *Baltimore & Ohio R. Co. v. Kepner,* 314 U.S. 44 (1941), in which the Supreme Court held that the "privilege of venue, granted by the legislative body which created th[e] right of action [under the Federal

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS ON GROUNDS OF FORUM NON CONVENIENS - 8
Case No. 2:23-cv-00576-TL

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

1    Employers Liability Act ("FELA")], cannot be frustrated for reasons of convenience or expense."

2    *Zipfel*, 832 F.2d at 1487 (quoting *Kepner*, 314 U.S. at 54). The Ninth Circuit explained that the

3    outcome in *Kepner* flowed from the fact that FELA contained a "specific venue provision[]." *Id.*

4    at 1487. The specific venue provision in FELA stated that "an action **may** be brought in a district

5    court of the United States, in the district court of the residence of the defendant, or in which the

6    cause of action arose, or in which the defendant shall be doing business." *Id.* (quoting 45 U.S.C. §

7    56 (emphasis added)). The Ninth Circuit extended *Kepner* to the Jones Act, *inter alia*, because it

8    contained a special venue provision under which "jurisdiction … shall be under the court of the

9    district in which the defendant employer resides or in which his principal office is located." *Id.*

10   (quoting 46 U.S.C. § 688(a)). Because the Jones Act contained a specific venue provision, the

11   Ninth Circuit held *forum non conveniens* was "unavailable" as a ground for dismissal. *Id.*

12        Similarly, in *United States v. Nat'l City Lines*, 334 U.S. 573, 575 n.1 (1948) (quoting 15

13   U.S.C. § 22), the Supreme Court construed the Clayton Act, which provided that antitrust suits

14   against corporations "may be brought not only in the judicial district whereof it is an inhabitant,

15   but also in any district wherein it may be found or transacts business," as prohibiting a *forum non*

16   *conveniens* analysis. After explaining the venue statute was intended to give antitrust plaintiffs

17   more effective relief than prior law, the Court held that for Congress "[t]o have broadened the

18   choice of venue for the reasons which brought about that action, only to have it narrowed again by

19   application of the vague and discretionary power comprehended by forum non conveniens would

20   have been incongruous, to say the least." *Id.* at 581.[1]

21

22   _____

     [1] While Congress has authorized district courts to transfer cases to other domestic district courts since *National City*
23   *Lines* was decided, *see* 28 U.S.C. § 1404(a), "section 1404 only overruled the holding of *National City Lines I* to the
     extent that it applied to cases that could be transferred from one federal district court to another." *Kempe v. Ocean*
24   *Drilling & Expl. Co.*, 876 F.2d 1138, 1144 (5th Cir. 1989); *see also Zipfel*, 832 F.2d at 1487(holding *forum non*
     *conveniens* unavailable post-section 1404).

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS ON GROUNDS OF FORUM
NON CONVENIENS - 9
Case No. 2:23-cv-00576-TL

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

Here too, Congress has enacted a specific venue provision applicable to a narrow subset of copyright cases involving a foreign defendant who invokes the DMCA counter-notification process. In particular, under the DMCA, a copyright owner may send a takedown notice to an online service provider requesting that the service provider remove allegedly infringing content. 17 U.S.C. § 512(c)(3). If the service provider complies with the takedown notice, the DMCA permits—but does not require—the alleged infringer to send a "put-back" counter-notification to the service provider. *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1151 (9th Cir. 2016) (discussing 17 U.S.C. § 512(g)(3)). If the service provider fails to heed the counter-notification and put back the content, the service provider may be held liable to the alleged infringer for a wrongful takedown, unless the copyright owner files a lawsuit seeking injunctive relief within ten days of the counter-notification. *Id.* § 512(g)(1-2).

In granting alleged infringers the privilege of sending counter-notifications, Congress required an alleged infringer whose "address is outside of the United States" to state in its counter-notification that it "consents to the jurisdiction" of "any judicial district in which the service provider may be found." 17 U.S.C. § 512(g)(3)(D). In this case, there is no dispute that Ironmace availed itself of the privilege of sending a counter-notification to Valve, and there is no dispute that Valve—which is headquartered in Bellevue—can be "found" in this district. Blackburn Decl. ¶¶ 5, 14, Ex. H. Thus, under the statutory scheme, Nexon is entitled to a venue in this district against Defendants.[2]

---

[2] In *Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 700 (9th Cir. 1995), the Court held that 28 U.S.C. § 1338(a), which "invests the federal district courts with 'exclusive' jurisdiction over claims arising under the United States Copyright Act" over state courts, is not a special venue statute like the Jones Act or FELA. *Creative Tech* is distinguishable because the DMCA, like FELA and the Jones Act, narrowly specifies jurisdiction only in the district in which a service provider can be "found," not all district courts in general. 17 U.S.C. § 512(g)(3).

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS ON GROUNDS OF FORUM NON CONVENIENS - 10
Case No. 2:23-cv-00576-TL

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

For Congress to grant Nexon a federal forum to enforce its United States copyrights against those who, like Ironmace, invoke the DMCA and consent to jurisdiction in a specified venue, only to have that federal forum taken away "by application of the vague and discretionary power comprehended by forum non conveniens would have been incongruous, to say the least." *Nat'l City Lines*, 334 U.S. at 581. By its plain terms, the DMCA evinces a Congressional judgment that copyright owners should not face the uncertainties of litigating domestic rights overseas but instead should have the right to a federal forum to vindicate their United States copyrights against foreign defendants that have taken advantage of the DMCA counter-notification process.

