# Exhibit H



**Aaron J. Moss**

D:  310.785.6814
F:  310.201.2314
AMoss@ggfirm.com

April 20, 2023

**Via Email and FedEx**

Valve Corporation
10400 NE 4th Street, Fl. 14
Bellevue, WA 98004
dmca@valvesoftware.com

Re:   DMCA Counter Notification from IRONMACE /
*Dark and Darker* (Valve App 2016590)

To Whom It May Concern:

This firm represents IRONMACE Co., Ltd. ("Ironmace").  We are writing to respond to the takedown notice ("Takedown Notice") submitted by NEXON Korea Corporation ("Nexon") under the Digital Millennium Copyright Act (the "DMCA"), in which Nexon requested that Valve Corporation ("Valve") remove Ironmace's video game *Dark and Darker* from Valve's Steam platform, located at https://store.steampowered.com/app/2016590/Dark_and_Darker/.  Valve subsequently removed *Dark and Darker* from Steam pursuant to Nexon's Takedown Notice.

The Takedown Notice is based on claims that are entirely without merit and contains knowing and material misrepresentations that *Dark and Darker* infringed Nexon's copyright interests in violation of 17 U.S.C. § 512(f).  Ironmace submits this counter notification pursuant to 17 U.S.C. § 512(g)(3) and requests that Valve restore access to *Dark and Darker* on Steam.

Nexon's claims are nothing more than anti-competitive bully tactics designed to put a small indie game studio out of business.  Ironmace has independently built—from the ground up—a PvPvE fantasy-themed extraction game.  Nexon says it had the idea to do that sort of game first, and so now no one else can.  But Ironmace has done nothing unlawful, and Nexon has no legal basis to prevent the gaming public from accessing *Dark and Darker* on Steam or anywhere else that it may be distributed.

*Dark and Darker* is a new entry in the field of first-person extraction games.  This genre is a twist on traditional battle royale games, with a focus on loot-driven competition among players who must fight both each other and non-playable enemies in order to reach an extraction point and escape with their rewards.  Other games of this genre include *Escape from Tarkov* and *Hunt: Showdown*, among others.  *Dark and Darker* takes this general style of gameplay and puts it in a dark, gritty fantasy setting.  The game has all the familiar trappings associated with the fantasy genre—attributes perhaps most popularized by *Dungeons & Dragons*, but that are now

Valve Corporation
April 20, 2023
Page 2

ubiquitous in fantasy games. The gameplay is therefore somewhat similar in style to *Escape from Tarkov* or battle royales like *PUBG:Battlegrounds*, but with characters, settings and atmospheric elements that players of medieval fantasy games, such as the *Elder Scrolls* franchise, might find familiar.

*Dark and Darker* was released for a public playtest through Steam in August 2022 and was met with positive feedback and enthusiasm from the gaming community. But Nexon's crusade against the developers of *Dark and Darker* has largely kept the game out of the hands of gamers worldwide. Ironmace was able to keep its promise to launch its most recent playtest on April 14, 2023 but was forced to distribute the game directly to consumers through downloadable torrent files as a result of Nexon's meritless takedown notices.

We now write to set the record straight, dispel any appearance of impropriety engendered by Nexon's rhetoric, and to encourage Valve to restore *Dark and Darker* to the Steam platform so that Ironmace may continue to serve its fans.

Nexon's claims relate to a game that Nexon never made and which does not exist. This game was allegedly under development at Nexon before it was abandoned by the company. While under development, it had the working title "P3 Project." Nexon describes the would-be game as a first-person shooter role-playing game (an FPS-RPG). Nexon claims to have created "unique concepts, genre, plot, story line, characters, and plans for the game"—almost none of which is subject to copyright protection. While the actual *expression* of plot, story line, and characters certainly may be protectable, copyright doesn't protect concepts, genres, or "plans." Nexon's loose treatment of what is and is not copyrightable is a running theme throughout its Takedown Notice. Nexon also claims that it created "proprietary source codes, art resources, and build files."

