HONORABLE TANA LIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NEXON KOREA CORPORATION, a Korean Corporation,<br><br>    Plaintiff,<br><br> v.<br><br>IRONMACE CO., LTD., a Korean Corporation; JU-HYUN CHOI, individually; and TERENCE SEUNGHA PARK, individually,<br><br>    Defendants. | Case No.: 2:23-cv-00576-TL<br><br>DECLARATION OF KWANG HYUN SUK IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR *FORUM NON CONVENIENS*<br><br>NOTE ON MOTION CALENDAR: JULY 14, 2023<br><br>ORAL ARGUMENT REQUESTED |

I, Kwang Hyun Suk, declare and state as follows:

1. I have been requested by counsel for Nexon Korea Corporation ("Plaintiff" or "Nexon") to submit this declaration in support of Nexon's opposition to Defendants' IRONMACE Co., Ltd. ("Ironmace"), Ju-Hyun Choi ("Choi"), and Terence Seungha Park ("Park") (collectively "Defendants") motion to dismiss on grounds of *forum non conveniens* (the "Motion") in connection with a pending lawsuit in the U.S. District Court for the Western District of Washington (the "Action"). I am over 18 years of age. The statements made below are true to the best of my knowledge and belief, and if called upon, I could and would testify to those facts.

## Background

2. I have been teaching classes on international trade law, private international law, and international civil procedure for over two decades and have researched and published works on these subjects. A true and correct copy of my curriculum vitae is attached hereto as **Exhibit A**.

3. From 1984 to 1999, I worked at Kim & Chang, a Korean law firm.

4. From 1999 to September 2007, I taught international trade law, private international law, and international civil procedure at Hanyang University Faculty of Law in Seoul, Korea. From October 2007 to February 2022, I taught the same subjects as above at Seoul National University Faculty of Law and Law School. I retired from Seoul National University in late February 2022, and am currently a visiting professor at Inha University Law School in Incheon, Korea.

5. I am fluent in Korean and proficient in English. I have published more than a dozen articles or book chapters in English on various topics on Korean and international law.

6. I also served as a reviewer for the translation of the Hague Principles on Choice of Law in International Commercial Contracts from English to Korean. The Korean translation was published by the Korean Judicial Research and Training Institute.

7. For the purposes of this declaration, I understand Nexon's allegations can be summarized as follows:

(a) Starting in July 2020, Nexon launched a new video game development project called the "P3 Project" (the video game shall be referred hereinafter to as the "P3 Game"). Choi served as the project director of the P3 Project and Park served as the head of P3 Game Planning Division.

(b) Between April 2021 and June 2021, Choi transmitted P3-related data to his private

servers without Nexon's authorization, in violation of Nexon's security policy. In addition, Choi and Park persuaded the P3 team members to leave Nexon to create a game similar to the P3 Game.

(c) After discovering Choi's unauthorized transfer of P3 data and solicitation of P3 Project team members to leave Nexon, Nexon conducted an internal audit of Choi. During the audit, Choi refused to turn over to Nexon the materials stored on his private servers to which he downloaded P3 Project files without company authorization and instead contended that he had deleted all P3 materials from his servers. As a result, Nexon could not inspect the servers to assess whether proprietary information was disclosed to third parties and determine next steps to prevent further security issues. After a disciplinary proceeding by Nexon's Disciplinary Action Committee, Nexon dismissed Choi in July 2021.

(d) Following Choi's departure in July 2021, Park left Nexon in August 2021. Therefore, no contractual relationship exists between Nexon and Choi since July 2021 and between Nexon and Park since August 2021.

(e) Nexon filed a criminal complaint against Choi in or around August 2021. Around January 2022, the police searched Choi's home and Ironmace's office and conducted an investigation.

(f) On October 20, 2021, Park and Choi founded Ironmace. Park serves as the representative director (executive director) and Choi is confirmed to be one of Ironmace's major shareholders.

