The Honorable Tana Lin

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

8
9
10

NEXON KOREA CORPORATION, a Korean Corporation,

     Plaintiff,

v.

IRONMACE CO., LTD., a Korean Corporation; JU-HYUN CHOI, individually; and TERENCE SEUNGHA PARK, individually,

     Defendants.

Case No. 2:23-cv-00576-TL

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS ON GROUNDS OF *FORUM NON CONVENIENS***

NOTE ON MOTION CALENDAR: JULY 14, 2023

ORAL ARGUMENT REQUESTED

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

REPLY RE DEFENDANTS' MOTION TO DISMISS
ON *FORUM NON CONVENIENS*
No. 2:23-CV-00576-TL
43223-00002/4873581.10

GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067
(310) 553-3610

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION.................................................................................1

II. THE DMCA DOES NOT PRECLUDE DISMISSAL ON *FORUM NON CONVENIENS* GROUNDS..................................................................1

III. NEXON'S CLAIMS ARE GOVERNED BY A KOREAN FORUM SELECTION CLAUSE................................................................3

    A.    The DMCA Counter-notification Is Not a Forum Selection Provision..............4

    B.    The Korean Contractual Forum Selection Clause Governs. ...............5

IV. KOREA IS AN AVAILABLE ADEQUATE ALTERNATIVE FORUM. ...................7

V. THE PRIVATE AND PUBLIC INTEREST FACTORS FAVOR DISMISSAL. ..........8

    A.    The Private Interest Factors Favor Dismissal. ...................................8

    B.    The Public Interest Factors Also Favor Dismissal. ...........................10

REPLY RE DEFENDANTS' MOTION TO DISMISS
ON *FORUM NON CONVENIENS*
No. 2:23-CV-00576-TL
43223-00002/4873581.10

**GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP**
2049 Century Park East, Suite 2600
Los Angeles, California  90067
(310) 553-3610

# TABLE OF AUTHORITIES

**Page**

CASES

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*,
   368 F.3d 1174 (9th Cir. 2004) ................................................................2

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
   571 U.S. 49 (2013)..................................................................................4

*Bos. Telecommunications Grp., Inc. v. Wood*,
   588 F.3d 1201 (9th Cir. 2009) ................................................................9

*Cheng v. Boeing Co.*,
   708 F.2d 1406 (9th Cir. 1983) ..............................................................10

*Cinematix, LLC v. Einthusan*,
   19-CV-02749-EMC, 2020 WL 227180 (N.D. Cal. Jan. 15, 2020)..........3

*Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*,
   61 F.3d 696 (9th Cir. 1995) ............................................... 3, 10, 11, 12

*Crunchyroll, Inc. v. Pledge*,
   C11-2334 SBA, 2014 WL 1347492, at *9 (N.D. Cal. Mar. 31, 2014) .............................2, 4

*DFSB Kollective Co. v. CJ E & M Am., Inc.*,
   2:15-CV-01650SVW, 2015 WL 12781211 (C.D. Cal. June 4, 2015) ................................7

*Epic Games, Inc. v. Mendes*,
   17-CV-06223-LB, 2018 WL 2926086 (N.D. Cal. June 12, 2018) ................................2

*FastCap, LLC v. Snake River Tool Co., LLC*,
   15-CV-02764-JSC, 2015 WL 6828196 (N.D. Cal. Nov. 6, 2015) ................................9

*Heller Fin., Inc. v. Riverdale Auto Parts, Inc.*,
   713 F. Supp. 1125 (N.D. Ill. 1989) ........................................................2

*Knox v. KremeWorks, LLC*,
   C09-1243RSM, 2010 WL 11713185 (W.D. Wash. Mar. 23, 2010)..........9

*Lang Van, Inc. v. VNG Corp.*,
   40 F.4th 1034 (9th Cir. 2022) ...............................................................10

*Lavera Skin Care N. Am., Inc. v. Laverana GmbH & Co. KG*,
   2:13-CV-02311-RSM, 2014 WL 7338739 (W.D. Wash. Dec. 19, 2014), aff'd, 696
   F. App'x 837 (9th Cir. 2017) ..................................................... 2, 4, 6

*Loya v. Starwood Hotels & Resorts Worldwide, Inc.*,
   583 F.3d 656 (9th Cir. 2009) ..................................................................2

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
   858 F.2d 509 (9th Cir. 1988) ..................................................................6

REPLY RE DEFENDANTS' MOTION TO DISMISS
ON *FORUM NON CONVENIENS* - i
No. 2:23-CV-00576-TL
43223-00002/4873581.10

GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California  90067
(310) 553-3610

