1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9
10

11 | NEXON KOREA CORPORATION, a
Korean Corporation,

12
                                Plaintiff,
13        v.

14 | IRONMACE CO LTD, a Korean
Corporation, et al.

15
                                Defendants.
16
17

CASE NO. 2:23-cv-00576-TL

ORDER OF DISMISSAL ON
GROUNDS OF *FORUM NON
CONVENIENS*

18        This case arises from a copyright dispute between a Korean video game development

19 company and two of its former employees who left to start their own company. Dkt. No. 1 ¶ 1.

20 The matter is before the Court on Defendants' Motion to Dismiss on Grounds of *Forum Non*

21 *Conveniens* (Dkt. No. 29) and Motion for Relief from the Initial Disclosure Deadline and for a

22 Protective Order to Stay Discovery (Dkt. No. 44). Both parties requested oral argument (Dkt.

23 Nos. 29, 38, 45), but the Court deems oral argument unnecessary to the disposition of this

24

motion. *See* LCR 7(b)(4). Having considered the relevant record,[1] the Court GRANTS the motion to dismiss and DENIES as MOOT the motion for miscellaneous relief.

## I.    BACKGROUND

Nexon Korea Corporation ("Nexon") and Ironmace Co., Ltd. ("Ironmace") are two Korean videogame companies currently engaged in a copyright dispute in Korea. Nexon is a large videogame developer that previously employed Defendants Terence Seungha Park ("Park") and Ju-Hyun Choi ("Choi") to develop a videogame referred to as "P3." Dkt. No. 38 at 11. Choi and Park worked on P3 out of Nexon's Korean offices. Dkt. No. 29 at 7. While employed, both Park and Choi individually signed agreements that selected Seoul District Court as the forum to hear work-related intellectual property disputes. Dkt. No. 31 at 208 (Exhibit 5) and 211 (Exhibit 6). They left the company before the P3 project was finished, and they allege that it was "nowhere near being released" at the time of their departure. Dkt. No. 29 at 7. Nexon asserts that, before departing, Choi stole source code from Nexon's Korean servers and sent them to his private server. Dkt. No. 38 at 11. Defendants then formed Ironmace (collectively with Park and Choi, Defendants). *Id*. Ironmace soon released "Dark and Darker," which is a videogame in the same genre as P3 but with different features. Dkt. No. 29 at 8. Nexon alleges that Ironmace used the stolen source code to complete Dark and Darker, essentially rebranding P3 as the new company's intellectual property, a point that Ironmace denies. *Id*.

---

[1] Nexon filed a notice of intent to file a surreply pursuant to Local Civil Rule ("LCR") 7(g), purportedly to move to strike declarations and related arguments included with Defendants' reply briefing on the motion to dismiss. Dkt. No. 50. Nexon then filed a surreply brief that fails to raise any legally sufficient grounds for striking any portions of the reply brief or related materials. *See* Dkt. No. 53. Nexon's arguments in support of its motion to strike are that Defendants raised certain arguments only in reply that they could have initially raised in their motion brief (*id.*), but this is because Defendants attempt to counter specific arguments Nexon makes in opposition to the motion to dismiss, as they are expected to do on reply. *Id.* Nexon does not claim that Defendants raise any arguments for the first time on reply that do not directly respond to Nexon's arguments in opposition. The Court will therefore not consider the inappropriately superfluous briefing in deciding this motion to dismiss.

Ironmace admits it implemented "playtests" of Dark and Darker to allow gamers in major gaming markets access to the game in advance of its official release, including in the United States. Dkt. No. 45 at 15. Ironmace has also specifically promoted the game in the U.S. market. Dkt. Nos. 39-3, 39-5, 39-10. Because of this, Nexon issued a "take down notice" to have Dark and Darker removed from the popular gaming platform Steam. Dkt. No. 29 at 20. Ironmace subsequently sent a counter-notification to Valve, the Washington corporation that owns Steam, under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512. Dkt. Nos. 39-7, 39-8. These disputes led to parallel litigation occurring in Korea, as the Parties have sued each other in Suwon District Court. Dkt. No. 29 at 5. Nexon subsequently filed their complaint in this Court (Dkt. No. 1), and Defendants now move to dismiss on *forum non conveniens* grounds, arguing that the Korean litigation is an adequate and more convenient forum to resolve Nexon's claims (Dkt. No. 29). Defendants also move the Court for relief from the initial case management order deadlines and discovery obligations pending resolution of the motion to dismiss. Dkt. No. 44.