Furthermore, Ironmace brought a preliminary injunction application in Suwon District Court in Korea asking for an order prohibiting Nexon from requesting a third-party such as Valve to take down Dark and Darker from Steam. M.Park Decl. ¶¶ 14, 17. Thus, Ironmace could have chosen to rely solely on the protections of Korean law and Korean courts to advance its position. Rather than doing so, Ironmace expressly invoked the DMCA counter-notification process. Blackburn Decl. Ex. H. Because Congress has determined that alleged infringers who invoke the DMCA counter-notification process are subject to litigation in the venue of the judicial district of the service provider, this Court may not invoke *forum non conveniens* so long as United States copyright law applies. *Zipfel*, 832 F.2d at 1487; 17 U.S.C. § 512(g)(3).

Here, because Defendants infringed domestically, United States copyright law applies: "[w]hen a foreign work is allegedly infringed in the United States, … United States law applies to determine whether infringement has occurred and if so, what remedies are available." *O'Reilly v. Valley Ent., Inc.*, No. C-09-03580-CW (DMR), 2011 WL 13258234, at *8 (N.D. Cal. Jan. 4, 2011) (citing *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 84, 90-91 (2d Cir. 1998)).

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS ON GROUNDS OF FORUM NON CONVENIENS - 11
Case No. 2:23-cv-00576-TL

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

Congress has granted plaintiffs a right to a venue in a federal district court against foreign infringers who invoke and consent to the DMCA counter-notification process. Accordingly, Congress' judgment may not be "frustrated for reasons of convenience or expense," requiring the Court to deny Defendants' motion. *Kepner*, 314 U.S. at 54.

**B. Defendants Cannot Establish *Forum Non Conveniens*.**

Even if the DMCA's venue provision and Ironmace's consent to it did not preclude a *forum non conveniens* analysis, the Court should deny Defendants' motion for two independent reasons. First, Ironmace's consent to jurisdiction renders this forum presumptively valid under *Atlantic Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63 (2013). Second, even if the *Atlantic Marine* presumption did not apply, Defendants cannot show the existence of an adequate alternate forum or that the balance of public and private interests strongly favor dismissal.

**1.   This Forum Is Presumptively Valid Under *Atlantic Marine*.**

In *Atlantic Marine*, the Supreme Court held that where there is a "bargained for" forum selection clause, enforcing the bargained for selection "protects [the parties'] legitimate expectations and furthers vital interests of the justice system" and must be "given controlling weight in all but the most exceptional cases." 571 U.S. at 63 (internal quotation omitted).

Here, Ironmace made a bargain in which it availed itself of the benefits of submitting a DMCA counter-notification, in exchange for which it stated that it "consents to the jurisdiction of the Western District of Washington." Blackburn Decl. Ex. H, at 6. "[T]hat initial choice deserves deference." *Atl. Marine*, 571 U.S. at 63.

Indeed, the DMCA's consent to jurisdiction language is modeled on standard formulations used to create "permissive forum selection clauses." *See High-Bassalik v. Al Jazeera Am.*, No. 2:15-CV-04427-CAS-FFMX, 2015 WL 9695227, at *7 (C.D. Cal. Nov. 2, 2015) ("Permissive

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS ON GROUNDS OF FORUM
NON CONVENIENS - 12
Case No. 2:23-cv-00576-TL

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

forum selection clauses, often described as 'consent to jurisdiction' clauses, authorize jurisdiction and venue in a designated forum, but do not prohibit litigation elsewhere.") (quoting Wright & Miller, Federal Practice and Procedure § 3803.1 (2007)). Courts have repeatedly held that, where a plaintiff sues in a jurisdiction designated in a permissive forum selection clause, a defendant seeking to transfer a case outside the permitted forum must meet the *Atlantic Marine* standard to defeat the plaintiff's choice. *Karl W. Schmidt & Assocs., Inc. v. Action Env't Sols., LLC*, No. 14-CV-00907-RBJ, 2014 WL 6617095, at *6 (D. Colo. Nov. 21, 2014) (applying *Atlantic Marine*); *United Am. Healthcare Corp. v. Backs*, 997 F.Supp.2d 741, 750 (E.D. Mich. 2014) (same).

Here, Congress gave alleged infringers an expeditious procedure to counteract a DMCA takedown notice, namely the privilege of submitting a DMCA counter-notification, which results in a service provider putting content back up, unless the copyright owner promptly files a lawsuit seeking injunctive relief. 17 U.S.C. § 512(g)(2)(B). In exchange for this privilege, Congress required foreign defendants to consent to jurisdiction in the judicial district where the service provider is found, ensuring copyright owners a federal forum to vindicate their United States copyrights. *Id.* § 512(g)(3). Congress, therefore, carefully balanced the interests of alleged foreign infringers and copyright holders. Defendants ask this Court to disregard Congress' balancing and grant them all of the benefits of the DMCA counter-notification procedure without need to accept any of the burdens.