Nexon's allegations of copying are highly misleading and are almost an afterthought in Nexon's Takedown Notice. Instead, the vast majority of Nexon's notice is directed at a non-issue from a copyright perspective; namely, Nexon's allegations that a former employee (Ju-Hyun Choi) misappropriated trade secrets from Nexon. Notably, Nexon has been pursuing claims against Mr. Choi in civil and criminal court in South Korea for almost two years. After years of litigation and multiple police raids to look for the supposedly "misappropriated" material, Nexon has found *no evidence that any trade secrets were in fact misappropriated*. That's because Mr. Choi *didn't* take any of Nexon's trade secrets.[1] But this is a dispute between

---

[1] In its Takedown Notice, Nexon suggests it terminated Mr. Choi's employment as a result of discovering that he had "acquired and transferred, without authorization, more than 11,000 key build files of the *P3 Project* from Nexon's server to his personal server in 2020 and 2021." Mr. Choi's use of personal servers was to meet the extreme work demands placed on his team by Nexon and used *solely* for the development of the *P3 Project*. When Mr. Choi left Nexon's employ (after being fired for pretextual reasons), Mr. Choi erased all Nexon data on his personal devices, as employees are obligated to do so upon their exit from a company, and even offered to hand over his wiped devices to Nexon, which Nexon refused to accept. Nexon instead instigated

Valve Corporation
April 20, 2023
Page 3

Mr. Choi and his former employer, which will be resolved in Korea. None of it impacts Ironmace at all, as Ironmace developed *Dark and Darker* entirely on its own, without using *any* of Nexon's "proprietary source codes, art resources, [or] build files."

While it is beside the point from the perspective of a copyright claim, we are also obligated to note that it is typically *not* unlawful for a former employee who leaves one company to later go to work for a competitor. To be sure, stealing documents or assets from an employer is wrong (and that never happened here), but corporations can't legally stop employees from using their own know-how and skills to do similar work somewhere else. Contrary to Nexon's assertions, that is all that happened here.

It is apparent that Nexon is attempting use its trade secrets allegations to make an end-run around the Copyright Act's substantial similarity requirements. But copyright law does not recognize a "fruit of the poisonous tree" theory. "That defendants may have viewed or studied plaintiff's program is irrelevant if defendants' resulting work is not substantially similar to plaintiff's." *Liu v. Price Waterhouse LLP*, 2000 WL 1644585, *2 (N.D. Ill. Oct. 30, 2000). *See also DSC Communications Corp. v. DGI Tech., Inc.*, 898 F.Supp. 1183, 1189 n.3 (N.D.Tex. 1995) ("[T]he test of copyright infringement has two requirements, access and substantial similarity . . . while DSC may succeed in proving access because DGI is not using the preferred 'clean room' method of development, DSC must still prove substantial similarity between its firmware and the DGI firmware."). It doesn't matter if Ironmace's developers were familiar with the *P3 Project* by virtue of having worked at Nexon—what matters is that the creative, original expression of *Dark and Darker* is notably and substantially different than anything Nexon authored.

Once we move past Nexon's allegations of trade secret misappropriation—which, again, will be disproved in litigation in Korea—it is apparent that Nexon's copyright claims have no legal merit.

---

a criminal and civil lawsuit within a month of his dismissal, forcing liens on his home, car, and bank accounts. Despite two years of investigation and litigation against Mr. Choi in Korea, there has been no evidence whatsoever that Mr. Choi ever transmitted *any* P3 "source codes, art resources, [or] build files" to Ironmace. He did not. Ironmace did not have access to, nor did it use, any Nexon-owned materials to develop *Dark and Darker*. Nexon's assertion that "[i]t is impossible for Ironmace to have developed *Dark and Darker* in such a short timeframe without using Nexon's trade secrets and confidential information" is similarly false. The reason Ironmace was able to create a playable Alpha version of *Dark and Darker* relatively quickly was because it started with a much larger, well-rounded development team with many more programmers throughout a development period that was free of the bureaucratic, risk-adverse, and unsupportive environment that characterized Nexon, *not* because Ironmace used any Nexon property.