(g) In or around August 2022, Ironmace unveiled and tested the game titled, "Dark and Darker" through Steam, a game platform operated by Valve Corporation in the United

States. Ironmace has conducted five playtests of Dark and Darker so far, and the game is expected to be released soon via Early Access. Ironmace developed the game interface of Dark and Darker in English, created the webpage of Ironmace in English, and also engaged in Dark and Darker-related marketing activities in the United States, including English-based media interviews and collaboration with a U.S. coffee company Madrinas Coffee for the production of licensed products.

(h) When Nexon learned of the Dark and Darker playtests, it analyzed Dark and Darker and found that Defendants had infringed Nexon's copyrights and misappropriated trade secrets related to the P3 Project. On or around February 10, 2023, Nexon sent a certified letter to Ironmace demanding that it stop further infringement of Nexon's trade secrets and copyrights. On March 22, 2023, pursuant to the U.S. Digital Millennium Copyright Act ("DMCA"), Nexon sent a takedown request to Valve, which operates Steam, for the takedown of Dark and Darker from Steam. Valve removed Dark and Darker from Steam.

(i) The development of the P3 Project was temporarily suspended due to the disciplinary dismissal of Choi and the resignation of Park and other P3 team members. Before development was suspended, the P3 Project was carried out to an interim stage of development that passed prototyping and preparation stages of development.

(j) On April 10, 2023, Ironmace filed a petition for an injunction in Suwon District Court against Nexon for allegedly interfering with Ironmace's business by making allegations of copyright infringement and trade secret misappropriation. Meanwhile, Nexon filed a petition in the same court seeking a preliminary injunction enjoining Ironmace, Choi, and Park from further copyright infringement and trade secret misappropriation. Suwon

District Court has held a joint hearing on the parties' cross-petitions on three separate occasions thus far. Defendants argued during the preliminary injunction hearing that they do not possess any materials related to the P3 project and claim that Dark and Darker is a game independently developed by them.

(k) On May 4, 2023, a user named "sdf" posted on Discord (a Voice over Internet Protocol and messaging social platform) the geographical playcount data of the fifth playtest of Dark and Darker conducted by Ironmace from April 14 to April 19, 2023. According to the post, the most number of plays (comprising 39.23%) took place in the United States.[1]

8. The statements in this declaration are based on Korean laws, court precedents, and academic treatises.

9. I have reviewed the following documents:

(a) Plaintiff's complaint in this Action;

(b) Ironmace's application for preliminary injunction against Nexon for interference with business, filed with the Suwon District Court of Korea;

(c) Nexon's application for preliminary injunction against Defendants for trade secret misappropriation and copyright infringement filed with Suwon District Court of Korea;

(d) Annual Salary Agreement between Nexon and Choi, and Nexon and Park;

(e) Nexon's Confirmation of Rights to Business-Related Intellectual Property signed by Choi and Park;

(f) Reports of the preliminary injunction hearing in Suwon District Court of Korea prepared

---

[1] sdf, DISCORD (11:34 PM, May 4, 2023), https://discord.com/channels/988365908009447485/989064933696237568 [https://perma.cc/9FTH-AYNJ].

by Kim & Chang; and

(g) Ironmace's public statements from March 27, 2023, in response to the removal of Dark and Darker from Steam following Nexon's DMCA takedown request.

### I. Forum Selection Clause

**A. Whether an Agreement on International Jurisdiction Exists Between the Plaintiff and the Defendants**

*Defendants' Position*

10. In the Motion, Defendants argue that although both U.S. courts and Korean courts have jurisdiction to hear the parties' dispute, Korea is the most convenient forum. Furthermore, they argue that based on forum selection provisions in Nexon's employment-related agreements with Choi and Park, Seoul Central District Court in Korea is the proper and exclusive forum to resolve the parties' disputes pertaining to copyright infringement and trade secrets misappropriation.