## TABLE OF AUTHORITIES
### (Continued)

**Page**

*Mitchell v. 1Force Gov't Sols., LLC,*
    2018 WL 6977476 (C.D. Cal. Nov. 29, 2018) ....................................................4

*Nai-Chao v. Boeing Co.,*
    555 F. Supp. 9 (N.D. Cal. 1982) ......................................................................10

*Nibirutech Ltd v. Jang,*
    C-14-3091-PJH, 2015 WL 831465 (N.D. Cal. Feb. 23, 2015).....................................10, 12

*Stewart Org., Inc. v. Ricoh Corp.,*
    487 U.S. 22 (1988) (Kennedy, J., concurring) ........................................................4

*Sun v. Advanced China Healthcare, Inc.,*
    901 F.3d 1081 (9th Cir. 2018) .........................................................................6

**STATUTES**

Copyright Act ...............................................................................................1, 3

Digital Millennium Copyright Act, 17 U.S.C. § 512.....................................................1, 2, 3, 4

**GREENBERG GLUSKER FIELDS**
**CLAMAN & MACHTINGER LLP**
2049 Century Park East, Suite 2600
Los Angeles, California  90067
(310) 553-3610

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

# I.    INTRODUCTION

Nexon's Opposition distorts both the law and the facts, yet still falls far short of satisfying Nexon's heavy burden of rebutting the validity of mandatory Korean forum selection clauses in its effort to litigate this case in a forum that has virtually no connection to the parties or their dispute.

Nexon's primary contention is that the Digital Millennium Copyright Act ("DMCA") precludes application of the *forum non conveniens* doctrine.  No court has ever even suggested that Congress intended such a result; to the contrary, courts routinely apply the *forum non conveniens* doctrine in copyright cases, including when the DMCA is implicated.

Nexon then claims, again without authority, that the DMCA counter-notification submitted by Ironmace serves as a *de facto* contractual forum selection clause, while at the same time ignoring the actual bargained-for forum selection clause requiring this dispute to proceed in Korea.  Nexon cannot substitute an explicit, mandatory forum selection clause encompassing this dispute for a legal fiction of its own invention.

Finally, Nexon argues that U.S. litigation involving exclusively Korean-speaking witnesses living in Korea, with all relevant evidence written in Korean, somehow presents no burden.  Nexon is wrong, and the private and public interest factors strongly support dismissing this action in favor of Korea.

## II.    THE DMCA DOES NOT PRECLUDE DISMISSAL
## ON *FORUM NON CONVENIENS* GROUNDS.

Nexon first argues that this Court is precluded from even considering *forum non conveniens* because Congress has "enacted a specific venue provision" applicable, not to the Copyright Act as a whole, but to a "narrow subset of copyright cases involving a foreign defendant who invokes the DMCA counter-notification process." Dkt.#38, at 15–18.  Nexon cites no authority for this proposition, which no court has ever accepted and which Nexon appears to have fabricated out of whole cloth.

There is no dispute that by using the DMCA's counter-notification procedure to contest

REPLY RE DEFENDANTS' MOTION TO DISMISS
ON *FORUM NON CONVENIENS* - 1
No. 2:23-CV-00576-TL
43223-00002/4873581.10

**GREENBERG GLUSKER FIELDS**
**CLAMAN & MACHTINGER LLP**
2049 Century Park East, Suite 2600
Los Angeles, California  90067
(310) 553-3610

Nexon's improper takedown of *Dark and Darker* from Steam, Ironmace was required to affirm that it "consents to the jurisdiction" of any judicial district in which the service provider (Valve) may be found.  Dkt.#30, Ex. A; 17 U.S.C. § 512(g)(3)(D).  However, subsection 512(g)(3)(D) is a consent to ***personal jurisdiction***, not venue.  *See*, e.g., *Epic Games, Inc. v. Mendes*, 17-CV-06223-LB, 2018 WL 2926086, at *5 (N.D. Cal. June 12, 2018) ("The court has personal jurisdiction over [defendant] because he submitted a DMCA counter-notification [and] thus has consented to personal jurisdiction here."); *Crunchyroll, Inc. v. Pledge*, C11-2334 SBA, 2014 WL 1347492, at *9 (N.D. Cal. Mar. 31, 2014) (sending a DMCA counter-notification is an "affirmative act" that constitutes consent to personal jurisdiction).