## II.     LEGAL STANDARD

A district court may dismiss a case where litigation in a foreign forum would be more convenient for the litigants. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 250 (1981). However, the doctrine of *forum non conveniens* should only be employed sparingly. *Boston Telecomms. Grp. v. Wood*, 588 F.3d 1201, 1212 (9th Cir. 2009) (citing *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002)). In determining whether to dismiss a case on these grounds, courts will consider: (1) whether an adequate alternative forum exists; and (2) whether the balance of private and public interest factors weigh in favor of dismissal. *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th. Cir. 2001). An adequate alternative forum is one where the defendant is amenable to service of process. *Id.* at 1143. The defendant must also show that the foreign forum will provide the plaintiff with some remedy for their claims if merited. *Id.* The standard for

adequacy is a low one. *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1178 (9th Cir. 2006).

To weigh the interests of the parties, the following private-interest factors must be considered:

    (1)    the residence of the parties and the witnesses;

    (2)    the forum's convenience to the litigants;

    (3)    access to the physical evidence and other sources of proof;

    (4)    whether unwilling witnesses can be compelled to testify;

    (5)    the cost of bringing witnesses to trial;

    (6)    the enforceability of the judgment; and

    (7)    "all other practical problems that make trial of a case easy, expeditious, and inexpensive."

*Lueck*, 236 F.3d at 1145 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). The court must also weigh the following public interest factors:

    (1)    local interest of lawsuit;

    (2)    the court's familiarity with governing law;

    (3)    burden on local courts and juries;

    (4)    congestion in the court; and

    (5)    the costs of resolving a dispute unrelated to this forum.

*Id.* at 1147; *Gulf Oil Corp.*, 330 U.S. at 509.

These factors are weighed against each other in a balancing test to determine if they favor dismissal. *Lueck*, 236 F.3d at 1145. "[A] foreign plaintiff's choice of forum merits less deference than that of a plaintiff who resides in the selected forum, and the showing required for dismissal

1 is reduced." *Id.* (citing *Gemini Cap. Grp., Inc. v. Yap Fishing Corp.*, 150 F.3d 1088, 1091 (9th

2 Cir. 1998)).

3          When parties have agreed to a forum selection clause, the district court should normally

4 honor that agreement except in extraordinary circumstances unrelated to the parties'

5 convenience. *Atl. Marine Constr. Co. v. United States Dist. Ct. for the W. Dist. of Tex.*, 571 U.S.

6 49, 62 (2013). When a forum selection clause is involved (and the selected forum is not a federal

7 forum to which the case can be transferred per 28 U.S.C. § 1404), the traditional dismissal for

8 *forum non conveniens* analysis is changed in the following way: (1) the plaintiff's choice of

9 forum merits no weight; and (2) the private interests of the parties no longer need to be

10 considered but the public interest factor should still be weighed. *See id.* at 61–65.

### III.   DISCUSSION

12          The Parties dispute whether: (1) dismissal for *forum non conveniens* is appropriate;

13 (2) the forum selection clause included in the prior employment agreements apply to this case;

14 and (3) it is appropriate for the Court to vacate its initial case management scheduling order and

15 stay discovery until the motion to dismiss is resolved. Resolution of the forum selection cause

16 dispute governs the appropriate analytical framework for the motion to dismiss. Therefore, the

17 Court will first resolve the forum selection clause dispute before determining whether dismissal

18 is appropriate and then turning to the motion for relief from the case schedule.

19 **A.   Forum Selection Clause Analysis**

20          Nexon and Defendants Choi and Park executed an agreement designating exclusive

21 jurisdiction to the Seoul Central District Court for disputes involving work-related intellectual

22 property. Dkt. No. 31 at 208, 211. Nexon seeks to prevent the application of this agreement by

23 raising several arguments. For the reasons discussed below, the Court rejects Nexon's

24 arguments.