Because *Atlantic Marine* requires the Court to hold Defendants[3] to the bargain they struck absent the most "extraordinary circumstances," and because Defendants cannot show any such extraordinary circumstances, the Court must deny their motion. *Atlantic Marine*, 572 U.S. at 62.

---

[3] As senior officers of Ironmace, Choi and Park are also bound by Ironmace's consent. *See Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc.*, 108 F.Supp.3d 816, 823 (N.D. Cal. 2015) (holding president bound by corporation's forum selection clause).

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS ON GROUNDS OF FORUM NON CONVENIENS - 13
Case No. 2:23-cv-00576-TL

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

2.        **The Forum Selection Clauses Defendants Rely On Are Inapplicable.**

Relying on forum selection clauses that call for litigation in *Seoul* Central District Court, Defendants argue *Atlantic Marine* presumptively requires Nexon to litigate its United States claims in pending proceedings initiated by Ironmace in *Suwon* District Court. Dkt.#29 at 10. Because no one "bargained for" litigation in Suwon District Court, Defendants' arguments relying on *Atlantic Marine* are frivolous. *Atlantic Marine*, 571 U.S. at 63. Defendants attempt to skate past this deficiency by claiming the parties signed a "Korean Forum-Selection Clause," but no party to this suit agreed to any such clause with any other party. Dkt.#29, at 10. The Court, therefore, must reject Defendants' request to apply *Atlantic Marine* in their favor.

Even if Defendants were seeking to litigate in Seoul, their argument still fails because the clauses on which they rely do not cover disputes based on tortious conduct occurring after Choi and Park's employment. Suk Decl. ¶¶ 27-30. Defendants' contrary argument relies on translating the Korean words "본 계약과 관련하여" into the English words "related to this Agreement." Dkt.#29 at 3, 11. But these Korean words could also fairly be translated as "arising out of this agreement," "regarding this agreement," "in connection with this agreement," and other formulations. Suk Decl. ¶ 12; J.Park Decl. ¶ 5. Defendants cherry-picked the "related-to" translation because "related to" has been broadly construed in their favor in United States caselaw. *See* Dkt.#29, at 11. But Defendants offer no principled reason for selecting "related to" instead of "arising out of" or any other possible translation, and they offer no evidence that the Korean words have the specialized meaning of "related to" in United States caselaw. By contrast, Professor Suk explains how the Korean words would be understood by Korean speakers, and demonstrates that they do not cover this dispute. Suk Decl. ¶¶ 12, 27-30.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS ON GROUNDS OF FORUM
NON CONVENIENS - 14
Case No. 2:23-cv-00576-TL

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

1    Furthermore, the Korean Supreme Court has authoritatively construed contractual

2    agreements specifying a Korean court as the exclusive jurisdiction for a dispute as reflecting only

3    an agreement as to which court within Korea will hear a dispute—assuming the litigation is filed

4    in Korea in the first place. *Id.* ¶ 18. Such clauses do not reflect an agreement that litigation cannot

5    be brought outside of Korea when another country's courts have jurisdiction over the dispute. *Id.*

6    ¶ 19. Because the parties are presumed to rely on this existing body of law in entering into the

7    agreements, the Court must follow that law here. *Schroeder v. United States*, 569 F.3d 956, 961

8    (9th Cir. 2009) (holding federal courts "give effect to the parties' intentions as ascertained from

9    the terms themselves"); *Queen City Farms, Inc. v. Cent. Nat. Ins. Co. of Omaha*, 126 Wash. 2d

10   50, 91 (1994) (holding that where there is a prior judicial construction of words in a contract "it is

11   presumed that construction is intended by the parties"); *see also Kennewick Irr. Dist. v. United*

12   *States*, 880 F.2d 1018, 1032 (9th Cir. 1989) (holding federal courts "look to general principles for

13   interpreting contracts").

14   Furthermore, to avail itself of the forum selection clauses in Choi's and Park's

15   employment-related agreements with Nexon, Ironmace's allegedly wrongful conduct must have

16   some connection to the agreements themselves, rather than Ironmace simply having a connection

17   to signatories to those agreements. *AMA Multimedia*, 2020 WL 4284364, at *3 ("[T]he Ninth

18   Circuit made clear on appeal that it is Defendants' [allegedly wrongful] conduct, not their

19   corporate relationships, that must be linked to the [agreement].") (discussing *AMA Multimedia,*

20   *LLC v. Sagan Ltd.*, 807 F.App'x 677, 679 (9th Cir. 2020)). Because Ironmace was not even formed

21   until after termination of Choi's and Park's employment, Ironmace's infringement and

22   misappropriation lacks the requisite relationship to the performance of the employment-related

23

24

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS ON GROUNDS OF FORUM
NON CONVENIENS - 15
Case No. 2:23-cv-00576-TL

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

agreements themselves. Similarly, under Korean law, Ironmace has no right to enforce the agreements because it is a nonparty. Suk Decl. ¶ 26.