Valve Corporation
April 20, 2023
Page 4

The only actual copyrights that Nexon points to as forming the basis for its claims are the following:

1. Some unidentified source code (Registration No. TXu 2-355-124).

2. Unspecified "audiovisual game material" (Registration Nos. PAu 4-169-661 and PAu 4-166-909).

3. 2D character art for six classes of characters: Cleric, Ranger, Barbarian, Tanker, Thief, and Wizard (Registration Nos. VAu 1-491-714, 1-491-715, 1-491-716, 1-491-717, 1-491-719, 1-491-720).

As to the source code, Nexon's Takedown Notice does not allege that any specific source code or other Nexon property was accessed by Ironmace or was actually incorporated into *Dark and Darker*. Instead, Nexon claims that it "conducted a comparative analysis of *Dark and Darker* and the *P3 Game*," which "revealed that the resource file names of 2,338 files were identical between the two games." But those aren't similar *files*, those are allegedly similar *file names*.

Nearly all of the 2,338 resource files identified by Nexon consist of third-party assets and plug-ins, which Ironmace either purchased from the Unreal Engine asset store or which were automatically generated by Unreal Engine during the build process. Nexon has no ownership interest in these assets—any number of games in the marketplace purchase and use these assets, with these identical file names, every single day. The remaining 82 similar file names (out of about 60,000 total game files) consist of descriptive labels that logically describe the content of those files and are formatted in a way designed for compatibility with the Unreal Engine assets. Simple file names like "Fireball.uexp" and "Torch.uexp" are not subject to copyright protection. More importantly, the fact that Nexon conducted a comparison of *Dark and Darker* and *P3* and found similarities only in unprotectable file *names*, as opposed to copyrightable source code owned by Nexon, speaks volumes. Nexon isn't grasping at straws; it's grasping at the naming conventions for straws.

From this flimsy start of its "copyright" comparison, Nexon then moves on to its claim that the "character designs and other setting and structural designs" are "suspiciously similar"[2] to those of the *P3 Game*. Nexon argues that its proto-game and *Dark and Darker* share character classes. Of course, these are ubiquitous fantasy character classes, popularized by *Dungeons & Dragons* and scores of other thematically similar games. These famous and popular classes (the

---

[2] If you typed "suspiciously similar" into a search engine, undoubtedly you would get the message: "Did you mean *substantially* similar?" Nexon of course knows that "seems suspicious" is not a valid basis for sending a DMCA takedown notice. *See* 17 U.S.C. § 512(c)(3)(A)(v) (requiring a "good faith basis" for claiming infringement).

Valve Corporation
April 20, 2023
Page 5

Fighter, the Barbarian, the Rogue, the Ranger, the Wizard, and the Cleric)[3] are obvious *scènes à faire* in the fantasy genre—they are characters "naturally associated with the treatment of a given idea, . . . and therefore [are] not protected by copyright." *Gray v. Hudson*, 28 F.4th 87, 98 (9th Cir. 2022) ("commonplace elements that are firmly rooted in the genre's tradition" are not entitled to copyright protection). Ironmace has already added the Bard class in its most recent playtest and has plans to add a Warlock class—two more of the traditional *Dungeons & Dragons* classes.

The same holds true for settings or locations that are "commonly seen in various genres, including . . . fantasy genres." *Rosenfeld v. Twentieth Century Fox Film*, No. CV 07-7040AHMFFMX, 2009 WL 212958, at *3 (C.D. Cal. Jan. 28, 2009). Similarities are to be expected when two different companies make a fantasy, dungeon crawler—including, naturally, the presence of dungeons. *See* Takedown Notice at pp. 4–5 (arguing that both games take place in a "brick-walled dungeon setting"). Such stock settings are not entitled to copyright protection and cannot give rise to a claim of infringement.