11. To support their argument above, Defendants refer to Article 5, Paragraph 2 of the "Confirmation of Rights to Business-Related Intellectual Property" (the "Confirmation of Rights") and Article 7, Paragraph 4 of the "Annual Salary Agreement." I would translate the relevant excerpts into English as follows:

(a) Confirmation of Rights: "In the event of a dispute **with respect to this agreement** that cannot be settled through consultation between the parties, the Seoul Central District Court shall have exclusive jurisdiction as the court of first instance."

(b) Annual Salary Agreement: "If there is any disagreement between the parties **with respect to this agreement**, the parties shall, in principle, settle the dispute by mutual agreement; but if the parties fail to reach an amicable agreement, the competent court shall be the Seoul Central District Court."

For the purposes of this declaration, I will refer to the two forum selection clauses as "Provisions."

DECLARATION OF KWANG HYUN SUK - 6
Case No. 2:23-cv-00576-TL

*Translation of the Provisions*

12. The original Korean words I have translated as "with respect to this agreement" are "본 계약과 관련하여," among other possible English expressions. I understand that Defendants have translated this term as "related to." Relying on this translation, Defendants look to U.S. case law on the meaning of the English words "related to" in order to argue that "본 계약과 관련하여" encompasses a dispute "so long as the dispute references the agreement or has some 'logical or causal' connection to the agreement." Dkt.#29 at 11. Defendants seem to contrast the term "related to" to the interpretation of U.S. courts of the English words "arising out of," which Defendants contend refers to disputes and controversies that require contract interpretation. *Id.* However, Korean courts and ordinary Korean speakers would agree that "본 계약과 관련하여" can be translated into many different expressions such as "regarding," "with respect to," "in connection with," or "in relation to this agreement." Korean courts would not consider the U.S. judicial interpretations of the English words "related to" as shedding light on the meaning of "본 계약과 관련하여."

*International Jurisdiction and Territorial Jurisdiction*

13. The Provisions are intended to govern in which court within Korea a dispute should be litigated, presuming the dispute is litigated in Korea in the first place. The Provisions, however, do not express an intent that a covered dispute must be litigated in Korea or that litigation in Korea is preferred over litigation outside of Korea. This result follows from a well-known distinction in Korean law between the concepts of "international jurisdiction" and "territorial jurisdiction."

14. "International jurisdiction" refers to which nation's courts as a whole have jurisdiction over a civil case. For example, whether a case belongs in a Korean court or a U.S. court is a matter of international jurisdiction.

15. "Territorial jurisdiction" refers to which courts of first instance within a nation have jurisdiction over a dispute. The Korean legal system would consider a question of whether, for example, the Suwon District Court or the Seoul Central District Court has jurisdiction over a case in Korea to be a matter of territorial jurisdiction.

16. As discussed below, the Provisions should be interpreted as reflecting an agreement on territorial jurisdiction, rather than international jurisdiction.

*Whether the Provisions in Nexon's Agreements Constitute an Agreement on International Jurisdiction*

17. Article 29(1) of the Civil Procedure Act of the Republic of Korea ("KCPA") stipulates that "the parties may decide by agreement the competent court of the first instance." This stipulates the territorial jurisdiction of the first instance. Article 8(1) of the amended Act on Private International Law of Korea ("KAPIL"), which took effect on July 5, 2022, stipulates that "the parties may agree to the international jurisdiction of a lawsuit arising from a certain legal relationship." As explained above, there is a distinction between territorial jurisdiction (which court within a particular country will hear the dispute) and international jurisdiction (which country's court will hear the dispute) due to their legal grounds and different legal effect.