An acknowledgment that jurisdiction in a given forum is permissible is not tantamount to waiving the right to challenge the forum as inconvenient or inappropriate on any other basis. *Lavera Skin Care N. Am., Inc. v. Laverana GmbH & Co. KG*, 2:13-CV-02311-RSM, 2014 WL 7338739, at *5 (W.D. Wash. Dec. 19, 2014), aff'd, 696 F. App'x 837 (9th Cir. 2017) (the fact that a party "manifests consent to jurisdiction in the designated forum" does not preclude application of *forum non conveniens* doctrine); *see also Heller Fin., Inc. v. Riverdale Auto Parts, Inc.*, 713 F. Supp. 1125, 1128 (N.D. Ill. 1989) ("consent to jurisdiction provisions . . . do not preclude a § 1404(a) motion to transfer to a more convenient venue").

Nexon improperly conflates "personal jurisdiction" with "venue."  *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1178–79 (9th Cir. 2004) ("the question of a federal court's competence to exercise personal jurisdiction over a defendant is distinct from the question of whether venue is proper.").  Nexon then compounds its error by asserting that section 512(g)(3)(D) is a "specific venue provision." Dkt.#38, at 16.

Nexon analogizes the DMCA to the Jones Act or the Federal Employers Liability Act, claiming that the counter-notification provision is the same as a mandatory, statutory venue provision that precludes a *forum non conveniens* inquiry.  *See Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656, 662 (9th Cir. 2009) ("the purpose of a choice of law inquiry in a *forum non conveniens* analysis is to determine if the Jones Act, or the FELA, with

REPLY RE DEFENDANTS' MOTION TO DISMISS
ON *FORUM NON CONVENIENS* - 2
No. 2:23-CV-00576-TL
43223-00002/4873581.10

GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California  90067
(310) 553-3610

1   special provisions mandating venue in the United States district courts, would apply") (citing

2   *Lueck v. Sundstrand*, 236 F.3d 1137, 1148 (9th Cir. 2001)).

3         However, there is nothing about the counter-notification subsection of the DMCA that

4   indicates that Congress spoke to, and rejected, the application of *forum non conveniens* to a suit

5   arising under the DMCA.  Indeed, Nexon's claims do not even arise under the DMCA.  They

6   arise under the Copyright Act more generally, which the Ninth Circuit has held is not the type

7   of statute that forecloses application of *forum non conveniens*.  *See Creative Tech., Ltd. v.*

8   *Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 700 (9th Cir. 1995) (rejecting argument that by giving

9   district courts exclusive jurisdiction of U.S. copyright claims over state courts that Congress

10   "implicitly spoke to, and rejected application of *forum non conveniens*" to a suit arising under

11   the Copyright Act); *Cinematix, LLC v. Einthusan*, 19-CV-02749-EMC, 2020 WL 227180, at *3

12   (N.D. Cal. Jan. 15, 2020) (granting *forum non conveniens* motion in copyright infringement

13   case notwithstanding that at least one of the defendants consented to jurisdiction by submitting

14   a DMCA counter-notification).

15         It strains credulity to believe that Congress intended to reject the application of *forum*

16   *non conveniens*, not as to the Copyright Act as a whole, but only as to a single subsection

17   applying to counter-notifications under the DMCA.  Aside from the fact that the counter-

18   notification subsection is not a venue provision, let alone a mandatory venue provision, it defies

19   logic to conclude that a tool designed to protect victims of wrongful takedown notices is

20   actually a hidden booby trap forcing them to defend against bad faith actors in an inconvenient

21   forum.  If it were otherwise, all foreign companies would face the Hobson's choice of either

22   allowing a bad faith takedown notice to stand uncontested, thereby cutting them off from U.S.

23   service providers, or being forced to litigate in an inconvenient forum with no connection to the

24   dispute.  There is no authority whatsoever for that draconian proposition.

### III.    NEXON'S CLAIMS ARE GOVERNED BY A KOREAN FORUM SELECTION CLAUSE.

27         Following its invented argument about the DMCA's preclusive effect, Nexon next

REPLY RE DEFENDANTS' MOTION TO DISMISS
ON *FORUM NON CONVENIENS* - 3
No. 2:23-CV-00576-TL
43223-00002/4873581.10

**GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP**
2049 Century Park East, Suite 2600
Los Angeles, California  90067
(310) 553-3610

1    contends that the DMCA counter-notification submitted by Ironmace is a *de facto* forum

2    selection clause.  It claims that this implied forum selection clause, which does not exist,

3    trumps the mandatory forum selection clause in the parties' contracts, which does exist.  Nexon

4    is wrong on both counts.