1

### 1.    The DMCA does not preclude *forum non conveniens.*

Nexon argues that the DMCA bars dismissal of a case on the grounds of *forum non*

*conveniens*. Dkt. No. 38 at 14. Under the DMCA, when a service provider removes allegedly

copyright-infringing material from their service platform, the alleged infringer has the right to

issue a counter-notification to reinstate their product to the platform, provided that the alleged

infringer consents to the jurisdiction of the federal court in the judicial district where the service

provider is located. 17 U.S.C. § 512(g)(3)(D). The DMCA counter-notification process requires

the subscriber to provide:

> a statement that the subscriber consents to the jurisdiction of Federal
> District Court for the judicial district in which the address is located,
> or if the subscriber's address is outside of the United States, for any
> judicial district in which the service provider may be found, and that
> the subscriber will accept service of process from the person who
> provided notification under subsection (c)(1)(C) or an agent of such
> person.

*Id.*

In response to Nexon's take-down action removing Dark and Darker from the Steam

platform, Ironmace submitted a DMCA counter-notification to Valve and consequently

consented to the jurisdiction of the Western District of Washington, where Valve's headquarters

are located. Dkt. No. 39-8 at 7. Valve is not a party to this action. Nonetheless, Nexon argues

that Defendants, having generally consented to jurisdiction in this District, are precluded from

claiming that it is an inconvenient forum. Dkt. No. 38 at 14–18. The Court disagrees.

Jurisdiction and venue are two, distinct concepts. *SEC v. Ross*, 504 F.3d 1130, 1140 (9th

Cir. 2007) ("[T]he question of whether the court can exercise personal jurisdiction over a party is

distinct from the question of whether venue will properly lie in the court exercising

jurisdiction."); *Action Embroidery Corp. v. Atl. Embroidery, Inc.,* 368 F.3d 1174, 1178–79 (9th

Cir. 2004) ("It has long been recognized that the question of a federal court's competence to

exercise personal jurisdiction over a defendant is distinct from the question of whether venue is

proper."). There is no indication from the DMCA that Congress intended to conflate the two.

Venue refers to where a *civil action* may be brought. *See* 28 U.S.C. § 1391. But the DMCA only

speaks to jurisdiction over *the subscriber*, or here, Defendants.

Nexon relies on a Ninth Circuit ruling but fails to draw any compelling similarities to its

cited case. In *Zipfel v. Halliburton Co.*, the Ninth Circuit held that the *forum non conveniens*

doctrine was unavailable for claims under the Jones Act. 832 F.2d 1477, 1487 (9th Cir. 1987).

But it reached that conclusion because the Jones Act contained specific venue *and* subject matter

jurisdiction clauses. *Id.* The DMCA contains only a specific personal jurisdiction provision.

*Compare* 46 U.S.C. § 688(a) ("Jurisdiction in [ ] *actions* [under the Jones Act] shall be under the

court of the district in which the defendant employer resides or in which his principal office is

located." (emphasis added)), *with* 17 U.S.C. § 512(g)(3)(D) ("[T]he *subscriber* consents to the

jurisdiction of Federal District Court for the judicial district in which the address is located."

(emphasis added)). Nexon attempts to convince the Court that a party that consents to personal

jurisdiction also agrees that venue is proper and convenient but cites no legal authority for such a

conclusion. *See* Dkt. No. 38 at 14–18. Instead, there is ample authority leading to the opposite

conclusion. Several courts in this Circuit have found that, under the DMCA, a counter-

notification serves as consent to personal jurisdiction only. *E.g.*, *Epic Games, Inc. v. Mendes*,

No. C17-6223, 2018 WL 2926086, at *5 (N.D. Cal. June 12, 2018) (finding that defendant

consented to personal jurisdiction in the Northern District of California because he submitted an

express statement along with the counter-notification); *Melendez v. Vaiana*, No.

EDCV162516JGBSPX, 2017 WL 8183139, at *3 (C.D. Cal. Oct. 19, 2017) (same); *Tecnologias

Avanzadas RD, SRL v. Riegler*, No. C16-6701, 2017 WL 2772301, at *2 (N.D. Cal. June 1,

2017) (same); *accord Real v. Matteo*, No. C17-1288, 2018 WL 493596, at *5 (W.D. La. Jan. 3,

2018), *report and recommendation adopted*, 2018 WL 494271 (W.D. La. Jan. 19, 2018); *Wright v. Edwards*, No. C21-6063, 2022 WL 17820247, at *6 (E.D.N.Y. July 18, 2022). The DMCA therefore does not preclude application of the doctrine of *forum non conveniens* and dismissal is appropriate if the Court finds that an adequate foreign forum exists and the balance of interests weighs in favor of the more convenient forum.