Moreover, Defendants themselves took the position that the forum selection clauses do not cover this dispute. M.Park Decl. ¶¶ 22-25. Ironmace initiated Korean proceedings in Suwon District Court, and it expressly and repeatedly took the position in Suwon that the Seoul Central District Court lacked jurisdiction over the parties' dispute over Korean copyright and trade secret law. *Id*. Under basic contract interpretation principles, Defendants' reasonable, practical construction of the forum selection clauses as excluding this dispute "will … be adopted and enforced by the court." *U.S. Cellular Inv. Co. v. GTE Mobilnet, Inc.*, 281 F.3d 929, 937 (9th Cir. 2002).

Finally, even if the position Defendants are currently taking in this Court were correct, it would mean that Defendants actively misled the Suwon District Court when taking the opposite position there, giving Defendants the unfair advantage of litigating in their preferred forum. Because this Court must protect itself "from the perversion of judicial machinery through a party's attempt to take advantage of both sides of a factual issue," the Court should estop Defendants from asserting an inconsistent position here. *United States v. Paulson*, 68 F.4th 528, 547 n.29 (9th Cir. 2023) (internal quotation omitted).

### 3.   Defendants Cannot Establish Traditional *Forum Non Conveniens*.

While Ironmace's consent to this jurisdiction means the Court must deny Defendants' motion without engaging in a traditional *forum non conveniens* analysis, Defendants' motion also fails under a traditional analysis.

"The doctrine of forum non conveniens is an exceptional tool to be employed sparingly." *Bos. Telecomm. Grp., Inc. v. Wood*, 588 F.3d 1201, 1206 (9th Cir. 2009) (internal quotation omitted). It is not "a doctrine that compels plaintiffs to choose the optimal forum for their claim."

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS ON GROUNDS OF FORUM
NON CONVENIENS - 16
Case No. 2:23-cv-00576-TL

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

1    *Id.* (internal quotation omitted). To grant dismissal, a district court must decide that "defendants

2    have made a clear showing of facts which … establish such oppression and vexation of a defendant

3    as to be out of proportion to plaintiff's convenience, which may be shown to be slight or

4    nonexistent." *Id.* (internal quotation omitted).

5            Here, the convenience of this forum to Nexon is substantial—not slight or non-existent—

6    because this suit seeks to hold Defendants accountable for infringement and misappropriation of

7    Nexon's rights in the United States under United States laws. And while Defendants may prefer

8    to litigate in Korea where producing evidence is voluntary, Defendants fail to establish any

9    vexation or oppression.

10            **a.**     **Korea Is Not An Available Adequate Forum.**

11            A defendant seeking a *forum non conveniens* dismissal "must show … the existence of an

12    adequate alternative forum." *Bos. Telecomm. Grp.*, 588 F.3d at 1206 (internal quotation omitted).

13            To establish availability, a defendant must show it is "amenable to service of process in the

14    foreign forum." *Lueck*, 236 F.3d at 1143. Here, Defendants seek to enforce a forum selection clause

15    for *Seoul* courts but have only submitted evidence that they are amenable to service in *Suwon*.

16    Dkt.#31 ¶¶ 26-27. Because Defendants failed to submit evidence that they are amenable to service

17    in the forum selected by the contracts on which they rely, the Court must deny their motion.

18            With respect to adequacy, while "[a] dismissal on grounds of *forum non conveniens* may

19    be granted even though the law applicable in the alternative forum is less favorable to the plaintiff's

20    chance of recovery, … an alternate forum offering a clearly unsatisfactory remedy is inadequate."

21    *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1225 (9th Cir. 2011) (internal quotation

22    omitted). Likewise, although run-of-the-mill differences in discovery rules do not render a forum

23    inadequate, a forum is inadequate if litigation in the alternate forum "would result in unfair

24    treatment." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1178 (9th Cir. 2006).

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS ON GROUNDS OF FORUM
NON CONVENIENS - 17
Case No. 2:23-cv-00576-TL

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

Applying these standards, courts have held that, if an alternate forum's procedural rules effectively block a plaintiff from establishing its claim, the alternative forum is inadequate. *Halo Creative & Design Ltd. v. Comptoir Des Indes Inc.*, 816 F.3d 1366, 1372 (Fed. Cir. 2016) (holding Canada inadequate where Canada would not entertain claims based on infringement in the United States); *Beijing.*, 2019 WL 6876493, at *4; *Beana v. Woori Bank*, No. 05 CIV. 7018(PKC), 2006 WL 2935752, at *5 (S.D.N.Y. Oct. 11, 2006) (holding Korea inadequate where Korean statute of limitations barred claim).

In *Beijing*, for example, the Chinese rules of evidence required the plaintiff to present evidence from a Chinese notary who personally witnessed infringement, something which was impossible to obtain because infringement had already ceased. 2019 WL 6876493, at *4. Thus, while the court accepted that "China has copyright and trademark laws equal to that of the United States, … upon closer inspection of the evidentiary requirements, China as an adequate forum [was] merely a mirage." *Id*. at 5.