But beyond just being wrong on the legal doctrine, Nexon grossly misrepresents the facts here. The "similarities" that it cites in Exhibit E to the takedown notice do not tell the real story. What Nexon primarily compares is the *concept art* for the character classes in the *P3 Game* and in *Dark and Darker*. But this concept art is *not* what actually appears in *Dark and Darker*. This was essentially placeholder art present in the early access "Alpha" playtest, which has not been present in the most recent iterations of the game. The real characters, as played, look different. In any event, whatever similarities there were in the placeholder concept art were by virtue of the fact that there are certain genre conventions in how these classes are depicted—a hooded rogue or a wizard with a staff is not copyrightable.

Importantly, what appears in *Dark and Darker* consists primarily of third-party assets legally acquired from the Unreal Engine asset store. To the extent that Nexon used the same or similar assets, that does not give rise to a copyright claim. Nexon may argue that the decisions about *which* Unreal Engine assets to use provides the basis for some sort of "selection and arrangement" copyright claim—in which the way one chooses to select and arrange unprotectable source material creates a new, protectable whole. But this claim completely falls apart for a few reasons. First, a medieval-style fantasy dungeon crawler has a limited universe of plausible assets from which one may reasonably choose. There's a reason nearly every game that has ever explored this genre features reanimated skeletons, trolls, spiders, and the other usual dungeon denizens. There is nothing remarkable about game designers choosing some of the same *scènes à faire* assets in constructing such a game. Second, a game of the magnitude of *Dark and Darker* uses *thousands* of third-party assets in the game. Even if Nexon can cherry-

---

[3] Nexon does not actually have a "Fighter" and a "Rogue"—it has a "Tanker" and a "Thief," which are not traditional D&D classes. They may occupy similar niches, but it's impossible to know, since Nexon does not provide (nor does Ironmace possess) any actual *P3* gameplay to look at for comparison.

pick a dozen identical assets between them, that is only a drop in the bucket in terms of actual game design.

The reality is that for every comparison Nexon can come up with, one can find half a dozen different games with the exact same feature—and in some cases, the very same asset. For instance, Nexon highlights what it calls "torch-related game features." Nexon does not have any proprietary copyright interest in dark, atmospheric game settings in which characters illuminate a dungeon with a torch. This sort of gameplay is popular in, for example, the *Elder Scrolls* or *Mortal Online* games. Indeed, players of a certain age will have strong memories of roaming through dimly-lit dungeons with torch-related gameplay as Link in *The Legend of Zelda: Ocarina of Time*. Simply stated, these isolated commonalities do not give rise to an infringement claim.

At best, Nexon has taken a handful of unprotectable elements and cobbled them together to form the illusion of a copyright infringement claim. But in reality, this case comes down to the fact that Nexon does not want any of its former employees to work at an indie studio developing a fantasy-themed extraction game. And Nexon will bend copyright law well past its breaking point in order to keep *Dark and Darker* out of the public's hands.

To that end, Nexon makes unfounded threats against Valve, claiming that Valve may be liable *not only* for direct and indirect copyright infringement, but even for trade secret misappropriation, if it puts *Dark and Darker* back up on Steam. These are nothing but baseless scare tactics.

Given the absence of any colorable copyright infringement claim, Nexon's Takedown Notice contains knowing and material misrepresentations that Dark and Darker infringed Nexon's copyright interests in violation of 17 U.S.C. § 512(f). We respectfully implore Valve not to give in to Nexon's threats and to instead respect the creative ingenuity of a young gaming studio that has put out a product that is already loved by hundreds of thousands of fans eager to see the next chapter in the *Dark and Darker* saga.

On behalf of Ironmace, I declare, under penalty of perjury, that I have a good faith belief that the content identified above was removed or disabled as a result of mistaken information, misidentification of the material in question, and/or a deliberate misreading of the law. Ironmace consents to the jurisdiction of the Western District of Washington and will accept service of

Valve Corporation
April 20, 2023
Page 7

process from the person who submitted the takedown notification under 17 U.S.C. § 512(C)(1), or their agent. Ironmace's contact information is as follows:

> 401, 16, Pangyoyeok-ro 192beon-gil,
> Bundang-gu, Seongnam-si, Gyeonggi-do,
> 13524 Republic of Korea
> +82-31-707-1190

Sincerely,

Aaron J. Moss

cc: Josh Geller, Esq.