18. The Korean Supreme Court Decision 2006Da68209, rendered on March 13, 2008, is a notable decision that addressed the issue of interpreting jurisdictional agreements. Although the 2008 decision is based on the pre-amendment KAPIL, the case remains valid even under the amended KAPIL. Supreme Court Decision 2006Da68209 states as follows:

> If the parties have agreed to designate any one of several courts of competent jurisdiction among the courts with statutory jurisdiction, such agreement may be interpreted as an agreement to determine the court of exclusive jurisdiction within the country where a trial may take place, in the event there is a legal dispute in the country where the agreement was made. However, it cannot be deemed that the parties have completely excluded the jurisdiction in another country or have reached an agreement to determine the court of exclusive jurisdiction in another

country, unless there are special circumstances. Therefore, in the event a legal relationship with a foreign component such as transfer of claims, arises, the jurisdiction of another country can be established, and in such cases, the effectiveness of the aforementioned agreement shall not be applicable, and the competent court shall be determined in accordance with the laws of that country."[2]

19. As seen in the above Supreme Court decision, agreements on jurisdiction constitute agreements on territorial jurisdiction, unless there are special circumstances. As such, the agreements cannot be deemed to completely exclude the jurisdiction of any other country or to have reached an agreement to determine the exclusive jurisdiction of any other country. The crux of the Supreme Court's ruling is that even if the parties have agreed to an exclusive jurisdiction without considering litigation in a foreign country, it should be interpreted that the intent of the parties was to consent to territorial jurisdiction and the agreements do not bar bringing an action in a different country; therefore, in the event a legal relationship with a foreign component arises, the jurisdiction of another country can be established, unless there are specific circumstances indicating otherwise."[3]

20. The "Confirmation of Rights" states that the legal rights to and interests of work products and inventions by Choi and Park, made during the course of their employment at Nexon, belong to Nexon. The "Confirmation of Rights" also stipulates that for Choi's and Park's work products, inventions and work-made-for-hire works ownership rights and Nexon's compensation shall be determined in accordance with the Korean Patent Act, the Invention Promotion Act, and the Copyright Act. Given these circumstances, the provision on forum selection in Article 5(2) of

---

[2] The Supreme Court stated that "the contractual forum selection above was made in anticipation of a trial taking place in Japan, with the purpose of limiting jurisdiction to the court with jurisdiction over the creditor's address in Japan. Thus, the above agreement does not apply to this case, in which the loan was transferred to a plaintiff domiciled in Korea, who in turn filed a lawsuit seeking the return of the loan in a Korean court." This shows that the Supreme Court views Korea's litigation laws to determine which court has jurisdiction.

[3] Editorial Representative Il-Young Min, Commentary on the Civil Procedure Act 1, Korean Society of Judicial Administration (2018), p. 217 (part written by Jin-Gu Hwang).

the Confirmation of Rights should be interpreted as an agreement on territorial jurisdiction to designate the "Seoul Central District Court" located in Korea in the event a trial takes place in Korea. Moreover, there are no special circumstances to deem that the forum selection clause completely excludes the courts of other countries from hearing the case, nor have Defendants argued or presented evidence that such circumstances exist.

21. The "Annual Salary Agreement" sets out wages and determines the scope of Choi's and Park's employment obligations to Nexon. Based on an explanation from Nexon, it is my understanding that Choi has provided employment services only in Korea since joining Nexon. Article 5(3) of the "Annual Salary Agreement" provides that "if an employee infringes upon a third party or the Company's trade secrets, he/she shall bear any and all civil and/or criminal liabilities against the Company or the third party pursuant to the Unfair Competition Prevention and Trade Secret Protection Act and other laws and regulations." As such, the applicable law is the Unfair Competition Prevention Act of Korea. Given these circumstances, similar to the provision in Confirmation of Rights, the provision on forum selection in Article 7(4) of the Annual Salary Agreement should also be interpreted as an agreement on territorial jurisdiction to designate the "Seoul Central District Court" as the competent court within Korea in the event a trial takes place in Korea. Moreover, there are no special circumstances to deem that the forum selection clause completely excludes the courts of other countries from hearing the case, nor have Defendants argued or presented evidence that such circumstances exist.

22. Moreover, the fact that the Provisions refer to the "Seoul Central District Court" without any mention of a "Korean court" further supports the reading of the forum selection clause as an agreement on territorial jurisdiction only.