5    **A.**    <u>**The DMCA Counter-notification Is Not a Forum Selection Provision.**</u>

6            Nexon cites no authority for the proposition that a DMCA counter-notification's

7    consent to jurisdiction is equivalent to a "bargained for" forum selection clause which merits

8    the *Atlantic Marine* presumption of validity.  Dkt.#38, at 18.  Its argument is once again based

9    on the logical fallacy that a consent to jurisdiction is the same as a mandatory contractual venue

10    provision.  It is not.  First and foremost, the counter-notification is not a contractual forum

11    selection clause at all.  *Crunchyroll*, 2014 WL 1347492, at *9 ("submission of a [DMCA]

12    counter-notification [] is not a contract").  A forum selection clause is something "bargained for

13    by the parties"—it is not a creature of one-party consent.  *See Atl. Marine Const. Co. v. U.S.*

14    *Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63 (2013); *Stewart Org., Inc. v. Ricoh Corp.*, 487

15    U.S. 22, 33 (1988) (Kennedy, J., concurring) ("Courts should announce and encourage rules

16    that support private parties who negotiate such clauses.").

17            Even if one accepts Nexon's ipse dixit that consent to jurisdiction is equivalent to a

18    permissive forum selection clause, permissive clauses are not entitled to the *Atlantic Marine*

19    presumption.  *Lavera*, 2014 WL 7338739, at *5 ("Where a forum-selection clause is instead

20    permissive, the vast majority of courts that have addressed the issue have rejected *Atlantic*

21    *Marine's* application and applied the traditional *forum non conveniens* test"; adopting rule in

22    this District); *Mitchell v. 1Force Gov't Sols., LLC*, CV-18-7612-PSG-SKX, 2018 WL 6977476,

23    at *4 (C.D. Cal. Nov. 29, 2018) ("*Atlantic Marine* applies only to mandatory forum selection

24    clauses and [not] permissive selection clause[s]").[1]  Nexon's fictive forum selection "clause" is

25

26     [1] Nexon cites two out-of-circuit cases in its opposition and states: "[c]ourts have repeatedly
held that, where a plaintiff sues in a jurisdiction designated in a permissive forum selection
clause, a defendant seeking to transfer a case outside the permitted forum must meet the

27    [heightened] *Atlantic Marine* standard . . . ."  Dkt.#38, at 19.  That is not an accurate statement
of the law in **this Circuit**.

**GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP**
2049 Century Park East, Suite 2600
Los Angeles, California  90067
(310) 553-3610

1   therefore of no legal moment.

2   **B.      The Korean Contractual Forum Selection Clause Governs.**

3          Nexon cannot avoid application of the *actual* Korean forum selection clauses that

4   govern this dispute.  In an attempt to confuse the issue, Nexon lobs scattershot arguments, none

5   of which has any merit.

6          Nexon first argues that the forum selection clauses in the parties' contracts are

7   inapplicable because those agreements do not cover post-employment disputes.  *See* Dkt.#42, at

8   ¶¶ 12–30 (Suk Decl.).  This is false.  The Acknowledgment about Company IP explicitly states

9   that the prohibition on use of Nexon's IP continues "*[a]fter this Agreement is concluded*" and

10  that the former employee "may not use or recreate, outside of the Company," any covered IP.

11  Dkt.#31, Ex. 5, § 4(2).  Similarly, the Employment Agreement states that confidentiality

12  obligations apply "not only during employment but also after departure from the Company."

13  Dkt.#31, Ex. 5, § 5(1).  Nexon knows this; it alleged in its Complaint that these contractual

14  obligations mean that "Nexon employees are prohibited from using or recreating . . . work-

15  related inventions made at Nexon, ***even after the employees leave Nexon and join another***

16  ***employer***."  Dkt.#1, ¶ 19.  The Suk Declaration is therefore directly contradicted by the plain

17  terms of the agreements and Nexon's own Complaint.

18         Defendants submitted certified translations from a Korean Court Interpreter averring

19  that the relevant forum selection provision states that all disputes "relating to" the contracts

20  must be heard in Korea.  Dkt.#31, Exs. 4–5.  Nexon offers the tepid response that the Korean

21  phrase "본계약과관련하여" could possibly mean other things, including "arising out of," and

22  submits a declaration from a translator who does not offer any certified translation.  Dkt.#38, at

23  20; Dkt.#43 ("J.Park Decl.").  In rebuttal to the J.Park Declaration, Defendants concurrently

24  submit the declaration of Professor John B. Duncan, Ph.D ("Duncan Decl."), who taught

25  Korean for more than 30 years and has extensive experience as a Korean translator and

26  interpreter.  Duncan Decl., ¶¶2–3.  He explains that the word 관련하여, used in both contracts,

27  means "relating to," and could reasonably also be read as "in connection with" or "regarding."