**2.      This Court was not the bargained for forum.**

Nexon argues that Defendants bargained for this forum by availing themselves of the benefits of submitting a DMCA counter-notification. Dkt. No. 38 at 18. Nexon submits that Ironmace's affirmative act of sending a counter-notification makes this District "presumptively valid," because Defendants have created a "permissive forum selection clause" selecting this District as the forum for dispute through the DMCA. Dkt. No. 38 at 18–19. But Nexon's argument misses the point. The *forum non conveniens* analysis does not turn on whether the challenged forum is "valid," but on whether the alternate forum is adequate and more appropriate under the circumstances. *See Atl. Marine Constr. Co.*, 571 U.S. at 59 (concluding that "[transfer under 28 U.S.C. §] 1404(a) is merely a codification of the doctrine of *forum non conveniens* for [a] subset of cases" and highlighting that "§ 1404(a) does not condition transfer on the initial forum's being 'wrong'").

Nexon's quasi-contractual argument is again based on a misconstruction of the law. Nexon relies on *Atlantic Marine*, where the U.S. Supreme Court noted that forum-selection clauses that had been bargained for by parties needed to be honored. *Id.* at 63. But in *Atlantic Marine*, the petitioner was seeking a writ of mandamus directing the district court to enforce a forum selection clause that was included in an enforceable subcontract between the parties litigating before the district court. *Id.* at 53. Therefore, transfer of the case was sought based on the forum selection clause bargained for and contained in the parties' subcontract. *Id.* Here,

Ironmace's consent to federal jurisdiction under the DMCA's counter-notification procedures simply allows a federal court to assert personal jurisdiction over Ironmace in a DMCA related action—it does not provide the basis for a contract. *See Tecnologias Avanzadas RD, SRL*, 2017 WL 2772301, at *2 (the DMCA "counter-notification is not a contract"); *Crunchyroll, Inc. v. Pledge*, No. C11-2334, 2014 WL 1347492, at *9 (N.D. Cal. Mar. 31, 2014) (holding that the defendant's submission of a counter-notification under the DMCA was not a contract). Nexon's strained claim that "Ironmace made a bargain in which it availed itself of the benefits of submitting a DMCA counter-notification, in exchange for which it [consented to this Court's jurisdiction]" (Dkt. No. 38 at 18), therefore fails to support the inference that a quasi-contractual forum selection clause was formed that prohibits Defendants' motion.

Even if the Court accepted Nexon's quasi-contractual forum selection clause theory, Section 512 of the DMCA is intended to limit the potential liability an online *service provider* might face from either a subscriber (like Ironmace) *or* an alleged copyright holder (like Nexon) for various online services. *See* 17 U.S.C. § 512. The only entity with which a subscriber submitting a DMCA counter-notification would be "bargaining" is the service provider. *See id.* § 512(g)(3). No contractual relationship, quasi- or otherwise, between Nexon and Defendants could possibly arise out of Ironmace's counter-notification submission to Valve. *Cf. Crunchyroll, Inc.*, 2014 WL 1347492, at *9. Therefore, Nexon's quasi-contractual argument still fails.

### 3. Nexon's remaining grounds are unsupported.

Finally, Nexon submits a number of arguments to dissuade the Court from adopting the forum selection clause. However, they are generally unfounded. Nexon argues that the forum selection clause does not apply because it does not cover disputes occurring after Choi and Park's employment. Dkt. No. 38 at 20. However, the document expressly governs events that

occur "[a]fter this Agreement is concluded." Dkt. No. 31 at 208, 211. Similarly, Nexon claims

that Ironmace, as a separately named Defendant, is not entitled to enforce the agreements as it

was not party to the documents containing the forum selection clause. Dkt. No. 38 at 21. But

because the causes of action alleged are closely related to the contract, the Parties are all subject

to the forum selection clause. *Cf. Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514

(9th Cir. 1988) (finding that the allegedly tortious conduct of the defendants was so intimately

related to the contractual relationship that the clause applied to plaintiff's tort claims as well).

Here, Choi and Park are signatories to the forum selection clause and are alleged to have stolen

source code to build the allegedly infringing game. Dkt. No. 38 at 11. That game was distributed

by Ironmace, the new company that Choi and Park formed. *Id.* at 11–12. Ironmace's alleged

wrongful activity is thus intimately related to the contract because it is the vehicle through which

the signatories allegedly violated the contract.