The adequacy of Korea as an alternate forum is likewise a mirage in this case. In particular, Nexon alleges Ironmace infringed Nexon's source code, while Ironmace's primary defense is that it independently created its corresponding source code. Dkt.#1 ¶¶ 92-97; Dkt.#33 ¶ 14. Proving these claims requires the factfinder to compare Nexon's and Ironmace's source code side-by-side. *See Antonick v. Elec. Arts, Inc.*, 841 F.3d 1062, 1066 (9th Cir. 2016) ("There can be no proof of 'substantial similarity' and thus of copyright infringement unless Seiler's works are juxtaposed with Lucas' and their contents compared.") (internal quotation omitted).

Nexon cannot do this in Korea because Ironmace has refused to produce its source code. M.Park Decl. ¶¶ 26-31, 36. Indeed, Ironmace has stated it will not produce its source code unless Nexon agrees to withdraw its DMCA notice; that is, unless Nexon agrees to concede Ironmace's

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS ON GROUNDS OF FORUM NON CONVENIENS - 18
Case No. 2:23-cv-00576-TL

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

1   claims against Nexon in the Suwon preliminary injunction proceedings. Notwithstanding

2   Ironmace's obvious gamesmanship, the court in Korea is powerless to compel Ironmace to produce

3   the central evidence in the case. *Id.* ¶ 32. Forcing Nexon to concede Ironmace's Korean claims

4   against Nexon in order for Nexon to have a chance to establish its counterclaims against Ironmace

5   goes beyond mere unfairness and into the realm of "Kafkaesque" procedure. *Irish Nat. Ins. Co. v.*

6   *Aer Lingus Teoranta*, 739 F.2d 90, 91 (2d Cir. 1984) (reversing grant of *forum non conveniens*

7   dismissal).

8           Defendants' brief seeks to elide this inadequacy by claiming "a Korean panel of judges

9   will evaluate Ironmace's … source code." Dkt.#29, at 1. But Defendants' declarations do not

10  support this claim, and Defendants, in fact, have not provided any court Ironmace's source code.

11  M.Park Decl. ¶¶ 26-31, 36.

12          The cases Ironmace cites finding Korea an adequate alternate forum are readily

13  distinguishable because none of them involved a defendant who had exclusive control of central

14  evidence in the case who brazenly refused to produce it. Dkt.#29, at 9 (citing cases).

15          Ironmace wants this case in Korea because it is an inadequate forum. Korea permits

16  Ironmace to contend it used original source code to independently develop Dark and Darker, while

17  simultaneously permitting it to withhold the evidence that would refute its contention. Because a

18  court may not dismiss a claim in favor of an inadequate forum, the Court must deny Defendants'

19  motion.

20          **b.      The Balance Of Interests Are Not Strongly In Favor of Dismissal**

21          Even where an adequate alternative forum exists, a *forum non conveniens* dismissal is

22  inappropriate, "unless the 'private interest' and the 'public interest' factors strongly favor trial in

23  a foreign country." *Bos. Telecommunications*, 588 F.3d at 1206 (internal quotation omitted).

24

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS ON GROUNDS OF FORUM
NON CONVENIENS - 19
Case No. 2:23-cv-00576-TL

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

Although a foreign plaintiff's choice is entitled to less deference, the Ninth Circuit has stressed that "less deference is not the same thing as no deference." *Ravelo Monegro*, 211 F.3d at 514. Even as to foreign plaintiffs, *forum non conveniens* remains a "tool to be employed sparingly," not one that "compels plaintiffs to choose the optimal forum." *Id.* Because Nexon's claims seek redress of infringement and misappropriation targeted to the United States, these factors strongly *disfavor* trial in Korea.

### (i)      The Private Interest Factors Favor This Forum.

While Ironmace's consent to jurisdiction in this district means the private interest factors "automatically weigh in favor of the preselected forum," even if the Court did weigh them, the factors favor litigating in this district. *United Am. Healthcare Corp.*, 997 F.Supp.2d at 750 (citing *Atlantic Marine*, 571 U.S. at 67). The factors are:

> (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Bos. Telecommunications Group*, 588 F.3d at 1206-07 (internal quotation omitted).

In this case, Defendants' central defense to infringement and misappropriation is that they independently created Dark and Darker without relying on Nexon's P3 materials. Dkt.#29, at 4; Dkt.#33 ¶ 14-15. Korea is far less favorable as a forum than the United States to resolve this dispute because a Korean court cannot compel Defendants to produce their source code and development documentation, Defendants have refused to produce it, and Nexon is unable to compel any of Defendants' employees to testify on the subject. M.Park Decl. ¶¶ 28-32, 36, 39, 44; Suk. Decl. ¶ 35. In contrast to Korea where Defendants need only provide evidence that support their contentions, in the United States, Defendants and their employees—including those that stole P3

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS ON GROUNDS OF FORUM NON CONVENIENS - 20
Case No. 2:23-cv-00576-TL

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

materials shortly before leaving Nexon—are subject to the full panoply of discovery procedures under the Federal Rules that will disprove their assertions. Suk Decl. ¶¶ 31-35.

Defendants argue that Korea is more favorable because, while Korean courts can compel testimony of third-parties located in Korea for a Korean case, Korea has issued a treaty reservation stating it will not honor a subpoena for testimony in aid of United States litigation. Dkt.#31 ¶ 29. This argument suffers from numerous flaws:

- The only Korean witnesses Defendants specifically identify are party employees subject to full discovery without need of assistance from Korean courts. *See* Suk Decl. ¶ 40.