23. The Provisions do not indicate any agreement between the parties that litigation cannot

be brought in a court of a foreign country (e.g., a U.S. court.) Therefore, a Korean court should not be considered to have exclusive international jurisdiction over litigation between the parties based on the Provisions.

24. Hence, when Nexon entered into the "Annual Salary Agreement" and the "Confirmation of Rights" with Choi and Park, the parties agreed only on territorial jurisdiction designating the Seoul Central District in the event a trial takes place in Korea.

25. Since the parties entered into employment-related agreements, Choi and Park left Nexon and numerous events took place in the United States. For example:

(a) Defendants developed Dark and Darker to be released worldwide while targeting the United States as the main market;

(b) Defendants released playtest versions of Dark and Darker on Steam (a U.S. platform) operated by Valve Corporation which is also a U.S. game developer and publisher; and

(c) Nexon requested Valve to take down Dark and Darker pursuant to the DMCA for violating copyrights of P3 Game and initiated a lawsuit for misappropriation of Nexon's trade secrets under the Defend Trade Secrets Act and copyright infringement under the U.S. Copyright Act.

Due to the legal relationship with such foreign components, a U.S. court can have (international) jurisdiction of this Action because the effectiveness of the agreement between the parties on the territorial jurisdiction should not be applicable, in accordance with the Korean Supreme Court's decision.

26. As for Ironmace, because Ironmace has not entered into any agreements with Nexon, the Provisions do not apply to Ironmace; in fact, Ironmace has no legal grounds under Korean law to argue that the Provisions in Choi's and Park's employment-related agreements are binding on

Ironmace.

### B. Even if the Forum Selection Provisions Constitute an Agreement on International Jurisdiction, Whether the Agreement Covers Claims Based on Post-Employment Conducts

27. The Provisions pertain to territorial jurisdiction within Korea, rather than international jurisdiction. However, even if these Provisions are interpreted to be referring to international jurisdiction, it is doubtful that the Provisions should be applied to claims on the tortious acts committed by Choi and Park after termination of their employment-related contracts with Nexon in July 2021 and August 2021, respectively.

28. The "Annual Salary Agreement" sets out wages and determines the scope of Choi's and Park's employment obligations in relation to his employment at Nexon, a Korean company. Therefore, the purpose of Article 7, Paragraph 4 of the "Annual Salary Agreement" is to set forth the jurisdiction over claims on tortious acts committed during the employment relationship (as well as breach of contract claims). In this case, Choi committed a tortious act by downloading Nexon's trade secrets without permission during his employment at Nexon and Choi and Park misappropriated Nexon's trade secrets after their employment with Nexon was terminated. Given the circumstances, it would be difficult to interpret the forum selection provision of the "Annual Salary Agreement" to apply to the tortious acts committed by Choi and Park after the termination of the employment agreement.

29. The "Confirmation of Rights" stipulates that the legal rights and interests in work products and inventions by Choi and Park made during the course of their employment at Nexon, belong to Nexon. The "Confirmation of Rights" takes effect in the event of a dispute regarding the ownership of the copyrighted works created by Choi and Park in the course of performing their

duties as Nexon employees. However, the forum selection provision of the "Confirmation of Rights" does not apply to this case as it is a dispute over whether the Dark and Darker game created by Ironmace, which Choi and Park founded after their respective dismissal and resignation from Nexon, infringe on Nexon's copyrights.

30. In sum, even if the Provisions were interpreted to include an agreement on international jurisdiction, which I do not find to be the case, it seems difficult to deem that the Provisions (the agreement on the jurisdiction) are to cover claims on Defendants' tortious acts that took place after the termination of Choi's and Park's employment.