REPLY RE DEFENDANTS' MOTION TO DISMISS
ON *FORUM NON CONVENIENS* - 5
No. 2:23-CV-00576-TL
43223-00002/4873581.10

GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California  90067
(310) 553-3610

1   *Id.* ¶¶5–6.  But "arising out of" and "based upon" are unnatural translations inconsistent with

2   the wording of the contracts.  *Id.* ¶7.

3         However Nexon (mis)construes the forum selection provisions, they indisputably

4   govern this dispute.  Nexon's Complaint explains in detail how the contracts containing these

5   forum selection clauses operate to prevent Park and Choi from leaving Nexon to form a

6   competing company (like Ironmace) and using Nexon's trade secrets.  Dkt.#1, at 6–8.  The

7   scope and extent to which Nexon owns the intellectual property it claims has been infringed or

8   misappropriated is directly determined by these contracts.[2]  While it is enough to show that this

9   dispute has a factual connection with the contracts, it in fact hinges on their interpretation and

10  is inextricably intertwined with them.

11        Nexon next asserts that under Korean law, a mandatory forum selection clause reflects

12  "only an agreement as to which court within Korea will hear a dispute."  Dkt.#38, at 21.  Even

13  if this were true,[3] it is immaterial.  Federal courts apply federal law, not a foreign court's law,

14  in interpreting a forum selection clause.  *Lavera*, 2014 WL 7338739, at *5 ("[T]he Court

15  follows the weight of precedent within this Circuit to apply federal law, irrespective of the

16  Agreement's choice-of-law provision selecting German law."); *Manetti-Farrow, Inc. v. Gucci*

17  *Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988) (federal law governs the "analysis of the effect and

18  scope of the forum selection clause").  In the Ninth Circuit, forum selection clauses governing

19  disputes "relating to" the contract encompass all disputes with a "logical or causal connection"

20  to the agreement, which this dispute clearly has.  *Sun v. Advanced China Healthcare, Inc.*, 901

21  F.3d 1081, 1086 (9th Cir. 2018).

22        Nexon also suggests that, because there is pending litigation between the parties in the

23  *Suwon* District Court, Defendants may not invoke a forum selection clause in favor of the *Seoul*

24  District Court.  Nexon offers no authority that the parties' decision to litigate a dispute in a

25

26  ────────────────

    [2] Indeed, Nexon cites these contracts as evidence of an element of its trade secret claim, namely
27  that it took "reasonable measures" to protect its trade secrets.

    [3] It is not.  *See* Rebuttal Declaration of Professor Gyooho Lee.

1   different Korean venue invalidates the plain terms of the forum selection clause.  Nor are

2   Defendants asking this Court to "transfer" this action to Suwon.  The proper remedy is

3   dismissal, and whether the parties continue to litigate these issues in Suwon or Nexon chooses

4   to initiate a new action in Seoul is irrelevant.  Nexon's argument also misrepresents the facts.

5   Ironmace sued Nexon in Suwon on claims of business interference because that is where Nexon

6   is located.  Supplemental Declaration of Eung Jun Jeon ("Jeon Supp. Decl.") ¶¶2–6.  While it is

7   doubtful that *Ironmace's* Korean claims implicate the forum selection clauses in Park and

8   Choi's Employment Agreements or Acknowledgments about IP, Defendants have never taken

9   the position that these clauses are invalid, unenforceable, or inapplicable to the dispute.  *Id.* ¶5.

10        Finally, Nexon asserts that Ironmace is unable to invoke the forum selection clauses

11   because Ironmace was not a party to the agreements.  Defendants already cited directly on-

12   point authority addressing this issue.  Dkt.#29, at 16–17 (citing *W. Boxed Meats Distributors,*

13   *Inc. v. Parker*, C17-5156 BHS, 2017 WL 3034517 (W.D. Wash. July 18, 2017)).  Nexon has

14   not even attempted to refute that authority.

15        **IV.    KOREA IS AN AVAILABLE ADEQUATE ALTERNATIVE FORUM.**

16        Nexon demonstrated the adequacy of Korea as an alternative forum by suing

17   Defendants there on the same claims and seeking the same relief as it does from this Court.

18   Nexon nevertheless asserts that the adequacy of Korea as an alternate forum is a "mirage"

19   because a Korean court cannot compel Ironmace to produce its *Dark and Darker* source code.

20   Dkt.#38, at 24.  The only mirage is Nexon's argument, which is both false and legally

21   irrelevant.