Finally, Nexon argues that Defendants' action in Suwon District Court suggests that

Seoul Central District Court is not a proper forum. *Id.* at 22. Here, Nexon implicitly argues that it

would be unfair to allow Defendants to designate the Seoul forum as adequate to get the case

dismissed in this District, while simultaneously suing instead in the Suwon court. *Id.* However,

as Defendants point out in their reply, this would lead this Court toward analyzing which Korean

forum, either Suwon or Seoul, is the *more* appropriate setting. Dkt. No. 45 at 10–11. But this

exceeds the Court's required analysis. Ninth Circuit precedent clearly outlines that the

availability of a remedy for the plaintiff is the important factor. *Yei A Sun v. Advanced China*

*Healthcare, Inc.*, 901 F.3d 1081, 1092 (9th Cir. 2018). Even though the Parties agreed on Seoul

District Court as their forum of choice in the employment agreements (Dkt. No. 31 at 208, 211),

they are actively pursuing their respective suits in Suwon District Court. Dkt. No. 29 at 5. This

1    suggests that either of these Korean forums offer a remedy that would satisfy the Parties. *See*

2    *also infra*, § III.B.1.

3           Given that none of Nexon's arguments succeed, it follows that the forum selection clause

4    should be considered in analyzing this motion.

5    **B.      *Forum Non Conveniens* Analysis**

6           The party seeking *forum on conveniens* dismissal must show the existence of an adequate

7    alternative forum. *Lueck*, 236 F.3d at 1143. This is not a strenuous standard to meet. *Tuazon*, 433

8    F.3d at 1178.

9           Once this standard is met, the party seeking to resist dismissal must convince the Court

10   that the relevant interest factors weigh against dismissal. *See Atl. Marine Constr. Co.*, 571 U.S.

11   at 63. However, when a valid forum selection clause is involved, the Court considers only the

12   public-interest factors, since the consideration of the contract term results in the private factors

13   weighing in favor of the selected forum by default. *Id*. at 64. Except "in all but the most unusual

14   cases," the public-interest factors "rarely" overcome enforcement of the contractually agreed-

15   upon forum selection clause. *Id*. at 64–66.

16          **1.      Korea is an adequate alternative forum.**

17          As an initial matter, the Court notes that the Parties are already litigating this controversy

18   in Korea. Dkt. No. 31 at 4. Therefore, Defendants obviously are amenable to (and have already

19   accepted) service of process in a Korean forum. To show that Korean courts are able to provide

20   an adequate remedy, Defendants cite numerous protections that Korean law provides for

21   plaintiffs bringing copyright claims. Dkt. No. 29 at 12, 13. In addition, legal authority from

22   district courts in this Circuit and in other circuits support the proposition that Korea is an

23   adequate forum, generally, and for cases involving trade secrets and copyrights specifically. *See,*

24   *e.g.*, *Primacy Eng'g, Inc. v. SAN Eng'g*, No. C18-129, 2019 WL 3412914, at *3 (W.D. Tex. July

1   29, 2019) (holding Korea is an adequate alternative forum in case involving alleged

2   misappropriation of trade secrets); *Hyewoong Yoon v. Seyeon Lee*, 433 F. Supp. 3d 18, 26 (D.

3   Mass. 2019) ("The South Korean Action is proof that there is an alternative forum for

4   [plaintiff's] claims."); *ECC Int'l, LLC v. KEB Hana Bank*, No. C16-06487, 2016 WL 10968141,

5   at *3 (C.D. Cal. Dec. 9, 2016) ("Because Defendant is amenable to service in Korea, and because

6   Korea provides a remedy for Plaintiff's claims, the Court finds Korea to be an adequate

7   alternative forum."); *Wamai v. Indus. Bank of Korea*, No. C21-325, 2021 WL 3038402, at *8

8   (S.D.N.Y. July 14, 2021) (holding Korea is an appropriate forum).

9         Nexon characterizes the adequacy of the Korean courts as a "mirage," arguing that Korea

10   is not an adequate forum in this case because Korean courts are powerless to compel the

11   production of certain evidence. Dkt. No. 38 at 24–25. Nexon claims that they are in a

12   "Kafkaesque" procedural position in the Suwon litigation and cites *Irish National Insurance Co.*

13   *v. Aer Lingus Teoranta*, where the Second Circuit reversed a finding of *forum non conveniens*

14   because of a plaintiff's inability to attain its desired remedy in a foreign court. 739 F.2d 90, 92

15   (2d Cir. 1984). However, this case is distinguishable because Nexon's issue relates to a

16   procedural impediment specific to the procedural posture of the Suwan case (Dkt. No. 38

17   at 24–25),[2] while *Irish National* relates to the availability of adequate relief on the merits.