- Defendants are incorrect that Korean courts will not honor a subpoena for testimony. By its plain terms, Korea's reservation applies to "discovery of documents," not testimony. Declaration of Republic of Korea to Evidence Convention;[4] Conclusions and Recommendations Adopted By the Special Commission on the Practical Operation of the Hague Apostille, Evidence and Service Conventions ¶ 35 (Oct. 28-Nov. 4, 2023) ["Hague Report"][5] (stating "reservation should not be extended to oral testimony").

- Because Defendants failed to identify any third-party witness in Korea on whose testimony they will rely, this court would "abuse[] its discretion" in weighing this factor in Defendants' favor. *Bos. Telecomm. Group*, 588 F.3d at 1210; *Deirmenjian v. Deutsche Bank, A.G.*, No. CV-06-00774-MMM-CWX, 2006 WL 4749756, at *15 (C.D. Cal. Sept. 25, 2006) (discounting this factor where "Defendants fail to identify any potential third-party witness who resides in Germany").

---

[4] https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=1057&disp=resdn.

[5] https://assets.hcch.net/docs/0edbc4f7-675b-4b7b-8e1c-2c1998655a3e.pdf.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS ON GROUNDS OF FORUM NON CONVENIENS - 21
Case No. 2:23-cv-00576-TL

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

- The third-party witnesses with information relevant to this case are likely to be domestic witnesses, like Valve and Amazon, with information concerning Defendants' infringement and misappropriation in the United States. While this Court can compel testimony from witnesses across the United States, Korea allows no equivalent deposition procedure. Suk Decl. ¶ 35.

Defendants' reliance on the need to translate some documents and testimony from Korean into English is also misplaced. Both Nexon's and Ironmace's source code are written in English, and the textual elements of the parties' videogames are in English. Hwang Decl. ¶¶ 57-58. Because Nexon's source code and the audiovisual aspects of the game, along with Defendants' corresponding copied material, constitute the intellectual property and accused material at issue in the dispute, litigating in Korea requires translation of the central evidence in the case from English to Korean. *See Antonick.*, 841 F.3d at 1066 (requiring side-by-side comparison of copyrighted and infringing work). Where "some evidence will be in English and some will be in Korean[,] … these conflicting considerations largely cancel each other out." *DFSB Kollective Co. v. CJ E & M Am., Inc.*, No. 2:15-CV-01650-SVW-FFM, 2015 WL 12781211, at *3 (C.D. Cal. June 4, 2015). Moreover, courts in the United States "work[] around such language limitations every day with minimal inconvenience to the Court and parties." *Prevision Integral de Servicios Funerarios, S.A. v. Kraft*, 94 F.Supp.2d 771, 779 (W.D. Tex. 2000).

Similarly, the location of some documents in Korea is not a significant impediment to litigation in the United States. "[T]he location of documents is increasingly irrelevant in the age of electronic discovery, when thousands of pages of documents can be easily digitized and transported to any appropriate forum." *Nat'l Shopmen Pension Fund, v. Stamford Iron & Steel Works, Inc.*, 999 F.Supp.2d 229, 233 (D.D.C. 2013). This Court can compel the parties and

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS ON GROUNDS OF FORUM NON CONVENIENS - 22
Case No. 2:23-cv-00576-TL

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

domestic third-parties to produce discovery as needed, and—contrary to Defendants' conclusory assertions—a Korean court will honor a targeted request for documents from this Court. Suk Decl. ¶¶ 36-39; Hague Report ¶ 31 (describing intent of reservation against "pre-trial discovery" to bar only pre-*suit* discovery). On the other hand, Korea has no means to compel compliance with pretrial requests for disclosure of evidence. Suk Decl. ¶¶ 31-34.

Likewise, "the physical location of witnesses is less important when testimony may be taken by deposition … and presented to the Court at either the summary judgment stage or a trial[,] and [where] [w]itnesses may also testify in this Court at trial via live videoconference." *National Shopmen Pension Fund*, 999 F.Supp.2d at 233. Moreover, to the extent Defendants are required to appear live at trial, Defendants have failed to present any financial information or other evidence suggesting such travel is oppressively outside their means. *Mintel Learning Tech., Inc. v. Beijing Kaidi Educ. & Tech. Dev. Co.*, No. C-06-7541- PJH, 2007 WL 2403395, at *10 (N.D. Cal. Aug. 20, 2007) (placing little weight on travel expenses from China where evidence did not "establish … oppression and vexation"). Furthermore, given that Defendants reached into this district to create contacts with Valve and Amazon to facilitate infringement and misappropriation in the United States, Defendants could reasonably expect to answer for their conduct here. *Ridgway v. Phillips*, 383 F.Supp.3d 938, 949 (N.D. Cal. 2019) ("[I]t would be too convenient for Defendant to reap the benefits of engaging in at least some business in California over a period of years, only to plead inconvenience when sued in a California court …."); *Lax v. Toyota Motor Corp.*, 65 F.Supp.3d 772, 780 (N.D. Cal. 2014) (holding convenience of party witnesses given less importance than third-party witnesses).[6]

---

[6] By contrast, "the key infringing conduct" in *Creative Techs.*, on which Defendants rely, occurred in Singapore, rather than the United States. *Creative Techs*, 61 F.3d at 703.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS ON GROUNDS OF FORUM NON CONVENIENS - 23
Case No. 2:23-cv-00576-TL

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

Finally, Defendants have identified no issues in enforcing a United States judgment in Korea, and there are none. *Hollywood Innovations Grp., LLC v. Netflix, Inc.*, No. CV-21-09423-TJH-JCX, 2022 WL 18584763, at *6 (C.D. Cal. Aug. 12, 2022).