## II. This Action Should be Heard in the United States

### A. Limitations in Accessing Evidence for Korean Civil Proceedings

*Documentary Evidence*

31. In Korean civil litigation, there is no discovery system like that of the United States. which allows for the collection of a broad range of evidence. In Korea, parties must collect evidence on their own. Although the KCPA provides a document production order system for collection of evidentiary materials, the party seeking production must not only specify which documents they are requesting, but also meet the burden of proof in showing the existence and possession of such documents. (*see* KCPA, Article 345). Moreover, the KCPA does not provide means to impose any substantial sanctions for refusing to comply with a document production order. In the event of non-compliance with the document production order, the court may find the document production requesting party's arguments regarding content of the requested documents as true (*see* KCPA, Article 349). While the Korean court may acknowledge that the requesting party's allegations are true, the court, in light of other evidence, can render a decision that differs from the requesting party's allegations set out to be supported by the requested evidence, according

to the Supreme Court Decision No. 2006Da9446, rendered on September 21, 2007. Furthermore, in most cases, it is difficult for the requesting party to argue about what is written in the document because the requesting party does not know what is written in it.

32. In addition, even if a document is deleted or damaged after the civil action is commenced in Korea, there is no available means for Korean courts to impose sanctions unlike those in the United States.

33. Furthermore, the party that holds evidentiary documents may refuse to submit such documents if the documents contain privileged information, reveal incriminating or embarrassing information, or are trade secrets (*see* KCPA, Article 344(1)). If the reason for refusing document production is deemed justifiable, the party holding the evidence would not be disadvantaged during litigation. Moreover, as some types of documents (e.g., documents for use only by the holder) are excluded from the scope of the document production order (*see* KCPA, Article 344(2)), many documents are ultimately excluded from the production order altogether.

34. Although the Korean legal system allows the court to order document production to a third party, if the third party refuses, the court can merely impose an administrative fine (*see* KCPA, Article 351).

*Deposition in Korean Legal System*

35. There is no deposition procedure equivalent to that of the United States in the Korean legal system, which makes it difficult to compel witnesses to testify in Korea. If a witness refuses to appear before the court and testify without justifiable reasons, a Korean court may impose an administrative fine or order imprisonment of administrative nature up to seven days (*see* KCPA, Article 311). However, the Korean legal system allows a witness to testify in writing with the court's permission instead of appearing before the court (*see* KCPA, Article 310). Further,

refusing to testify in writing does not result in penalties such as fines. Moreover, there is no obligation for the witness to swear an oath when testifying in writing, meaning that there would be no crime of perjury even if the testimony turns out to be false.[4]

### *Access to Evidence in Korea in Aid of U.S. Legal Proceedings*

36. I understand that Mr. Eung Jun Jeon from the declaration submitted by Defendants, asserts that Korea has issued an Article 23 reservation to the Hague Convention of 18 March 1970, which claims that "a Letter of Request [from the United States] for purposes of obtaining pre-trial discovery will not be honored" in Korea. Dkt.#31 at 29. Mr. Jeon cites no authority for his opinion, and it is incorrect. Korean courts will honor a request that is made for particular evidence.

37. The full text of Korea's Article 23 reservation[5] is as follows:

> In accordance with Article 23, the Government of the Republic of Korea declares that it will not execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents. The Government of the Republic of Korea further declares that it understands "Letters of Request issued for the purpose of obtaining pre-trial discovery of documents" for the purposes of the foregoing Declaration as including any Letter of Request which requires a person:
>
> a. to state what documents relevant to the proceedings to which the Letter of Request relates are, or have been, in his or her possession, custody or power; or
>
> b. to produce any documents other than particular documents specified in the Letter of Request as being documents appearing to the requested court to be, or to be likely to be, in his or her possession, custody or power.

38. A Korean court would not refuse to enforce mandated disclosure of particular documents that are being held by the Defendants in Korea, if Nexon requests the specified documents in Korea through the Western District Court of Washington in the United States. Further, witnesses can be compelled to testify under oath for the U.S. civil proceeding if a U.S.

---

[4] Editorial Representative Il-Young Min, Commentary on the Civil Procedure Act 5, Korean Society of Judicial Administration (2018), p. 252.