22        As a threshold matter, "Courts routinely hold that a foreign forum is not inadequate

23   because depositions are not available or because it provides more limited discovery tools than

24   the home forum."  *DFSB Kollective Co. v. CJ E & M Am., Inc.*, 2:15-CV-01650SVW, 2015

25   WL 12781211, at *4 (C.D. Cal. June 4, 2015).  Limitations on document discovery cannot

26   render a forum inadequate, and Nexon cited no authority holding otherwise.

27        Even if it were true that Nexon could not obtain Ironmace's source code in Korea

REPLY RE DEFENDANTS' MOTION TO DISMISS
ON *FORUM NON CONVENIENS* - 7
No. 2:23-CV-00576-TL
43223-00002/4873581.10

**GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP**
2049 Century Park East, Suite 2600
Los Angeles, California  90067
(310) 553-3610

1    (untrue, *infra*), that is merely a discovery impediment; it does not preclude any relief

2    whatsoever.[4]  Nexon's core allegation is that *Dark and Darker*, the game, infringes Nexon's P3

3    Game.  While comparing source code might aid that analysis, it is the games that must be

4    compared.  Dkt.#1, ¶1 ("Defendants used those materials to develop a substantially similar

5    video game . . . . Nexon brings this action to stop Defendants from continuing to profit from . . .

6    the distribution of Dark and Darker in the United States and elsewhere.").

7         But even if the unavailability of Ironmace's source code were an impediment to relief

8    and could render Korea an inadequate forum, Nexon misrepresents the law and facts.  Under

9    Korean law, parties *can* ask the Korean Court to issue a "document submission order."  Jeon

10   Supp. Decl. ¶¶7–21.  If a party refuses to produce documents subject to that order, the court can

11   draw evidentiary inferences against the party, just like in the U.S.  *Id.* ¶¶7, 14.  Nexon's

12   argument is the height of bad faith because Nexon ***has not even made a request for a***

13   ***document submission order in the Korean litigation as to Ironmace's source code***.  *Id.* ¶¶8,

14   10, 14.  Nexon has invented a discovery impediment that does not exist to justify a legal theory

15   that is foreclosed by controlling precedent.

16   **V.     THE PRIVATE AND PUBLIC INTEREST FACTORS FAVOR DISMISSAL.**

17   **A.     The Private Interest Factors Favor Dismissal.**

18        While the controlling mandatory Korean forum selection clauses obviate any need to

19   consider the private interest *forum non conveniens* factors, those too support dismissal.  Nexon

20   has no persuasive arguments to the contrary.

21        First, Nexon relies on the same supposed unavailability of sources of proof, including

22   Ironmace's source code.  But Korea has adequate discovery procedures allowing Nexon to

23   obtain the evidence it seeks.  Jeon Supp. Decl, ¶¶12–21.  Nexon cites no authority that

24   discovery procedures of the alternative forum bear on the private interest factors.

25

26   ─────────────────────
     [4] The argument does not pass superficial scrutiny.  If Nexon believed that Korea cannot provide

27   any remedy for a claim of copyright infringement, ***why did it sue Ironmace there?***  Defendants
     are unaware of ***any*** decision ever finding Korea an inadequate forum by virtue of its discovery
     procedures.

**GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP**
2049 Century Park East, Suite 2600
Los Angeles, California  90067
(310) 553-3610

1    Second, Nexon dismisses the convenience of the parties and the location of witnesses,

2    arguing that they can be compelled to travel to the U.S. or otherwise testify remotely.  But

3    "[g]iven the reduced deference due the non-resident plaintiff's forum choice," the

4    inconvenience to Defendants and witnesses is particularly salient.  *See Knox v. KremeWorks,*

5    *LLC*, C09-1243RSM, 2010 WL 11713185, at *3 (W.D. Wash. Mar. 23, 2010).  Indeed, because

6    Defendants seek to dismiss this action in favor of the forum where *all* parties are

7    headquartered, that alternate forum "would increase the convenience for both parties."

8    *FastCap, LLC v. Snake River Tool Co., LLC*, 15-CV-02764-JSC, 2015 WL 6828196, at *5

9    (N.D. Cal. Nov. 6, 2015).

10    This is not a case "in which witnesses are scattered around the globe" and where

11    Defendants would need to identify specific witnesses who could not otherwise be brought to

12    the U.S. so the Court could weigh their relative distribution and importance.  *See Bos.*

13    *Telecommunications Grp., Inc. v. Wood*, 588 F.3d 1201, 1210 (9th Cir. 2009).  Rather, *every*

14    witness is in Korea.  Nexon briefly suggests that Valve and Amazon might have "information

15    concerning Defendants' infringement and misappropriation," but does not explain what that

16    evidence could be or why it would be relevant, much less why it would be unobtainable

17    through party discovery.