18   739 F.2d at 91 (Irish law limited recovery to U.S. $260, and invocation of the doctrine of *forum*

19   *non conveniens* "will send the case to a jurisdiction which has imposed such severe monetary

20

21       [2] The Court is also suspicious of Nexon's true motives in filing this action in the United States in the first place,

22   since it chooses to include a forum selection clause in its employment agreements limiting actions to the Korean
     courts. The Court is not interested in using its limited judicial resources to allow Nexon to exploit the U.S. district
     courts' more permissive discovery rules in order to circumvent Korean procedural rules in the parallel litigation. *See*

23   Dkt. No. 51 at 5. *See also Ayco Farms, Inc. v. Ochoa*, 862 F.3d 945, 950 (9th Cir. 2017) ("'[T]he more it appears
     that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons . . . the less deference the
     plaintiff's choice of forum commands.'" (quoting *Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 695 (2009)));

24   *accord Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) (en banc).

limitations on recovery as to eliminate the likelihood that the case will be tried"); *cf. Lockman Found. v. Evangelical All. Mission*, 930 F.2d 764, 768 (1991) (rejecting plaintiff's argument that Japanese courts were inadequate because Japan's procedural rules regarding pretrial discovery are "not identical to those in the United States"). Nexon has not cited any on-point caselaw that indicates the procedural limitations they complain of render the Korean forum inadequate. Defendants have more than satisfied their low bar of establishing the adequacy of the Korean courts.

       2.     **The balance of interests weigh in favor of dismissal.**

Upon balancing the relevant interest factors, it becomes apparent that dismissal in favor of action in the Korean courts is appropriate.

       *a.*     ***The public interest factors weigh in favor of dismissal.***

Here, the Court need only balance the public interest factors, including: (1) local interest in the lawsuit; (2) the court's familiarity with governing law; (3) the burden on local courts and juries; (4) congestion in the courts; and (5) the costs of resolving a dispute unrelated to this forum. *See Lueck*, 236 F.3d at 1147; *Gulf Oil Corp.*, 330 U.S. at 509; *see also Atl. Marine Constr. Co.*, 571 U.S. at 53. The Court finds that the public interest factors weigh against maintaining this action in this District.

Citizens within the Western District of Washington may have a small interest in this matter given that Ironmace is alleged to have targeted the United States (Dkt. No. 38 at 12), but this interest does not compare to the public resources that would be spent maintaining the action here. Nexon cites *Lang Van, Inc. v. VNG Corp.*, where the Ninth Circuit stated that "copyright cases concerning alleged unlawful activities purposefully directed towards the United States are more amenable to suit in the United States." 40 F.4th 1034, 1043 (9th. Cir. 2022). But there are clear distinguishing elements present. First, the Ninth Circuit was primarily concerned with

1    personal jurisdiction in that case, not venue. *Id*. Also, the alternate forum lacked the legal

2    infrastructure necessary to give copyright owners relief. *Id.* And finally, that case never analyzed

3    the public interest factors as applied to its set of facts. *Id*.

4           Instead, the reasoning in *Creative Technology, Ltd. v. Aztech System Pte., Ltd.*, is more on

5    point. 61 F.3d 696 (9th Cir. 1995). In that case, the Ninth Circuit held that copyright laws served

6    the interests of the property owners rather than consumers. *Creative Tech.*, 61 F.3d at 704. Here,

7    Nexon raises claims to vindicate its own rights as copyright owner. *See* Dkt. No. 1 ¶¶ 183–202.

8    None of Nexon's claims arise under any federal or state consumer protection laws; in fact, the

9    terms consumer and customer are used only four times in the entire 53-page, 202-paragraph

10   Complaint. *See id.* at 1–53. As previously noted, Korean courts provide an adequate forum for

11   Nexon to vindicate its intellectual property rights. *Supra*, § III.B.1; *see also Primacy Eng'g, Inc.*,

12   2019 WL 3412914, at *3. On balance, it does not follow that the alleged infringement would

13   give rise to a greater local interest in the resolution of this matter than if the matter is resolved in

14   Korea.

15          Similarly, the respective courts' familiarity with the governing law weighs neither for nor

16   against dismissal. The Complaint arises under American statutes (Dkt. No. 1), but the current

17   parallel action in Korea is based on Korean copyright and trade secret law. Dkt. No. 38 at 13.