Because Nexon selected this forum for its significant advantages in access to proof and practicalities in presenting its case—rather than to oppress or vex Defendants—Defendants cannot establish the private interest factors strongly favor dismissal.

### (ii)     The Public Interest Factors Favor This Forum.

When analyzing the public interest factors, the court considers "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum." *Bos. Telecomm. Group*, 588 F.3d at 1211 (internal quotation omitted). Courts "ask only if there is an identifiable local interest in the controversy, not whether another forum also has an interest." *Id.* at 1212 (internal quotation omitted). Thus, to retain jurisdiction, the Court need not hold that "[Washington] is the principal locus of the case or that [Washington] has more of an interest than any other jurisdiction." *Id.* (internal quotation omitted).

Thus, for example, in *Lang Van*, a Vietnamese defendant entered into relationships with Apple and Google in California to place an app in their app stores that facilitated infringement of music. 40 F.4th at 1037. Although "[defendant's] primary audience [was] in Vietnam," the defendant did not geo-block United States users, resulting in more than 320,000 downloads of its app in the United States. *Id.* at 1041. Rejecting the defendant's argument that Vietnam was a more convenient forum because it was the location of "the majority of witnesses and evidence," the Ninth Circuit held that "[c]opyright cases concerning alleged unlawful activities purposely directed toward the United States are more amenable to suit in the United States." *Id.* at 1043.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS ON GROUNDS OF FORUM
NON CONVENIENS - 24
Case No. 2:23-cv-00576-TL

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

Defendants' targeting of the United States is more extreme than the targeting of the *Lang Van* defendant. Defendants have *geo-blocked* **Korean** *users*, Hwang Decl. ¶¶ 52-53, while engaging in extensive English-language marketing targeted toward the United States, Blackburn Decl. ¶¶ 16-20. Defendants' relentless targeting of the United States market has resulted in hundreds-of-thousands of gamers playing Dark and Darker in the United States, representing by far Defendants' largest market. Hwang Decl. ¶¶ 51-52, Ex. B. And Defendants accomplished their extensive infringement and misappropriation in the United States by entering into contracts with Valve and Amazon to facilitate users accessing the game.[7] Blackburn Decl. ¶¶ 5-7. Because Defendants purposefully directed their activities to this country, Nexon's claims "are more amenable to suit in the United States" than in Korea. *Lang Van*, 40 F.4th at 1037.

Ignoring *Lang Van* and minimizing their targeting of the United States, Defendants claim "there is no local interest in having this matter resolved in Washington." Dkt.#29 at, 17. But the United States—and Washington in particular as a hub of intellectual property-based industries—"has a strong interest in enforcing these [United States intellectual property] rights." *Talavera Hair Prod., Inc. v. Taizhou Yunsung Elec. Appliance Co.*, No. 18-CV-823-JLS-(JLB), 2021 WL 3493094, at *11 (S.D. Cal. Aug. 6, 2021). While Nexon is a Korean corporation, Nexon group entities employ hundreds of people in the United States and conduct substantial business within the United States, giving Nexon a material stake in the United States' intellectual property system. Hwang Decl. ¶¶ 7-12. Furthermore, because Defendant Park is a United States citizen, the United States has a strong interest in ensuring its citizens respect its laws within its borders. *Id.* ¶ 17. Thus, Washington and United States jurors have a substantial interest in the enforcement of these rights.

---

[7] By contrast, in *Creative Tech.*, on which Defendants rely, the Court found no similar targeting of the United States. *Creative Tech.*, 61 F.3d at 704.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS ON GROUNDS OF FORUM NON CONVENIENS - 25
Case No. 2:23-cv-00576-TL

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

1   The cases on which Defendants rely—*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 502 (1947), in

2   which a Virginia resident brought a suit in New York over a warehouse fire in Virginia—and *Van*

3   *Schijndel v. Boeing Co.*, 434 F.Supp.2d 766, 768 (C.D. Cal. 2006), in which Dutch citizens sued

4   in California over a Singapore Airlines crash in Taiwan—have no bearing on the issues here.

5        Nor is Defendants' connection to Valve and, therefore, the United States and this district,

6   "incredibly attenuated" to this case, as Defendants' contend. Dkt.#29, at 16. Defendants targeted

7   the United States for mass-scale infringement and misappropriation, and there was nothing

8   fortuitous about Defendants reaching out to a United States service provider to facilitate this

9   infringement. *See Lang Van*, 40 F.4th at 1037. While Defendants ask the Court to treat this contact

10  as "largely irrelevant," Congress disagreed with that assessment by making the location of an

11  online service provider the presumptive jurisdiction to litigate a claim against a foreign defendant

12  who sends a DMCA counter-notification. 17 U.S.C. § 512(g)(3)(D).