[5] https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=1057&disp=resdn

DECLARATION OF KWANG HYUN SUK - 15
Case No. 2:23-cv-00576-TL

court's request for statement relates to the "particular" documents.

39. In fact, I understand in *Sec. & Exch. Comm'n v. Ripple Labs Inc.*, 20-CV-10832 (AT) (SN), ECF#247 (S.D.N.Y. June 14, 2021), the court in the Southern District of New York requested that the central authority of Korea (e.g., the Office of Court Administration) compel the submission of certain documents held by Korean corporation BTC Korea.com Co., Ltd. in accordance with the Hague Evidence Convention, which the central authority enforced.[6]

40. Further, Korea does not have any laws similar to France's blocking statute that would prevent companies located in Korea from voluntarily submitting evidence to foreign courts. To my knowledge, I am aware that for lawsuits in the United States, depositions led by U.S. attorneys take place in Korea (in accordance with Rule 28(b)(1) of the Federal Rules of Civil Procedure), despite the fact that Korea made a reservation under Article 23 of the Hague Convention.

<u>*Access to Evidence Seized During Criminal Investigation in Korea*</u>

41. After Nexon filed a criminal complaint against Choi in August 2021, as part of the criminal investigation, the police searched Choi's home and Ironmace's office. However, under Korean criminal procedures, there is no way for Nexon to access or obtain the materials submitted to the investigative authorities or prosecutor by the defendant during the criminal investigation. Therefore, even though a criminal investigation of Choi is pending in Korea, the materials obtained during this investigation cannot be used in Nexon's civil action against Choi or any of the other Defendants while the investigation is ongoing.

**B. Jurisdiction of a U.S. Court**

42. Under KAPIL, a lawsuit on copyright infringement and a lawsuit on trade secret

---

[6] Judicial Policy Research Institute, *Study on the Resolution of International Judicial Conflict Due to Pre-trial Discovery* (2022), p. 85 et seq. (written by Hyo-Jung Kim).

infringement are also subject to the jurisdiction of the country where the alleged tortious acts happened (KAPIL Articles 39, 44). A U.S. court has international jurisdiction over this Action because Defendants' tortious conduct of misappropriating Nexon's trade secrets and infringing Nexon's copyrights in P3 Game primarily took place in the United States at which Defendants targeted the marketing and distribution of Dark and Darker.

43. Further, a U.S. court may have jurisdiction over the case even under the U.S. law based on the U.S. Copyright Act and the Defend Trade Secrets Act.

### III. Conclusion

44. The Provisions cited by Defendants Choi and Park as the basis for their forum non conveniens argument are not intended to exclude the jurisdiction of U.S. courts and establish the exclusive jurisdiction of the Seoul Central District Court in South Korea. Rather, the Provisions can be interpreted as an agreement regarding the venue, assuming that the lawsuit will be filed in South Korea and that the Seoul Central District Court would have jurisdiction. This interpretation is reasonable and aligns with the intent of the 2008 Supreme Court ruling. Furthermore, since Ironmace is not a party to the contract, these provisions would not have any effect on Ironmace under Korean law.

45. According to KAPIL, while Korean courts have jurisdiction over international disputes in this case, it is not an exclusive jurisdiction, and U.S. courts also have jurisdiction over the international disputes.

46. Considering that Defendants' infringing acts are mainly occurring in the U.S. and that they may result in significant infringement and damage, the issuance and enforcement of an injunction in the United States are essential for the Plaintiff to effectively remedy its rights. If a Korean court adjudicates this case, it would be relatively difficult to provide effective remedies.

DECLARATION OF KWANG HYUN SUK - 17
Case No. 2:23-cv-00576-TL

47. Because Korean civil litigation procedures, unlike those of the United States, lack a discovery system that allows them to collect information, evidence collection in Korea will be limited.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

EXECUTED this 10th day of July 2023 at Seoul, Korea.

Kwang Hyun Suk