18    Nexon also downplays the immense burden on the parties and the Court to conduct this

19    litigation in the U.S. when all relevant evidence will be in Korean.  While it is true that

20    common coding languages use some English words, the code itself is all but indecipherable to

21    lay persons.  The actual notes contained in Ironmace's source code describing its functionality

22    are almost exclusively in Korean.  Supplemental Declaration of Terence Park ("Park Supp.

23    Decl."), ¶2.  So too is essentially all of the preparatory and planning documentation that went

24    into making *Dark and Darker*.  Indeed, Ironmace has an internal "wiki" that detailed its game

25    design, written in Korean.  *Id.* ¶3.

26    It is disingenuous for Nexon to suggest that conducting all discovery, let alone trial, in

27    English when nearly every witness speaks and corresponds in Korean would be a "minimal

REPLY RE DEFENDANTS' MOTION TO DISMISS
ON *FORUM NON CONVENIENS* - 9
No. 2:23-CV-00576-TL
43223-00002/4873581.10

GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California  90067
(310) 553-3610

1  inconvenience" to the Court and the parties.  Dkt.#38, at 28.  Courts routinely find that such

2  translation barriers are grounds for granting a *forum non conveniens* motion.  *See, e.g.*, *Nai-*

3  *Chao v. Boeing Co.*, 555 F. Supp. 9, 18 (N.D. Cal. 1982), aff'd sub nom. *Cheng v. Boeing Co.*,

4  708 F.2d 1406 (9th Cir. 1983) (granting *forum non conveniens* motion where "virtually all of

5  the evidence relating to proof of damages is in Taiwan, where the overwhelming majority of

6  claimants reside, and the difficulties of adjudicating these foreign damage claims would be

7  compounded by the presence of language barriers and the necessity for translation");

8  *Nibirutech Ltd v. Jang*, C-14-3091-PJH, 2015 WL 831465, at *6 (N.D. Cal. Feb. 23, 2015)

9  (granting *forum non conveniens* motion in part because "the necessity of having testimony and

10 documents translated by qualified translators would add significantly to the cost, likely

11 duration, and complexity of litigating the case here").

12 **B.      The Public Interest Factors Also Favor Dismissal.**

13        In asserting that the public interest factors support retention of jurisdiction, Nexon relies

14 exclusively on *Lang Van, Inc. v. VNG Corp.*, 40 F.4th 1034, 1043 (9th Cir. 2022) for the

15 proposition that copyright infringement cases involving infringement "directed toward the

16 United States are more amenable to suit in the United States."  But *Lang Van* is a case about

17 *personal jurisdiction*, and its entire discussion about conduct "purposely directed toward the

18 United States" was in the context of the *Calder* effects test for establishing personal jurisdiction

19 over a non-resident defendant.  *Id.* at 1041.  The Ninth Circuit only briefly addressed the

20 defendant's argument about *forum non conveniens* and simply noted that: (a) the plaintiff was a

21 forum resident, and so the alternative forum would have been inconvenient and (b) Vietnam

22 was not an adequate alternative because Vietnamese courts had no experience litigating

23 intellectual property disputes.  *Id.* at 1043 ("[Vietnamese] civil and criminal courts are not a

24 realistic avenue for copyright owners . . . . To date, there have been relatively few civil court

25 actions involving copyright infringement in Vietnam.").  *Lang Van* did not even discuss the

26 public interest factors.

27        By contrast, *Creative Tech.*, cited in Defendants' motion, is directly on point.  Nexon

has no response other than to claim in a footnote that the case "found no similar targeting of the United States." Dkt.#38, at 31.  But that is not true.  The Court *did* find that the defendant distributed allegedly infringing products in the U.S, including through the defendants' U.S.-based subsidiary.  *Creative Tech.,* 61 F.3d at 699, 704 (describing how the defendant "market[ed] its [product] in the United States").  The Court then squarely addressed the argument that the U.S. has a "strong public interest in resolving this copyright claim."  It held that "[f]ederal copyright laws do not serve this purpose of protecting consumers.  They are designed to protect the property rights of copyright owners. . . . As such, the key interests in this dispute lie with the [foreign] corporations, not the American public." *Id.* at 704.  So too here.  The people of Washington have no interest in protecting a foreign conglomerate's intellectual property in a foreign dispute.