18   Nexon claims that it would be forced to seek relief under the American statutes in a separate

19   parallel action in Seoul if this motion is granted (Dkt. No. 38 at 31–32), but it does not

20   adequately explain this reasoning. On the contrary, Nexon has demonstrated a clear preference

21   for having its rights vindicated in the Korean courts as evidenced by the forum selection clause it

22   requires employees to accept in its employment agreements. *See, e.g.*, Dkt. No. 31 at 208, 211.

23   Additionally, Nexon seeks essentially the same relief in the Suwon action as it does here except

24   under Korean copyright laws (Dkt. No. 38 at 13), and there is no indication that the Suwon court

is unable to provide adequate relief on the merits of Nexon's claims. *See supra*, § III.B.1. Thus, there is an adequate alternate forum available where Nexon can seek relief without the court having to interpret unfamiliar laws, rendering this factor neutral. *See Primacy Eng'g, Inc.*, 2019 WL 3412914, at *4.

Court congestion is another neutral factor, as there is nothing in the record that indicates prohibitive congestion in the Korean courts. *See Gund v. Philbrook's Boatyard*, 374 F. Supp. 2d 909, 914 (W.D. Wash. 2005) (finding that a lack of evidence concerning the foreign court's docket availability resulted in this factor being deemed neutral). With none of the factors weighing in favor of maintaining the action here, this appears to be the typical case involving a forum-selection clause, wherein "public-interest factors [alone] . . . . rarely defeat" a *forum non conveniens* motion. *Atl. Marine Constr. Co.*, 571 U.S. at 64.

### b. *The private interest factors weigh towards dismissal.*

Although the *Atlantic Marine* analytical framework renders the private interest factors null, it is still worth noting that these factors also weigh towards dismissal. All Parties are either Korean corporations or individuals located in Korea. Dkt. No. 1 at 4. The two individual Defendants are Korean residents, and Nexon does not dispute that they worked at Nexon's offices in Korea while employed by the company. Dkt. No. 29 at 18. Nexon even agrees that Choi allegedly exported the source code from its server in Korea to his own private server, which was also in Korea. Dkt. No. 1 at 13. And although some witnesses may be domestic (Dkt. No. 38 at 28), most of the witnesses and evidence are located in Korea or written in Korean. Dkt. No. 29 at 19. This being the case, if any of this evidence is to be used in a proceeding in this District, it would need to be transported and/or translated. These facts suggest that it would be more convenient for all Parties to litigate this matter in Korea.

The Court therefore GRANTS Defendants' motion to dismiss for *forum non conveniens.*

1

**C.      Continuance and Stay**

2          Accordingly, the Court DENIES as moot Defendants' request to vacate the initial case

3    management schedule and stay discovery because this case is DISMISSED.

4                                    **IV.    CONCLUSION**

5          For the above reasons, Defendants have carried their burden of showing that an adequate

6    forum exists in the Korean courts and the relevant public (and private) interest factors weigh in

7    favor of dismissal. Therefore, it is hereby ORDERED:

8          (1)    The Court GRANTS Defendants' Motion to Dismiss on Grounds of *Forum Non*

9                 *Conveniens* (Dkt. No. 29);

10         (2)    The Court DISMISSES without prejudice[3] Plaintiff Nexon Korea Corporation's

11                Complaint;

12         (3)    The Court DENIES Defendants' Motion for Relief from the Initial Disclosures

13                Deadline (Dkt. No. 44) as moot; and

14         (4)    The Clerk SHALL enter judgment consistent with this order.

15

16    Dated this 17th day of August 2023.

17

18                                              Tana Lin
                                                United States District Judge
19

20

21

22

---

23   [3] Nexon asks the Court to deny "Defendants' request for dismissal *with prejudice*" because it believes it will be
     required to reassert its claims under U.S. copyright law in Seoul District Court (Dkt. No. 38 at 33, n.8), despite the
24   fact that it has already asserted essentially the same claims under Korean copyright law in the Suwon action (*id.* at
     13). Nevertheless, the Court finds it appropriate to dismiss this action without prejudice.