13       Furthermore, Defendants' reliance on the need to avoid duplication with Korean

14  proceedings is unavailing. *Forum non conveniens* "do[es] not turn on the existence of any pending

15  parallel litigation." *Weiner v. Shearson, Hammill & Co.*, 521 F.2d 817, 820 (9th Cir. 1975). And,

16  where, as here, the plaintiff "alleges specific facts concerning events [of infringement] that

17  occurred on U.S. soil," that factor favors denial of the motion. *Cabell v. Zorro Prods. Inc.*, No.

18  5:15-CV-00771-EJD, 2017 WL 2335597, at *6 (N.D. Cal. May 30, 2017).

19       Moreover, granting Defendants' motion does not solve the problem of duplication. If this

20  Court construes the forum selection clauses to require Nexon to litigate its United States claims in

21  Seoul Central District Court, the Court's decision would result in Nexon filing litigation in Seoul

22  that will proceed in parallel with litigation in Suwon District Court in which the parties are

23

24

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS ON GROUNDS OF FORUM
NON CONVENIENS - 26
Case No. 2:23-cv-00576-TL

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

currently litigating their Korean law claims.[8] It is absurd to divide the litigation of Korean and United States claims between Suwon and Seoul courts when a United States district court has jurisdiction over all the parties necessary to adjudicate Nexon's claims that Defendants violated United States intellectual property laws through their conduct targeting the United States.

Moreover, while this Court has a policy of bringing cases to trial in approximately one year, Dkt.#37 ¶ 13, litigation in Seoul Central District typically takes one to two years. M.Park Decl. ¶ 46. Thus, the court congestion factor does not weigh in favor of dismissal.

Because Defendants engaged in a purposeful campaign of infringement and misappropriation targeted to the United States, the public interest strongly favors litigation in the United States and the Western District of Washington, the venue designated by Congress, and consented to by Ironmace, to resolve this dispute.

## IV.  CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion.

---

[8] Even if the Court granted the motion, Defendants' request for dismissal *with prejudice* must be denied to permit Nexon to pursue its claims in Korea. *de Borja v. Razon*, No. 3:18-CV-01131-YY, 2019 WL 4724317, at *12 (D. Or. Aug. 16, 2019) (requiring dismissal without prejudice).

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS ON GROUNDS OF FORUM
NON CONVENIENS - 27
Case No. 2:23-cv-00576-TL

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

1    DATED this 10th day of July, 2023.

2       *I certify that this memorandum contains 8,379 words, in compliance with the Local Civil*

3    *Rules.*

4                                              STOKES LAWRENCE. P.S.

5                                              By:  */s/ Shannon M. Jost*
                                                    Shannon M. Jost (WSBA #32511)
6                                                   Shannon.Jost@stokeslaw.com

7                                              By:  */s/ Joshua D. Harms*
                                                    Joshua D. Harms (WSBA #55679)
                                                    Joshua.Harms@stokeslaw.com
8                                                   1420 Fifth Avenue, Suite 3000
                                                    Seattle, Washington 98101-2393
9                                                   Phone: +1 (206) 626-6000
                                                    Fax:    +1 (206) 464-1496
10

11                                             *and*

12                                             ARNOLD & PORTER KAYE SCHOLER LLP

13                                             By:  */s/ James S. Blackburn*
                                                    James S. Blackburn (*pro hac vice*)
14                                                  James.Blackburn@arnoldporter.com

15                                             By:  */s/ Oscar Ramallo*
                                                    Oscar Ramallo (*pro hac vice*)
                                                    Oscar.Ramallo@arnoldporter.com
16                                                  777 South Figueroa Street, 44th Floor
                                                    Los Angeles, California 90017
17                                                  Phone: +1 (213) 243-4000
                                                    Fax:    +1 (213) 443-4199
18
                                               By:  */s/ James K, Lee*
19                                                  James K. Lee (*pro hac vice*)
                                                    James.Lee@arnoldporter.com
20
                                               By:  */s/ So Min Lee*
21                                                  So Min Lee (*pro hac vice*)
                                                    Somin.lee@arnoldporter.com
22                                                  20F, Concordian
                                                    76 Saemunan-ro, Jongno-gu
23                                                  Seoul, Korea (03185)
                                                    Phone: +82 2 6744-2000
24                                                  Fax:    +82 2 6744-2099

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS ON GROUNDS OF FORUM
NON CONVENIENS - 28
Case No. 2:23-cv-00576-TL

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

By: _/s/ John R. Sabacinski_

John R. Sabacinski (*pro hac vice*)
John.Sabacinski@arnoldporter.com
70 West Madison Street
Suite 4200
Chicago, Illinois 60602
Phone: +1 (312) 583-2300
Fax:    +1 (312) 583-2360

Counsel for Plaintiff NEXON Korea Corporation

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS ON GROUNDS OF FORUM
NON CONVENIENS - 29
Case No. 2:23-cv-00576-TL

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000