Even if "directing conduct" at the United States could give Washington an interest in an intellectual property dispute between non-residents, Nexon grossly overstates that purposeful direction.  Ironmace developed *Dark and Darker* for a global audience, as nearly all videogames are released worldwide, and the U.S. is the third most populous country in the world.  That is not the same as targeting Washington.  Ironmace's public playtests involved game servers located in Korea, Brazil, Germany, Australia, Singapore, Japan, and the U.S.—all major gaming markets.  Park Supp. Decl., ¶4.  The argument that Korea was "geo-locked" from playtests is also inaccurate.  Six of the seven playtests were available in Korea in the Korean language.  *Id.*  Only the last playtest, in April 2023, was inaccessible there.[5]  Defendants have not directed their conduct at Washington, and even if they had, purposeful direction is ***not*** the standard for determining whether Washington has an interest in this dispute.

Nexon's argument that, though it is a Korean company, it has employees in the U.S. and

---

[5] Korea requires that games be "rated" (like movies) before distribution.  Park Supp. Decl., ¶5.  When a game is available on Steam, the distributor can rely on Steam's rating. *Id.*  Once removed from Steam, Ironmace could no longer satisfy Korea's requirements.  Ironically, then, the only time *Dark and Darker*'s connection to Korea was even slightly diminished was when the game's sole connection to Washington was eliminated altogether, by virtue of Nexon's takedown notice.

REPLY RE DEFENDANTS' MOTION TO DISMISS
ON *FORUM NON CONVENIENS* - 11
No. 2:23-CV-00576-TL
43223-00002/4873581.10

1    thus has a "material stake in the United States' intellectual property system," is similarly

2    foreclosed by *Creative Tech.*  There, the Court expressly considered a foreign company that

3    transacted business in the United States and had a wholly-owned U.S. subsidiary, and

4    concluded that those facts did not impact the *forum non conveniens* analysis.  *Creative Tech.*,

5    61 F.3d at 704.  Nexon does not address this controlling authority and does not even attempt to

6    distinguish the other cases cited in Defendants' motion.  Nor does Nexon submit any evidence

7    that any of its contacts are with Washington.

8          Washington simply does not have an interest in an IP dispute between non-resident

9    parties.  The Court need only look at the complexities of *this* motion to recognize that it will be

10   an unjust burden on Washington, its citizens, and this Court to adjudicate this entirely foreign

11   case.  The parties have *already* submitted competing evidence regarding the proper Korean

12   translation of just a few words in the relevant forum selection clauses.  *See Nibirutech Ltd.*,

13   2015 WL 831465, at *6 (justifying dismissal where "the court notes that even during the early

14   stages of this litigation, the parties have several times raised concerns with regard to whether

15   the translation of particular documents is accurate"). That will be only the tip of the iceberg if

16   this litigation continues in this inconvenient forum.

17   DATED July 14, 2023                              Respectfully submitted,

18   By:        *s/ Aaron J. Moss*                    By:      *s/ Michael E. Chait*
19          Aaron J. Moss                                   Michael E. Chait

20   **GREENBERG GLUSKER FIELDS CLAMAN &**           **SAVITT BRUCE & WILLEY LLP**
     **MACHTINGER  LLP**
21   Aaron J. Moss (*pro hac vice*)                  Michael E Chait, WSBA #48842
     Joshua M. Geller (*pro hac vice*)               Chris J. Lindemeier, WSBA #55515
22   Emily G. Avazian (*pro hac vice*)               1425 Fourth Avenue Suite 800
     2049 Century Park East, Suite 2600              Seattle, Washington  98101-2272
23   Los Angeles, California  90067                  Tel: 206.749.0500/ Fax: 206.749.0600
     Tel: 310.553.3610/ Fax: 310.553.0687            Email:  mchait@sbwLLP.com
24   Email:  amoss@ggfirm.com                         Email:  clindemeier@sbwLLP.com
     Email:  jgeller@ggfirm.com
25   Email:  eavazian@ggfirm.com
                                                     *Attorneys for Defendants*
26
                                                     *I certify that this memorandum contains 4,192*
27                                                   *words, in compliance with the Local Civil Rules.*

REPLY RE DEFENDANTS' MOTION TO DISMISS        **GREENBERG GLUSKER FIELDS**
ON *FORUM NON CONVENIENS* - 12                **CLAMAN & MACHTINGER  LLP**
No. 2:23-CV-00576-TL                          2049 Century Park East, Suite 2600
                                              Los Angeles, California  90067
43223-00002/4873581.10                        (310) 553-3610

## <u>CERTIFICATE OF SERVICE</u>

I hereby declare under penalty of perjury under the laws of the United States of America that on this date, the foregoing document was filed electronically with the Court and thus served simultaneously upon all counsel of record.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on July 14, 2023.

_____
Kristine Nicolas

CERTIFICATE OF SERVICE
No. 2:23-CV-00576-MLP

43223-00002/4873581.10

GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California  90067
(310) 553-3610